ORIGINAL

FILED
JAN 2 9 2004
U.S. COURT OF FEDERAL CLAIMS

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

04-0118C

| | | |
|---|---|---|
| **ROCHESTER GAS AND ELECTRIC CORPORATION,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Civil Action No.______** |
| **THE UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | |

## COMPLAINT

For its Complaint against the Defendant United States of America (the "Government"), Plaintiff Rochester Gas and Electric Corporation ("Plaintiff"), by counsel, states as follows:

## SUMMARY OF PLAINTIFF'S CLAIMS

1. Plaintiff brings this action for partial breach of contract, partial breach of the implied covenants of good faith and fair dealing, and taking of property without just compensation. This action arises from the Government's failure to perform its contractual obligations to dispose of spent nuclear fuel and/or high-level radioactive waste stored at the R.E. Ginna Nuclear Power Plant (the "Ginna Plant") that is owned and operated by Plaintiff under a license from the Nuclear Regulatory Commission ("NRC").

2. This action is based upon a written contract, known as the Contract for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste, Contract No. DE-CR01-83NE44419 (the "Contract") executed by and between Plaintiff and the Government in accordance with the

directive of the Nuclear Waste Policy Act of 1982, 42 U.S.C. § 10101 *et seq.* ("NWPA"). The Contract unconditionally obligated the Government to begin disposal of the spent nuclear fuel and/or high-level radioactive waste as defined in the Contract ("SNF") from Plaintiff's Ginna Plant beginning not later than January 31, 1998, in exchange for the payment of SNF disposal fees in amounts fixed by the Contract.

3. To date, Plaintiff has paid and continues to pay substantial SNF disposal fees in compliance with its obligations under the Contract. Plaintiff, having timely made such payments to the Government in full compliance with its contractual obligations, has obtained a contractual right to the Government's performance of its reciprocal and unconditional contractual obligations.

4. In partial breach of the Contract, the Government has failed to perform its reciprocal and unconditional obligation to dispose of the SNF from Plaintiff's Ginna Plant site beginning not later than January 31, 1998. The Government's partial breach is evidenced by both its conduct and its statements, including its failure to perform under the Contract commencing on or before January 31, 1998, and its subsequent failures to perform up to the present, as well as its official announcements that it will not begin disposing of the SNF before 2010, at the earliest.

5. Even though Plaintiff has paid, and continues to pay, all required fees in accordance with the terms of the Contract, the Government has completely failed to perform its obligations under the Contract.

6. Each of the Government's failures to perform constitutes a partial breach of the express terms of the Contract and a partial breach of the implied covenants of good faith and fair dealing. Moreover, the Government's partial breaches have forced Plaintiff to store the SNF on its real property, and thereby constitute a taking of Plaintiff's real property rights without just compensation.

7. The Government's repeated partial breaches of its contractual commitments and obligations have caused Plaintiff to incur substantial costs and other damages.

## STATEMENT OF JURISDICTION

8. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1491(a)(1).

## PARTIES

9. Plaintiff is a corporation organized and incorporated under the laws of the State of New York. Plaintiff is the licensed operator and owner of the Ginna Plant.

10. Defendant is the United States of America (the "Government"), acting through the United States Department of Energy ("DOE").

11. As publicly announced in November 2003, Plaintiff has agreed, subject to receipt of satisfactory State and federal regulatory approvals, satisfactory rate treatment, and other

conditions, to sell the Ginna Plant, including all SNF together with all obligations to store and dispose of SNF, to a subsidiary of Constellation Energy Group, Inc. ("CEG") in a transaction expected to close on or around June 30, 2004. In accordance with the terms and conditions of the asset purchase agreement between Plaintiff and CEG, the Contract and rights and duties thereunder, including but not limited to the right to pursue and recover damages associated with storage of SNF at the Ginna plant, are expected to be assigned to CEG or one of its affiliates upon the closing of that transaction. In accordance with Article XIV, ASSIGNMENT, of the Contract, Plaintiff will give DOE notice within ninety days of the assignment.

