No. 04-0118-LJB
(Judge Lynn J. Bush)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

ROCHESTER GAS AND ELECTRIC CORPORATION,

Plaintiff,

v.

THE UNITED STATES OF AMERICA

Defendant.

# REPLY IN SUPPORT OF MOTION TO SUBSTITUTE PLAINTIFF AND AMEND CAPTION

Brad Fagg
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 739-5191 Telephone
(202) 739-3001 Facsimile
COUNSEL OF RECORD FOR
R.E. GINNA NUCLEAR POWER PLANT, LLC

M. Stanford Blanton
BALCH & BINGHAM LLP
Post Office Box 306
Birmingham, AL 35201-0306
(205) 251-8100 Telephone
(205) 226-8798 Facsimile
COUNSEL FOR
ROCHESTER GAS AND ELECTRIC
CORPORATION

October 6, 2004

# TABLE OF CONTENTS

**Page**

REPLY IN SUPPORT OF MOTION TO SUBSTITUTE PLAINTIFF AND AMEND CAPTION....................1

I. The Assignment of The Standard Contract is Not Invalidated Because of Arrangements Between the Buyer and Seller Regarding Reimbursement For The One-Time Fee....................3

II. Ginna Is Entitled to Pursue All Damages Relating to The R.E. Ginna Nuclear Power Plant, And Pursuit of Pre-Closing Damages Does Not Represent An Impermissible Assignment....................8

CONCLUSION....................13

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438 (2002) ....................7

*Ginsberg v. Austin*, 968 F.2d 1198 (Fed. Cir. 1992) ....................9, 10

*Hobbs v. McLean*, 117 U.S. 567 (1886) ....................11

*Inhabitants of Montclair v. Ramsdell*, 107 U.S. 147 (1883)) ....................7

*Insurance Company of the West v. United States*, 243 F.3d 1367 (Fed. Cir. 2001) ....................6

*Lowe v. Securities & Exchange Commission*, 472 U.S. 181 (1985)....................7

*Mariconda v. United States*, 1993 WL 53162 (E.D.N.Y. 1993) ....................11

*Rigsbee v. United States*, 226 F.3d 1376 (Fed. Cir. 2000) ....................7

*Splane v. West*, 216 F.3d 1058 (Fed. Cir. 2000) ....................7

*Standard Federal Bank v. United States*, 51 Fed. Cl. 695 (2002) ....................10

*Tuftco Corporation v. United States*, 614 F.2d 740 (Ct. Cl. 1980) ....................9, 11

*United International Investigative Service v. United States*, 26 Cl. Ct. 892 (1992) ....................9, 11

*United States v. Aetna Casualty & Surety Co.*, 338 U.S. 366 (1949) ....................11

*United States v. Jordan*, 186 F.2d 803 (6th Cir. 1951) ....................10,11

*United States v. Shannon*, 342 U.S. 288 (1952) ....................3, 11

## STATUTES AND REGULATIONS

Nuclear Waste Policy Act, 42 U.S.C. § 10222(b)(3) ....................6, 7, 8, 9

Assignment of Claims Act, 31 U.S.C. § 3727 ....................6, 8

Assignment of Contracts Act, 41 U.S.C. § 15 ....................6, 9

10 C.F.R. § 961.11, Article VIII.B.2(b) ....................2

10 C.F.R. § 961.11, Art. XIV ....................6

# INDEX TO APPENDIX

Excerpts from Asset Purchase Agreement For R.E. Ginna Nuclear Power Plant
By And Among Rochester Gas And Electric Corporation, As Seller,
Constellation Generation Group, LLC As Buyer, And Contellation Energy Group, Inc.,
As Buyer's Parent, Dated As Of November 24, 2003…………………………………..……..……1

Letter of Credit to R.E. Ginna Nuclear Power Plant, LLC, from
Citibank, N.A., dated June 10, 2004………………………………………………………….13

# In the United States Court of Federal Claims

**ELECTRONIC CASE FILING**
**(Filed October 6, 2004)**

| | | |
|---|---|---|
| **ROCHESTER GAS AND ELECTRIC CORPORATION,** | ) | |
| **Plaintiff,** | ) | **No. 04-0118-LJB** |
| **v.** | ) | **(Judge Lynn J. Bush)** |
| **THE UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | |

**REPLY IN SUPPORT OF**
**MOTION TO SUBSTITUTE PLAINTIFF AND AMEND CAPTION**[1/]

This lawsuit seeks all damages caused by the failure of the Department of Energy ("DOE") to commence accepting spent nuclear fuel and high level waste ("SNF/HLW") from the R.E. Ginna Nuclear Power Plant, in Ontario, New York. On July 26, 2004, the plaintiffs to this action filed a short motion pursuant to RCFC 25(c) to substitute, as the single plaintiff in this action, the current holder of the Standard Contract at issue in this case (R.E. Ginna Nuclear Power Plant, LLC, or "Ginna") for the former holder of that contract (Rochester Gas and Electric Corporation, or "RG&E"). That motion arose from the consummation of the sale of the nuclear power plant at issue, and the consequent assignment of the Standard Contract from RG&E to Ginna, as expressly allowed by the Standard Contract itself and by the Nuclear Waste Policy Act.

1/ The government has not opposed our motions to temporarily lift the stay for purposes of resolving these motions, and for substitution of counsel.

The government has filed a twenty-page opposition, advancing two arguments. First, the government contends that the assignment of the Standard Contract itself is defective because it is allegedly a "partial" assignment. That argument can be dealt with swiftly, because even assuming the government's view of the law (which is incorrect), the argument is based entirely upon an erroneous factual assumption. The government is wrong when it alleges that RG&E "has not completely divested itself of control over the performance of the Standard Contract or Ginna's right to performance under that contract" due to alleged continuing responsibilities on the part of RG&E regarding the one-time fee. Govt. Opp. at 9. In fact, as reflected in the unqualified written notice of assignment supplied to DOE, the assignment to Ginna of the contractual rights and duties was complete and unconditional insofar as the government is concerned. As the assignee of the Standard Contract for the R.E. Ginna Nuclear Power Plant, Ginna's rights under the contract are subject to the payment to DOE of the one-time fee when and if it ever becomes due, and Ginna is responsible for ensuring that that fee is paid to DOE. While it is true that RG&E retained liability for the one-time fee under the Asset Purchase Agreement between RG&E and Ginna, that retention of liability does not affect DOE's right to seek payment of the one-time fee from Ginna. RG&E's liability is effectively *to Ginna*, not to DOE. When and if the one-time fee ever becomes due,[2/] Ginna will be the sole party DOE will be required to deal with to obtain payment of this fee. Ginna, of course, is then completely free to cause that obligation to be satisfied from whatever source it may wish. It is simply of no concern to DOE whether Ginna seeks to have that obligation satisfied from its own funds, new

---

2/ The contract in these circumstances requires the fee to be paid "anytime prior to first delivery." *See* 10 C.F.R. § 961.11, Article VIII.B.2(b).

financing, or, as here, reimbursement from another party negotiated as part of a complex business transaction.

Second, the government focuses on so-called "pre-existing" claims and argues that the anti-assignment statutes work in these circumstances to require that the government defend against two plaintiffs, rather than one. The government's arguments on this point are also wrong for a host of reasons described further below, which include a misreading of the broadly-worded assignment provision of the Nuclear Waste Policy Act, apparently erroneous assumptions about the terms of the assignment in this case, and an interpretation of the anti-assignment statutes that is contrary to the overwhelming weight of authority. There are few legal propositions more settled than the notion that the overriding purpose of the anti-assignment legislation is to keep the government from having to deal with multiple claimants. *E.g.*, *United States v. Shannon*, 342 U.S. 288, 293 (1952). The position of the government reflected in its opposition in this case would, of course, turn that proposition on its head, and for these and other reasons the government's position should be rejected.

I. The Assignment of The Standard Contract is Not Invalidated Because of Arrangements Between the Buyer and Seller Regarding Reimbursement For The One-Time Fee

The government's arguments regarding the assignment of the Standard Contract should be rejected because: (a) they are premised entirely on the erroneous characterization of the assignment as reserving for RG&E "control over the performance of the Standard Contract or Ginna's right to performance under that contract," Govt. Opp. at 9, which is simply not the case; and (b) the government's arguments are in any event dependent upon an incorrect reading of the broad assignment provisions contained in the Nuclear Waste Policy Act and in the Standard Contract itself.