## STATEMENT OF FACTS

12. Since the time of President Eisenhower's "Atoms for Peace" initiative in 1953, the Government has encouraged and promoted the commercial development of atomic energy in the United States. The Ginna Plant was developed and is operated pursuant to licenses issued by the NRC or the Atomic Energy Commission pursuant to the Atomic Energy Act, as amended, 42 U.S.C. § 2011 *et seq.*, consistent with the Government's stated policy to encourage private participation in the development and demonstration of economically-feasible and safe nuclear power generation.

13. In 1982, Congress enacted the Nuclear Waste Policy Act of 1982, 42 U.S.C. § 10101 *et seq.* ("NWPA"). The NWPA codified the Government's long-standing commitment to accept responsibility for disposal of SNF. SNF is used nuclear fuel from a reactor and contains highly

radioactive fission products. SNF remains highly radioactive and must be isolated in safe disposal facilities for thousands of years.

14. Pursuant to Section 302(a) of NWPA (42 U.S.C. § 10222(a)), DOE developed a standard contract, which incorporates a reciprocal obligation on the part of the Government, acting through DOE, to accept and dispose of the SNF of commercial utilities beginning not later than January 31, 1998, in exchange for the payment of fees by such utilities into the Nuclear Waste Fund (the "Fund"). Specifically, the standard contract promulgated by DOE provides that "[t]he services to be provided by DOE under this contract shall begin . . . not later than January 31, 1998 and shall continue until such time as all SNF . . . has been disposed of." Standard Contract, Art. II.

15. The Contract between the Government and Plaintiff for the Ginna Plant was executed on June 30, 1983.

16. The Contract requires DOE to commence disposal of SNF from Plaintiff's Ginna Plant site not later than January 31, 1998, and to continue to dispose of such SNF until such time as all SNF at the Ginna Plant has been disposed of. The Contract also requires DOE to arrange and provide for the transportation of the SNF from the plant site to a DOE disposal facility.

17. The Contract provides that Plaintiff shall pay fees into the Fund, in return for which DOE shall dispose of all of the SNF from Plaintiff's Ginna Plant.

18. Plaintiff has complied with all of its obligations under the Contract, including the payment in the aggregate of more than sixty-seven million, nine hundred thousand dollars ($67,900,000) in fees to the Fund. Plaintiff continues to pay fees totaling approximately three and one-half million dollars ($3,500,000) per year.

19. As set forth in the Contract, these fee payments were to be used by DOE to fulfill its contractual obligation to dispose of SNF from the Ginna Plant site operated by Plaintiff beginning not later than January 31, 1998.

20. As it became apparent to DOE that it was not going to meet its contractual obligations, DOE forecasted an increasingly restrictive annual SNF acceptance rate, as well as increasingly elongated and artificial schedules for disposal. At the same time, however, DOE continued to make assurances that it would begin to dispose of the SNF by the 1998 deadline in keeping with its contractual obligations.

21. Congress substantially amended the NWPA in 1987 to require DOE to focus its repository development effort on assessing the suitability of and characterizing Yucca Mountain, Nevada, as the site for the permanent geologic repository.

22. On April 28, 1995, DOE issued a "Final Interpretation of Nuclear Waste Acceptance Issues," 60 Fed. Reg. 21,793 (1995) ("Final Interpretation"), announcing that it had "become apparent that neither a repository nor an interim storage facility constructed under the Act will be available by 1998," and asserting that the Government did not have any statutory or contractual

obligation to dispose of SNF pending the completion of construction and licensing by DOE of a geologic repository. DOE further asserted that it was not authorized to accept, store, or dispose of SNF absent the existence of an operational permanent repository. This position contradicted earlier acknowledgements by DOE that the Government had an unconditional obligation to remove SNF from plant sites beginning no later than January 31, 1998.

23. A large number of nuclear utilities sought review of DOE's "Final Interpretation" in the United States Court of Appeals for the District of Columbia Circuit pursuant to Section 119 of the NWPA (42 U.S.C. § 10139). The court rejected the interpretation of the NWPA set forth in DOE's Final Interpretation, holding that DOE had an "unconditional" obligation to begin disposing of the utilities' SNF by January 31, 1998, which was reciprocal to the utilities' obligation to pay fees. *Indiana Michigan Power Co. v. Dep't of Energy*, 88 F.3d 1272 (D.C. Cir. 1996).