A. Even accepting for the moment the government's interpretation of the assignment provisions of the NWPA—which, as described below, is incorrect—the government's opposition should be rejected because it is just not true that RG&E "retains control over whether and when Ginna is entitled to performance from DOE under the Standard Contract." Govt. Opp. at 9. As confirmed by the notice to the government required by Article XIV of the Standard Contract, attached at pages 3-4 of the government's appendix, the assignment of the contract was complete and unconditional with respect to the rights and duties involving the DOE. Govt. App. at 3 ("all rights and duties under Contract No. DE-CR01-83NE44419 have been assigned to and assumed by Ginna LLC") (emphasis supplied). That notice does not direct DOE to look to RG&E for payment of the one-time fee or for any other purpose, nor does it suggest that DOE should do anything other than treat the Standard Contract No. DE-CR01-83NE44419 as completely and fully assigned to Ginna (which even the government concedes is permissible). DOE will not, as the government claims, "be required to deal with [RG&E] to attempt to recover the one-time fee payment." Govt. Opp. at 10.

Relevant excerpts from the Asset Purchase Agreement are attached as an appendix to this brief, as well as a letter of credit for the full amount of the one-time fee issued by Citibank N.A. App. 1-17.[3/] The letter of credit, in particular, makes clear the nature of the financial obligations among the parties in these circumstances, and the error in the government's arguments regarding RG&E's purported continuing "control." The letter of credit is on RG&E's behalf, and the defined "beneficiary" in whose favor the letter is drawn is Ginna, not DOE. App. 013. The

3/ If it would be helpful, Ginna would be happy to provide the full Asset Purchase Agreement to the government or to the Court. Indeed, if the government had simply asked, Ginna would have shared that agreement and the other documents establishing the nature of the assignment here so that the government could have assessed its position before preparing and filing its extensive opposition—until that opposition brief was filed, we did not even know whether the government would oppose our motion.

letter of credit provides that "[f]unds under this Credit are available to Beneficiary"—*i.e.*, to Ginna, when the DOE one-time fee becomes due. App. 013 (emphasis supplied).[4/] Similarly, the Asset Purchase Agreement contains several provisions addressing the respective rights and responsibilities between RG&E and Ginna in connection with liability for the amount of the one-time fee and reimbursement of proceeds from any potential damages recovery.[5/] Subject to those provisions, the Asset Purchase Agreement states that "Seller shall assign to Buyer its undivided right, title and interest in and to the Standard Spent Fuel Disposal Contract, including, without limitation, any and all damage claims arising under such contract . . . ." App. 012. When and if DOE provides notice that the one time fee is due and owing, Section 6.13(c) of the Asset Purchase Agreement acknowledges that that notice will be "to Buyer [*i.e.*, Ginna] from the Department of Energy," and the Asset Purchase Agreement then requires Ginna to in turn provide notice to RG&E within two business days, for purposes of reimbursement. App. 012.

In short, it is correct that RG&E is "liable" for the amount of the one-time fee, but it is effectively liable to Ginna, not DOE. As the assignee of the Standard Contract for the plant, Ginna's rights under the contract are subject to the payment to DOE of the one-time fee, when and if it ever becomes due. Ginna is the party that will be responsible for ensuring that the fee is paid, and the only party with whom DOE will have to "deal." It is simply none of the government's business—and it is certainly no grounds for challenging the assignment of the Standard Contract—that Ginna will cause the one time fee obligation to be satisfied through a reimbursement from RG&E, as opposed to causing the payment of that fee to be satisfied by

---

4/ The letter of credit provides that the funds supplied to Ginna are to be paid, at Ginna's direction, directly to DOE, which is a ministerial efficiency that does not alter the nature of the underlying financial obligations, and is surely not a circumstance about which the government can complain.

5/ Namely, Sections 2.1(p), 2.2(k), 6.13(b) and 6.13(d).

some other means. DOE does not have to worry about "dealing" with RG&E, and the government's attempt to craft a litigation argument based upon the contrary and incorrect assertion should be rejected.[6/]

B. In addition to the above-described mischaracterization of the assignment, the government's opposition is legally deficient because it is based upon an erroneous interpretation of the explicit assignment provision provided by Congress in the NWPA. The government correctly concedes that Congress, in the NWPA, mandated that the Assignment of Contracts Act[7/] not apply to assignments of rights and duties under the Standard Contracts, stating: "The rights and duties of a party to a contract entered into under this section may be assignable with transfer of title to the spent nuclear fuel and/or high level radioactive waste." 42 U.S.C. § 10222(b)(3). The Standard Contract, that the government signed, similarly provides that "[t]he rights and duties of the Purchaser may be assignable with transfer of title to the SNF and/or HLW involved; provided, however, that notice of any such transfer shall be made to DOE within ninety (90) days of transfer." 10 C.F.R. § 961.11, Art. XIV (2003).