24. Notwithstanding the D.C. Circuit's ruling, in a December 17, 1996, letter to contract holders, DOE announced that "DOE anticipates it will be unable to begin acceptance of spent nuclear fuel for disposal in a repository or interim storage facility by January 31, 1998," and in a June 3, 1997, response to comments by the utilities, DOE asserted that its failure to meet the deadline was excused under Article IX, DELAYS, of the utilities' standard contracts because its delay was, it asserted, unavoidable.

25. In response, the utilities filed another petition with the D.C. Circuit for a writ of mandamus to compel the Government to comply with the court's mandate in *Indiana Michigan*.

The D.C. Circuit again ruled in favor of the utilities, reiterating that the Government had an unconditional obligation to begin disposing of the utilities' SNF by January 31, 1998, and issued a writ of mandamus prohibiting the Government from characterizing its failure to accept and dispose of SNF as an unavoidable delay in any proceeding involving standard contracts. *Northern States Power Co. v. United States*, 128 F.3d 754 (D.C. Cir. 1997), *cert. denied*, 525 U.S. 1016 (1998).

26. Despite the court's rulings, the DOE contracting officer with responsibility for the Contract issued a Preliminary Determination, dated June 3, 1997, stating that DOE would not commence disposal operations at the repository before 2010, at the earliest.

27. DOE failed to meet the January 31, 1998, deadline for commencing the disposal of SNF from Plaintiff's Ginna Plant site and has failed to fulfill its obligations to dispose of SNF thereafter, and therefore, the Government has breached its obligations under the Contract. Moreover, DOE has failed to provide any reasonable assurance as to its schedule for the disposal of SNF from the Ginna Plant site operated by Plaintiff. The Government's failure to fulfill its obligations left Plaintiff with no effective means of off-site storage.

28. In *Maine Yankee Atomic Power Co. v. United States*, 225 F.3d 1336 (Fed. Cir. 2000), several utilities sued the Government for breach of contract and other claims arising out of the Government's failure to perform its obligations under the utilities' standard contracts. The United States Court of Appeals for the Federal Circuit held that utilities were not required to pursue administrative remedies for the Government's failure to perform under their standard

contracts, that the utilities could assert traditional claims (*e.g.*, breach of contract, breach of good faith and fair dealing, taking) in court, and that partial summary judgment for the utilities was proper on their claims that the Government had breached their contracts. Similarly, the Government has breached Plaintiff's Contract, and Plaintiff's claims are properly before this Court.

29. In order for a nuclear plant to operate, it must have sufficient space in its spent fuel pool to hold SNF discharged from the reactor during refueling, or during other instances when the reactor must be unloaded. As a result of DOE's partial breaches of its contractual obligations, Plaintiff has been forced to incur substantial costs for extended on-site storage of its SNF. Further, the SNF storage capacity at the Ginna Plant would have been exhausted without an expansion of that capacity. Plaintiff has incurred and continues to incur substantial costs for SNF storage, equipment, and facilities, and for the management of same as necessary for the continued operation of the Ginna Plant, and such costs are the proximate result of DOE's partial breaches of its obligations. Plaintiff has mitigated its damages resulting from the Government's partial breaches of its obligations to the extent practicable by properly managing its SNF.

## STATEMENT OF DAMAGES

30. As a direct result of the Government's partial breaches of its obligations, Plaintiff has suffered substantial damages in the form of costs associated with the management and storage of SNF which should have been disposed of by DOE. The damages caused by defendant in connection with Ginna Plant include, but are not limited to, costs associated with the planning, design, construction, licensing, operation, and maintenance of facilities and equipment necessary

to operate, maintain, and expand the spent fuel storage capacity at the Ginna Plant; and other administrative and programmatic costs arising directly from the failure of the Government to dispose of SNF from the Ginna Plant site as required by the Contract.

31. The Government's breach of its contractual and statutory duties results in a situation in which owners of SNF, such as Plaintiff, are forced to pay twice for SNF storage. They are required to pay fees to the Government to dispose of the SNF and, at the same time, pay for on-site storage of SNF that would not have been necessary had the Government fulfilled its obligations.