Despite the broadly-worded provision of the NWPA, the government nevertheless contends that the only thing that is permissible is for "contract holders to assign ***their contracts*** to third parties," and that the NWPA only permits a "***contract*** assignment." Govt. Opp. at 5, 10

---

6/ The government's effort to bolster its arguments by citation to general principles regarding waivers of sovereign immunity is unavailing: the Federal Circuit has held it to be a "generally applicable legal principle" that "waivers of sovereign immunity applicable to the original claimant are to be construed as extending to those who receive assignments. . . ." *Insurance Company of the West v. United States*, 243 F.3d 1367, 1373 (Fed. Cir. 2001) (Tucker Act "contains an unequivocal expression waiving sovereign immunity as to claims, not particular claimants").

7/ 41 U.S.C. § 15. As described further in Part II below, but which is not conceded by the government in its opposition brief, the statutory exception to the federal anti-assignment legislation embodied in the NWPA also applies in these circumstances to the Assignment of Claims Act, 31 U.S.C. § 3727.

(emphasis supplied). That, however, is not what the statute says. The statute says, "[t]he rights and duties of a party to a contract entered into under this section may be assignable …." 42 U.S.C. § 10222(b)(3). The government's position might have some force if Congress had said, for example, that only "contracts entered into under this section" may be assignable. It would have been easy enough to so state, but Congress instead used the words "rights and duties of a party," instead of merely "contracts." A contract can of course consist of any number of discrete rights and duties, which (as the government acknowledges) are generally severable and individually assignable. E.g., Restatement (Second) of Contracts § 326(1) (1981); Govt. Opp. at 10. "Rights and duties" does not mean the same thing as "contracts," and the phrase "rights and duties of a party to" in the statute would be rendered meaningless and superfluous under the government's interpretation.

The government's position regarding the assignments permitted under the NWPA runs afoul of several fundamental interpretive principles. For example, a statute should not be construed so as to leave some of its terms as meaningless or superfluous, *e.g.*, *Splane v. West*, 216 F.3d 1058, 1067 (Fed. Cir. 2000), and the Court "must construe a statute, if at all possible, to give effect and meaning to all of its terms." *Id.* (*citing Lowe v. Securities & Exchange Commission*, 472 U.S. 181, 207-08 n.53 (1985); *Inhabitants of Montclair v. Ramsdell*, 107 U.S. 147 (1883)). As noted above, the government's position fails this elemental test. In all statutory construction cases, the first step is to determine whether the language at issue has a plain and unambiguous meaning, *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 450 (2002), and the inquiry ceases if the statutory language is unambiguous and the statutory scheme is coherent. *Rigsbee v. United States*, 226 F. 3d 1376, 1379 (Fed. Cir. 2000). That is the case here—there are no qualifiers or limitations on what "rights and duties" of a party to a Standard Contract are

assignable. Parties were clearly permitted to assign all rights and duties under a Standard Contract upon the transfer of title to SNF/HLW, and that is precisely what RG&E and Ginna did here. *E.g.*, Govt. App. at 3.

Nevertheless, even if these circumstances represented a so-called "partial assignment" of only certain rights and duties under the Standard Contract, as the government erroneously alleges, such an assignment would be permissible under the plain terms of the NWPA. For this additional reason, the government's opposition is without merit, and plaintiff's motion to substitute parties and amend the caption should be granted.

## II. Ginna Is Entitled to Pursue All Damages Relating to The R.E. Ginna Nuclear Power Plant, And Pursuit of Pre-Closing Damages Does Not Represent An Impermissible Assignment

The second part of the government's opposition seeks to challenge Ginna's ability to pursue so-called "pre-existing claims," or claims for damages caused by the DOE prior to the consummation of the sale of the plant by RG&E to Ginna. If the government's position were adopted, there would be two plaintiffs pursuing damages in connection with the R.E. Ginna Nuclear Power Plant, instead of one. The government's arguments on this score also fail for a number of reasons.