## COUNT ONE

### Partial Breaches of Contract

32. Plaintiff realleges and incorporates by reference Paragraphs 1-31 above.

33. The Contract imposes an unconditional obligation on the Government to dispose of the SNF generated by Plaintiff's Ginna Plant beginning not later than January 31, 1998, in return for the payment of specified waste disposal fees.

34. All required fees have been paid and continue to be paid to the Government in accordance with the terms and schedule set forth in the Contract.

35. The Government has partially defaulted and continues to partially default on its obligations to promptly dispose of Plaintiff's SNF. All of Plaintiff's contract claims in this

action are for damages arising out of the Government's failure to perform or delay in performance, which constitute partial breaches of the Contract and as a matter of law cannot be excused as unavoidable delays.

36. As a direct and proximate result of the Government's partial breaches, Plaintiff has incurred and continues to incur substantial damages.

37. By reason of the foregoing, the Government is liable to Plaintiff for damages for partial breaches of contract.

## COUNT TWO

### Partial Breaches of the Implied Covenants of Good Faith and Fair Dealing

38. Plaintiff realleges and incorporates by reference Paragraphs 1-37 above.

39. The Contract contains implied covenants of good faith and fair dealing, pursuant to which the Government has a duty to perform its contractual obligations in good faith and to refrain from taking actions detrimental to the rights of Plaintiff.

40. The implied covenants of good faith and fair dealing require the Government to make reasonable efforts to perform its duties under the Contract and to cooperate with Plaintiff in the accomplishment thereof.

41. DOE partially breached the covenants of good faith and fair dealing (i) by failing and refusing to accept and take title to the SNF, (ii) by failing and refusing to dispose of the SNF, (iii) by failing and refusing to take appropriate and timely actions to ensure that DOE would dispose of the SNF, (iv) by otherwise unreasonably failing and refusing to perform its obligations under the Contract, (v) by routinely attempting to avoid its obligations under the Contract while at the same time accepting SNF from other entities, such as foreign research reactors, and (vi) by repeatedly insisting on the continued performance of the Contract by Plaintiff despite DOE's own refusals and failures to perform.

42. As a direct and proximate result of the Government's partial breaches, Plaintiff has incurred and continues to incur substantial damages.

43. By reason of the foregoing, the Government is liable to Plaintiff for damages for partial breaches of the implied covenants of good faith and fair dealing.

## COUNT THREE

## Taking Without Just Compensation

44. Plaintiff realleges and incorporates by reference Paragraphs 1-43 above.

45. DOE's failure to dispose of the SNF in accordance with its contractual obligations has forced Plaintiff to store the SNF on its own real property at the Ginna Plant site, thereby depriving Plaintiff of the full economic value of its property.

46. DOE's failure to commence and continue disposal of SNF, which has been unnecessary and extraordinary, has deprived and continues to deprive Plaintiff of its real property rights by compelling Plaintiff to use its real property for extended storage of SNF that the Government was obligated to accept for disposal.

47. By reason of the foregoing, the Government's failures and refusals effectuate a taking of Plaintiff's real property rights, for which the Government is liable for just compensation to Plaintiff.

## PRAYER FOR RELIEF

48. Based upon the foregoing, and expressly reserving all rights to assert additional and separate claims for presently unascertainable damages as they arise, Plaintiff hereby respectfully requests that judgment be entered in its favor as follows: That the Court grant judgment on Counts One, Two, and Three in Plaintiff's favor in an amount to be determined in a future proceeding or at trial plus interest, and for such court costs, litigation expenses, and attorneys' fees as are available under applicable law, and for such other compensatory relief as this Court may deem necessary and proper.

Respectfully submitted,

Dated: January 26, 2004

M. Stanford Blanton
BALCH & BINGHAM LLP
1710 Sixth Avenue North
Birmingham, AL 35203
Phone: (205) 226-3417
Fax: (205) 488-5879

COUNSEL OF RECORD FOR PLAINTIFF
ROCHESTER GAS AND ELECTRIC
CORPORATION

Of Counsel:

Ed R. Haden
K.C. Hairston
BALCH & BINGHAM LLP
1710 Sixth Avenue North
Birmingham, AL 35203
Phone: (205) 226-8100
Fax: (205) 226-8798