A fatal threshold deficiency to the government's arguments about so-called pre-existing claims relates to its misinterpretation of the assignment provision of NWPA, similar to that described immediately above. As noted, the broad waiver of anti-assignment prohibitions contained in the NWPA is not limited to just "contracts," but instead encompasses all "rights and duties of a party" to a Standard Contract. 42 U.S.C. § 10222(b)(3). The ability to seek and recover existing damages for breach of contract is nothing if not a "right" of a party to a contract. Accordingly, under the plain terms of the NWPA, such a right to seek damages is freely

assignable. The Assignment of Claims Act, 31 U.S.C. § 3727, may of course be waived in the same manner as the Assignment of Contracts Act, 41 U.S.C. § 15, and the unambiguous terms of both the NWPA and the Standard Contract itself implement such a waiver.

Given the plain terms of the NWPA, the government's effort to ascribe different purposes and applications of the Assignment of Contracts Act on the one hand and the Assignment of Claims Act on the other is pointless—Congress waived both statutes with the broad assignment language it used in the NWPA. 42 U.S.C. § 10222(b)(3). Nevertheless, the postulated distinction between the two acts conjured by the government in its opposition is not supported by the case law. In virtually every case that has discussed the application of the two statutes, courts have interpreted the two acts together, cited cases involving the two acts interchangeably, and confirmed that "the legal concepts involved in their applicability are the same." *Tuftco Corporation v. United States*, 614 F.2d 740, 744 n.4 (Ct. Cl. 1980); *see also, e.g., United Int'l Investigative Service v. United States*, 26 Cl. Ct. 892, 898 n. 2 (1992). The different specified remedies in the two acts noted by the government are irrelevant for these purposes—there is nothing to support the argument that the Assignment of Claims Act has an applicability to these circumstances separate and apart from the Assignment of Contracts Act. Neither Act may be cited as a bar in light of the unambiguous provisions of the NWPA and of the Standard Contract allowing the assignments challenged by the government, and Ginna is plainly entitled to pursue the so-called "pre-existing" claims assigned to it by RG&E.

*Ginsberg v. Austin*, 968 F.2d 1198 (Fed. Cir. 1992), relied upon by the government at pages 15-16 of its opposition, is not to the contrary, nor is it even close to being "on point" with these circumstances. *Ginsberg* did not involve an analysis of issues regarding the scope or applicability of the Assignment of Claims Act or the Assignment of Contracts Act, and—other

than noting that the Board below held both acts to have been waived—the court did not mention those statutes. *Ginsberg* instead addressed the standing of an assignor and turned upon common law presumptions of the running of discrete, severable claims for back rent, where there was *not* an "express intention" between the parties to transfer such claims for accrued rent to the assignee. *Ginsberg*, 968 F.2d at 1200. Here, as the terms of the Asset Purchase Agreement confirm, there *was* an "express intention" to transfer all rights and claims under the Standard Contract to Ginna, "including, without limitation, any and all damage claims arising under such contract . . . ." App. 012.[8/] Where such an intent to convey the right to pursue previously-accrued damages exists, the government's effort to invoke the Assignment of Claims Act has been rejected. *E.g., United States v. Jordan*, 186 F.2d 803, 807-08 (6th Cir. 1951) (holding that the Assignment of Claims Act did not apply to subsequent owner's claims against the government for timber damage that occurred prior to conveyance: the "purposes of the statute were in no way violated"), *aff'd*, 342 U.S. 911 (1952). Indeed, if the law were as the government now contends, the Federal Circuit's extended discussion of common law presumptions in *Ginsberg* would have been unnecessary, as the Assignment of Claims Act would have simply barred the assignment of the pre-existing claims for back rent. The Federal Circuit did not, however, so hold. *Ginsberg* fails to provide any support for the government's opposition in these circumstances.

---

8/ As described in Part I above, the fact that RG&E remains liable to Ginna for reimbursement of the one-time fee obligation does not render the assignment "partial" or somehow deficient. Similarly, the fact that Ginna has agreed to provide RG&E with certain payments in the event of a monetary recovery does not call into question the assignment to Ginna of all rights to pursue damages. *E.g., Standard Federal Bank v. United States*, 51 Fed. Cl. 695, 710 (2002) ("An assignment of the proceeds of a claim . . .is not an assignment of the claim itself.") (citations omitted). These circumstances do not present any allegedly impermissible continuing "control" by RG&E.

Finally, the government's position regarding "pre-existing claims" should be rejected because of the sheer incongruity of the circumstances that would result if that position were adopted. As plaintiffs noted in their original motion at page 4 n.2, if the government is successful in its opposition the plaintiffs have respectfully reserved the right to maintain RG&E as a nominal or co-plaintiff with respect to "pre-existing" claims, and would request that the caption of this lawsuit so reflect through the addition of Ginna as a plaintiff. That would mean, however, that there would be two plaintiffs pursuing damages in connection with the R.E. Ginna Nuclear Power Plant, rather than one. It is hard to imagine a result more at odds with the fundamental purposes of the Anti-Assignment legislation. *E.g., United States v. Shannon*, 342 U.S. 288, 293 (1952); *United States v. Aetna Casualty & Sur. Co.*, 338 U.S. 366, 373 (1949); *Hobbs v. McLean*, 117 U.S. 567, 576 (1886); *Tuftco Corporation v. United States*, 614 F.2d 740, 743 (Ct. Cl. 1980). Indeed, courts have held that where the purported application of the anti-assignment legislation would create a result that is inconsistent with the purposes of those statutes—as the government's arguments plainly would here—an exception to the acts should be applied. *E.g., United Int'l Investigative Service v. United States*, 26 Cl. Ct. 892, 897-98 (1992); *see also United States v. Jordan*, 186 F.2d at 807-08; *Mariconda v. United States*, 1993 WL 53162 (E.D.N.Y. 1993) ("Recently, courts have recognized another general exception where application of the Act would not serve the original purpose of the Anti-Assignment Act.").

The prosecution of this lawsuit will be vastly simplified by the existence of one plaintiff, rather than two, and the government will suffer no prejudice thereby. Ginna now owns the nuclear power plant involved, has access to the facilities and documents that will be at issue, and will be responsible for coming forward with evidence necessary to establish all claims for damages relating to the plant. To the extent that the government determines that it needs

materials from RG&E rather than Ginna for its defense, there is no reason that the government could not secure discovery directly from RG&E. The government's arguments that RG&E needs to remain as a party so that the government can attempt to "recover the one-time fee payment and to tie that fee to any recovery in this case," Govt. Opp. at 11, are also misplaced. The absence of RG&E as a named party will not prevent the government from attempting to assert defenses or claims regarding the one-time fee in this case. To the extent that the government attempts to do so, Ginna will demonstrate that those arguments and defenses fail on the merits, and will not rely on the lack of RG&E's status as a named party. In short, there is no legal, policy, or other reason to deny the simple relief requested by plaintiffs in their motion to substitute parties and amend the caption. That motion should be granted.

## CONCLUSION

For the reasons stated above, plaintiffs respectfully request that R.E. Ginna Nuclear Power Plant, LLC ("Ginna") be substituted for Rochester Gas and Electric Corporation ("RG&E") as the single named plaintiff in this action under RCFC 25(c), and that the caption be so amended.

In the alternative, if the Court determines that the alleged "pre-existing" claims may only be prosecuted by RG&E, plaintiffs respectfully request that Ginna be added as a party plaintiff and that RG&E be maintained as a second nominal or co-plaintiff.

Respectfully submitted,

s/ Brad Fagg
Brad Fagg
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 739-5191 Telephone
(202) 739-3001 Facsimile
COUNSEL OF RECORD FOR
R.E. GINNA NUCLEAR POWER PLANT, LLC

s/ M. Stanford Blanton by s/ Brad Fagg
BALCH & BINGHAM LLP
Post Office Box 306
Birmingham, AL 35201-0306
(205) 251-8100 Telephone
(205) 226-8798 Facsimile
COUNSEL FOR
ROCHESTER GAS AND ELECTRIC
CORPORATION

# INDEX TO APPENDIX

Excerpts from Asset Purchase Agreement For R.E. Ginna Nuclear Power Plant
By And Among Rochester Gas And Electric Corporation, As Seller,
Constellation Generation Group, LLC As Buyer, And Contellation Energy Group, Inc.,
As Buyer's Parent, Dated As Of November 24, 2003……………………………..……..……1

Letter of Credit to R.E. Ginna Nuclear Power Plant, LLC, from
Citibank, N.A., dated June 10, 2004……………………………………………………….13

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this _6_th day of October, 2004, the foregoing was filed with the Court electronically, and service is thereby deemed to have been made upon all counsel of record.

s/ Brad Fagg