insurer.

**10.3.10** Notwithstanding the foregoing, each Party may self-insure to the extent it maintains a self-insurance program; provided that, such Party's senior secured debt is rated at investment grade, or better, by Standard & Poor's. For any period of time that a Party's senior secured debt is unrated by Standard & Poor's or is rated at less than investment grade by Standard & Poor's, such Party shall comply with the insurance requirements applicable to it under Sections 10.3.1 through 10.3.9. In the event that a Party is permitted to self-insure pursuant to this Section 10.3.10, it shall not be required to comply with the insurance requirements applicable to it under Sections 10.3.1 through 10.3.9.

**10.3.11** The Parties agree to report to each other in writing as soon as practical all accidents or occurrences resulting in injuries to any person, including death, and any property damage arising out of this Agreement.

**10.3.12** Interconnection Customer covenants, represents and warrants:

A. That it has entered into an agreement of indemnification with the NRC as provided under Section 170 of the Atomic Energy Act of 1954, as amended;

B. That it shall provide and maintain nuclear liability insurance in such amounts and form as required by Section 170 of the Atomic Energy Act of 1954, as amended;

C. That it shall provide and maintain nuclear property insurance in an amount not less than the coverage required by NRC regulations;

D. That it shall extend protection against a Nuclear Incident (as "Nuclear Incident" is defined in the Atomic Energy Act of 1954, as amended), as provided for in (B) and (C) above, for the benefit of Transmission Owner and its consultants, contractors, subcontractors, agents, invitees and employees; and

E. That it shall indemnify, defend and hold harmless, Transmission Owner, its parent, Affiliates, and successors, and their respective officers, directors, employees, agents, contractors, subcontractors, and successors, from and against any and all claims, demands, liabilities, costs, losses, judgments, damages, and expenses (including litigation costs and reasonable attorneys' fees) resulting from any Nuclear Incident (as "Nuclear Incident" is defined in the Atomic Energy Act of 1954, as amended).

In addition, Interconnection Customer covenants, represents and warrants that if the nuclear liability protection system in effect on the effective date of this Agreement expires or is repealed, changed, or modified, it shall, without cost to Transmission Owner, maintain nuclear liability protection, to the extent that it is reasonably available, for the protection of Transmission Owner, through governmental indemnity, limitation of liability and/or insurance.

## ARTICLE 11.

## RELATIONSHIP OF PARTIES

**11.1 <u>No Partnership</u>**. This Agreement shall not be interpreted or construed to create an association, joint venture, agency relationship, or partnership between the Parties or to impose any partnership obligation or partnership liability upon either Party. Neither Party shall have any

right, power or authority to enter into any agreement or undertaking for, or act on behalf of, or to act as or be an agent or representative of, or to otherwise bind, the other Party.

## ARTICLE 12.

## ASSIGNMENT

**12.1** **General**. Except as may be otherwise provided in this Article, this Agreement may be assigned by either Party only with the written consent of the other; provided that either Party may assign this Agreement without the consent of the other Party to any Affiliate of the assigning Party or to an entity that acquires all or substantially all of the assigning Party's assets, which Affiliate or acquiring entity has the legal authority and operational ability to satisfy the obligations of the assigning Party under this Agreement; and provided further that the Interconnection Customer shall have the right to assign this Agreement, without the consent of the Transmission Owner, for collateral security purposes to aid in providing financing for the Generating Facility, provided that the Interconnection Customer will require any secured party, trustee or mortgagee to notify the Transmission Owner of any such assignment. Any financing arrangement entered into by the Interconnection Customer pursuant to this Article will provide that prior to or upon the exercise of the secured party's, trustee's or mortgagee's assignment rights pursuant to said arrangement, the secured creditor, the trustee or mortgagee will notify the Transmission Owner of the date and particulars of any such exercise of assignment right(s). Any attempted assignment that violates this Article is void and ineffective. Any assignment under this Agreement shall not relieve a Party (including the assigning Party) of its obligations without the consent of the other Party, nor shall a Party's obligations be enlarged, in whole or in part, by reason thereof. Where required, consent under this Article to assignment will not be

unreasonably withheld, conditioned or delayed. Notwithstanding any other provision of this Agreement, either Party, without the consent of the other Party, may assign this Agreement, or an interest therein, to any lender or financial institution (whether such lender or institution is acting as a creditor, trustee or otherwise) with respect to any bond indenture or other instrument that is secured by all or substantially all of such Party's property.

## ARTICLE 13.

## WAIVER

**13.1 Waiver**. The failure of a Party to this Agreement to insist, on any occasion, upon strict performance of any provision of this Agreement will not be considered a waiver of any obligation, right, or duty of, or imposed upon, such Party. Any waiver at any time by either Party of its rights with respect to this Agreement shall not be deemed a continuing waiver or a waiver with respect to any other failure to comply with any other obligation, right, or duty of this Agreement. Termination or Default of this Agreement for any reason by the Interconnection Customer shall not constitute a waiver of the Interconnection Customer's legal rights to obtain an interconnection from the Transmission Owner. Any waiver of this Agreement shall, if requested, be provided in writing.

## ARTICLE 14.

## AMENDMENT AND MODIFICATION

**14.1 Amendment**. The Parties may by mutual agreement amend this Agreement, and any such amendment shall only be made through a written instrument duly executed by both of the Parties.

**14.2 Modification by the Parties**. The Parties may by mutual agreement amend the Exhibits and Appendices to this Agreement, and any such amendment shall only be made through a written instrument duly executed by both of the Parties. Such amendment shall become effective and a part of this Agreement upon satisfaction of all Applicable Laws and Regulations.

**ARTICLE 15.**

**GOVERNING LAW**

**15.1 Governing Law**. This Agreement and all rights, obligations, and performances of the Parties hereunder are subject to all applicable federal and state laws, and to all duly-promulgated orders and other duly-authorized action of any Governmental Authority. When not in conflict with or preempted by federal law, this Agreement, and the rights and obligations of the Parties to this Agreement, shall be governed by and construed in accordance with the law of the State of New York, without giving effect to the conflict of laws principles thereof. Except as expressly provided in this Agreement, each Party expressly reserves the right to seek changes in, appeal, or otherwise contest any laws, orders, rules, or regulations of a Governmental Authority relating to this Agreement. Except for those matters that are jurisdictional to FERC or the appellate courts having jurisdiction over FERC matters, any action arising out of or concerning this Agreement must be brought in the federal or state courts of the State of New York. The Parties agree to submit to the exclusive jurisdiction of the courts in the State of New York for the purposes of hearing and determining any action not preempted by federal law and not within the jurisdiction of FERC.

## ARTICLE 16.

## DISPUTES

16.1 **Submission**. In the event either Party has a dispute, or asserts a claim, that arises out of or in connection with this Agreement or its performance, such Party (the "disputing Party") shall provide the other Party with written notice of the dispute or claim ("Notice of Dispute"). Such dispute or claim shall be referred to a designated senior representative of each Party for resolution on an informal basis as promptly as practicable after receipt of the Notice of Dispute by the other Party. In the event the designated representatives are unable to resolve the claim or dispute through unassisted or assisted negotiations within thirty (30) Calendar Days of the other Party's receipt of the Notice of Dispute, such claim or dispute may, upon mutual agreement of the Parties, be submitted to arbitration and resolved in accordance with the arbitration procedures set forth below. In the event the Parties do not agree to submit such claim or dispute to arbitration, each Party may exercise whatever rights and remedies it may have in equity or at law consistent with the terms of this Agreement.

16.2 **External Arbitration Procedures**. Any arbitration initiated under this Agreement shall be conducted before a single neutral arbitrator appointed by the Parties. If the Parties fail to agree upon a single arbitrator within ten (10) Calendar Days of the submission of the dispute to arbitration, each Party shall choose one arbitrator who shall sit on a three-member arbitration panel. The two arbitrators so chosen shall within twenty (20) Calendar Days select a third arbitrator to chair the arbitration panel. In either case, the arbitrators shall be knowledgeable in electric utility matters, including electric transmission and bulk power issues, and shall not have

any current or past substantial business or financial relationships with any party to the arbitration (except prior arbitration). The arbitrator(s) shall provide each of the Parties an opportunity to be heard and, except as otherwise provided herein, shall conduct the arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association ("Arbitration Rules") and any applicable FERC regulations or ISO/RTO rules; provided, however, in the event of a conflict between the Arbitration Rules and the terms of this Article, the terms of this Article shall prevail.

**16.3 Arbitration Decisions**. Unless otherwise agreed by the Parties, the arbitrator(s) shall render a decision within ninety (90) Calendar Days of appointment and shall notify the Parties in writing of such decision and the reasons therefor. The arbitrator(s) shall be authorized only to interpret and apply the provisions of this Agreement and shall have no power to modify or change any provision of this Agreement in any manner. The decision of the arbitrator(s) shall be final and binding upon the Parties, and judgment on the award may be entered in any court having jurisdiction. The decision of the arbitrator(s) may be appealed solely on the grounds that the conduct of the arbitrator(s), or the decision itself, violated the standards set forth in the Federal Arbitration Act or the Administrative Dispute Resolution Act. The final decision of the arbitrator must also be filed with FERC if it affects jurisdictional rates, terms and conditions of service, Interconnection Facilities, or Network Upgrades.

**16.4 Costs**. Each Party shall be responsible for its own costs incurred during the arbitration process and for the following costs, if applicable: (1) the cost of the arbitrator chosen by the Party to sit on the three member panel and one half of the cost of the third arbitrator chosen; or (2) one half the cost of the single arbitrator jointly chosen by the Parties.

## ARTICLE 17.

## MISCELLANEOUS

**17.1** **Severability**. If any provision in this Agreement is finally determined to be invalid, void or unenforceable by any court or other Governmental Authority having jurisdiction, such determination shall not invalidate, void or make unenforceable any other provision, agreement or covenant of this Agreement.

**17.2** **Headings**. The descriptive headings in this Agreement have been inserted for convenience of reference only and are of no significance in the interpretation or construction of this Agreement.

**17.3** **Entire Agreement**. Except as may be otherwise expressly provided herein, this Agreement, including all Appendices, Exhibits and Schedules attached hereto and together with the Interconnection Agreement and the separate writing(s) referenced in Section 17.7 to this Agreement, constitutes the entire agreement between the Parties with reference to the subject matter hereof, and supersedes all prior and contemporaneous understandings or agreements, oral or written, between the Parties with respect to the subject matter of this Agreement. There are no other agreements, representations, warranties, or covenants which constitute any part of the consideration for, or any condition to, either Party's compliance with its obligations under this Agreement. In the event of any conflict between this Agreement and the Interconnection Agreement, the Interconnection Agreement shall control.

**17.4 <u>No Third-Party Beneficiaries</u>.** This Agreement is not intended to and does not create rights, remedies, or benefits of any character whatsoever in favor of any persons, corporations, associations, or entities other than the Parties, and the obligations herein assumed are solely for the use and benefit of the Parties, their successors in interest and, where permitted, their assigns.

**17.5 <u>Multiple Counterparts</u>.** This Agreement may be executed in two or more counterparts, each of which is deemed an original but all constitute one and the same instrument.

**17.6 <u>Estoppels</u>**. Within thirty (30) days following a request in writing by a Party, the Party receiving the request shall execute and deliver to any prospective purchaser or mortgagee of all or any portion of the requesting Party's Land an estoppel certificate confirming that (a) this Agreement is in full force and effect, and has not been modified or amended (or stating any such modifications or amendments), and (b) to the best knowledge of the certifying Party, there are no existing uncured defaults by either Party under this Agreement (or if any default exists, a description of the default).

**17.7 <u>Taxes</u>.** The allocation between the Parties of responsibility for certain taxes and other charges (including real property taxes and assessments) is addressed by separate writing(s) executed by each of them.

**17.8 <u>No Forfeiture</u>**. Except by enforcement of a judgment lien against a Party's Land, nothing contained in this Agreement shall create any reversion, condition, or right of re-entry or other provisions for forfeiture under which a Party can be cut off, subordinated, or otherwise disturbed in the possession of its property.

**17.9 <u>Constructive Notice and Acceptance</u>**. Every Person who hereafter acquires any right, title or interest in or to any portion of the Land shall be conclusively deemed to have consented and agreed to every covenant, term, condition, restriction and provision contained in this Agreement, whether or not any reference to this Agreement is contained in the instrument by which such Person acquired an interest in the Land.

**17.10 <u>Further Assurances</u>**. Each Party agrees that it shall, at any time and from time to time, upon the written request of the other Party, execute and deliver such further documents (in recordable form, if appropriate under the circumstances), and do such further acts and things, as the requesting Party may reasonably request in order to effect the purposes of this Agreement.

**17.11 <u>Effective Date</u>**. This Agreement shall be effective on the Closing Date.

**17.12 <u>Binding Effect</u>**. This Agreement, and the rights and obligations hereof, shall run with the land and shall be binding upon and shall inure to the benefit of the successors and permitted assigns of the Parties hereto.

**17.13 <u>Rules of Interpretation</u>**. This Agreement, unless a clear contrary intention

appears, shall be construed and interpreted as follows: (1) the singular number includes the plural number and vice versa; (2) reference to any person includes such person's successors and assigns, but, in the case of a Party, only if such successors and assigns are permitted by this Agreement, and reference to a person in a particular capacity excludes such person in any other capacity or individually; (3) reference to any agreement (including this Agreement), document, instrument or tariff means such agreement, document, instrument, or tariff as amended or modified and in effect from time to time in accordance with the terms thereof and, if applicable, the terms hereof; (4) reference to any Applicable Laws and Regulations means such Applicable Laws and Regulations as amended, modified, codified, or reenacted, in whole or in part, and in effect from time to time, including, if applicable, rules and regulations promulgated thereunder; (5) unless expressly stated otherwise, reference to any Article, Section, Exhibit or Appendix means such Article or Section of this Agreement or such Exhibit or Appendix to this Agreement, as the case may be, unless the context requires otherwise; (6) "hereunder," "hereof," "herein," "hereto" and words of similar import shall be deemed references to this Agreement as a whole and not to any particular Section, Article or other provision hereof or thereof; (7) "including" (and, with correlative meaning, "include") means including without limiting the generality of any description preceding such term; and (8) relative to the determination of any period of time, "from" means "from and including," "to" means "to but excluding" and "through" means "through and including."

**17.14 Specific Performance.** Each Party acknowledges and agrees that the other Party would be damaged irreparably in the event any of the provisions of this Agreement are not performed in accordance with their specific terms or otherwise are breached. Accordingly, each

Party agrees that the other Party shall be entitled to an injunction or injunctions to prevent breaches of the provisions of this Agreement and to enforce specifically this Agreement and the terms and provisions hereof in any action instituted in any court of the United States having jurisdiction over the Parties and the matter in addition to any other remedy to which it may be entitled at law or in equity.

**17.15 <u>Good Faith Covenant</u>.** The Parties agree that their actions and dealings with each other under this Agreement shall be subject to an express covenant of good faith and fair dealing.

**IN WITNESS WHEREOF**, the Parties hereto have caused this Agreement to be executed as of the day and year first above written.

**ROCHESTER GAS AND ELECTRIC CORPORATION**

By:________________________________________

Name:______________________________

Title:______________________________

**[THE INTERCONNECTION CUSTOMER]**

By:________________________________________

Name:______________________________

Title:______________________________

Acknowledgment for Rochester Gas and Electric Corporation

STATE OF )
) ss.:
COUNTY OF )

On ____________, 200__, before me, the undersigned, personally appeared ____________________, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

____________________________________
Notary Public

Acknowledgment for [the Interconnection Customer]

STATE OF )
) ss.:
COUNTY OF )

On ____________, 200__, before me, the undersigned, personally appeared ____________________, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

____________________________________
Notary Public

# TABLE OF EXHIBITS AND APPENDICES


| | |
|---|---|
| Exhibit A | Description of Generation Land |
| Exhibit B | Description of Station 13A Parcel |
| Exhibit C | Interconnection Customer's Easement Equipment |
| Exhibit D | Transmission Owner's Easement Equipment |
| Exhibit E | Interconnection Customer's Facilities |
| Exhibit F | Addresses for Delivery of Notices |
| Exhibit G | Joint Use Facilities |
| Exhibit H | Interconnection Customer's Interconnection Facilities |
| Exhibit I | Transmission Owner's Interconnection Facilities |
| Exhibit J | Points of Interconnection |
| Appendix A | One-Line Diagram |

# EXHIBIT A

[This Exhibit A will be conformed to Schedule 4.13(a) of the APA.]

## DESCRIPTION OF GENERATION LAND

## PARCEL A

ALL THAT TRACT OR PARCEL OF LAND situate in the Town of Ontario, County of Wayne and State of New York, described as follows: Being part of Township number fourteen in the Third Range of Townships, and bounded and described as commencing at the northeast corner of the thirty-six acre parcel of land conveyed to James Barnhart by Henry Barnhart by Deed recorded in the Wayne County Clerk's Office, Liber 72 of Deeds at page 193, thence southerly along the east line of said thirty-six acre parcel of land in said Deed described, a distance of five hundred feet from the shore of Lake Ontario; thence westerly on a line perpendicular to said east line of the parcel of land hereby described and hereby conveyed, one hundred and two feet; thence northerly on a line parallel with said east line of said thirty-six acre parcel of land above referred to, about five hundred feet to the shore of Lake Ontario; thence easterly along the shore of Lake Ontario to the place of beginning; being part of the premises described in said Deed from Henry Barnhart to James Barnhart hereinbefore referred to.

Being the same premises described and conveyed to Carrie E. Towner by Deed dated July 8, 1941, and recorded in the Wayne County Clerk's Office on July 23, 1941, in Liber 335 of Deeds at page 206, and

ALSO ALL THAT TRACT OR PARCEL OF LAND situate in the Town of Ontario, Wayne County, New York, being part of the Township Number Fourteen in the Third Range of Townships and bounded and described as follows: Commencing at the shore line of Lake Ontario at the northwest corner of a parcel of land conveyed to Carrie E. Towner by Ada L. Barnhart by Deed recorded in the Wayne County Clerk's Office in Liber 335 of Deeds at page 206; thence westerly along the shore of Lake Ontario to the northwest corner of a parcel of land described in a Deed from Henry Barnhart to James Barnhart, which Deed is recorded in the Wayne County Clerk's Office in Liber 72 of Deeds at page 193; thence southerly along the west line of said parcel of land so conveyed to James Barnhart by Henry Barnhart, as above stated, five hundred and fifteen (515) feet to an iron stake, which iron stake was placed five hundred and fifteen (515) feet south of the shore of Lake Ontario, as such shore line was on August 1, 1942, as appears by the description of a parcel of land conveyed by Ada L. Barnhart to Arlene M. Magde by Deed recorded in the Wayne County Clerk's Office in Liber 340 of Deeds at page 135; thence easterly on a line which leads to a point where a second iron stake is placed in the east line of the parcel of land conveyed by Henry Barnhart to James Barnhart, hereinbefore referred to, to a point in said line, which is the extension southerly of the west line of a parcel of land conveyed by Ada L. Barnhart to Carrie E. Towner by said Deed, hereinbefore referred to as having been recorded in the Wayne County Clerk's Office in Liber 335 of Deeds at page 206; thence northerly along the extension of said west line of said parcel of land so conveyed to the party of

the first part and the west line of the parcel of land so conveyed to the party of the first part about five hundred and fifteen (515) feet to the shore of Lake Ontario. The end of the south line of the parcel of land hereby described is five hundred and fifteen (515) feet from the shore of Lake Ontario, as such shore line existed on August 1, 1942.

ALSO THAT OTHER TRACT OR PARCEL OF LAND situate in the Town of Williamson, County of Wayne and State of New York, and which adjoins the first parcel described in this PARCEL A and bounded as follows: On the north one hundred and two (102) feet by the south line of that parcel of land conveyed to Carrie E. Towner by Ada L. Barnhart, by Deed recorded in the Wayne County Clerk's Office in Liber 335 of Deeds at page 206; on the west by the west line of said parcel of land so conveyed to the party of the first part, extended southerly fifteen (15) feet; on the south by a line parallel with the south line of said parcel of land so conveyed to Carrie E. Towner, and fifteen (15) feet southerly therefrom; and on the east, fifteen (15) feet by the east line of the parcel of land conveyed by Henry Barnhart to James Barnhart by Deed recorded in the Wayne County Clerk's Office in Liber 72 of Deeds at page 193.

Being the same premises described and conveyed to Carrie E. Towner by Deed dated March 25, 1944, and recorded in the Wayne County's Clerk's Office on April 14, 1944, in Liber 346 of Deeds at page 510, and

ALSO ALL THAT TRACT OR PARCEL OF LAND situate in the Town of Ontario, County of Wayne and State of New York, being part of lots Nos. 19 and 24 in Elihu Carvers Allotment of part of Township No. 4 in the Third Range of Townships and described as follows: Beginning at an iron stake, or permanent marker, 515 feet from the shore of Lake Ontario, as it was on August 1, 1942, and upon the east line of the 36 acre parcel of land conveyed by Henry Barnhart to James Barnhart by Deed dated January 22, 1859, and recorded in the Wayne County Clerk's Office in Liber 72 of Deeds, page 193; thence southerly along the said east line of the 36 acre parcel, a distance of 187 feet to a concrete marker, or permanent moment; thence westerly at about a 82.5 degree angle, 480 feet more or less to an iron stake or other permanent monument, 515 feet from the shore of Lake Ontario as it was on August 1, 1942, and upon the westerly line of the said 36 acre tract; thence in a general easterly direction along the south line of lands deeded to Carrie E. Towner by Deed recorded in the Wayne County Clerk's Office on March 25, 1944, in Liber 346 of Deeds, page 510, and Deed recorded July 21, 1941, to the place of beginning.

Being the same premises described and conveyed to Carrie E. Towner by Deed dated November 5, 1955, and recorded in the Wayne County Clerk's Office on the 13th day of December, 1956, in Liber 449 of Deeds at page 48.

Also, on a quit-claim basis, all strips and gores lying between all of the premises hereinbefore described in this PARCEL A and the lands of Rochester Gas and Electric Corporation adjoining the same.

All of the tracts or parcels of land described in this PARCEL A being the same premises conveyed to Rochester Gas and Electric Corporation by deed from Carrie E. Towner dated

January 6, 1965, and recorded in the Wayne County Clerk's Office in Liber 551 of Deeds at page 203 on January 8, 1965.

**PARCEL B**

ALL THAT TRACT OR PARCEL OF LAND situate in the Town of Ontario, County of Wayne and State of New York, being a part of Lot No. Ninety-two (92) in the Eastern Division of Township 14, in the Third Range of Townships, more particularly bounded and described as follows:

Beginning at an iron pipe set on the west line of Lot 92, N 8° 33' E, 2516.3 feet from the center line of the Lake Road, thence running N 8° 33' E, 718.9 feet along the westerly line of Lot 92, being the easterly line of land now or formerly of F. B. Towner, formerly owned by the heirs of James Barnhart, to an iron axle set 15.1 feet southerly from the top of the bank of Lake Ontario; thence continuing north 8° 33' East to the shore of Lake Ontario; thence southeasterly along the shore of Lake Ontario to a point in a line extending S 84° 19' E from the iron pipe at the point of beginning; thence N 84° 19' W to an iron pipe set 12.1 feet westerly from the top of the bank; thence continuing N 84° 19' W 269.9 feet to the point of beginning, containing an area of 2.6 acres more or less in accordance with a survey made by Harnish and Lookup on December 31, 1946.

Being the same parcel of land in said Lot 92 which was one of the parcels excepted and reserved in a certain deed heretofore given by Margaret P.C. Wickes to Ralph B. Bailey et al. dated January 20, 1947, and recorded March 6, 1947, in the Wayne County Clerk's Office in Liber 364 of Deeds at page 134, to which deed reference is hereby had.

Being the same premises which were heretofore conveyed to Elizabeth Wickes Crain by deed of Francis Cogswell Wickes, et al., dated December 25, 1954, and recorded in the Wayne County Clerk's Office in Liber 425 of Deeds at page 569.

Being the same premises conveyed to Rochester Gas & Electric Corporation by deed of Elizabeth Wickes Crain dated July 12, 1958, and recorded on July 16, 1958, in the Wayne County Clerk's Office in Liber 463 of Deeds at page 469.

**PARCEL C**

ALL THAT TRACT OR PARACEL OF LAND, situate in Lots Nos. 19 and 24, Township 14, Range 3, Town of Ontario, County of Wayne and State of New York, bounded and described as follows:

Beginning at a point in the easterly line of premises conveyed to Glen E. Gates, by Floyd I. Gates and Kittie C. Gates, his wife, by deed dated June 26, 1925, and recorded in Wayne County

Clerk's Office in Liber 272 of Deeds at page 347, which is four hundred seventy-five (475) feet northerly of the center line of the Lake Road measured along said east line; thence No. 85° 00' W. parallel to the center line of said Lake Road approximately 1107.90 feet to a point which is five hundred (500) feet easterly from the westerly line of said premises conveyed to Glen E. Gates by said Floyd I. Gates and Kittie C. Gates, his wife, as aforesaid, said distance of 500 feet being measured along a line parallel to the center line of the said Lake Road and at all points 475 feet northerly therefrom; thence N. 9° 26' 10" E. parallel to said westerly line and at all points five hundred (500) feet easterly therefrom to the high water line of Lake Ontario; thence in an easterly direction along the high water line of Lake Ontario one thousand one hundred twenty-five (1125) feet, plus or minus, to a point in the easterly line of premises so conveyed to Glen E. Gates by Floyd I. Gates and Kittie C. Gates, his wife, as aforesaid; thence S. 9° 16' 40" W. along land formerly owned by Arthur Towner sixty-five (65) feet, plus or minus, to an iron pipe; thence continuing S. 9° 16' 40" W. along land formerly owned by Arthur Towner and land owned by Luther Gates two thousand five hundred ninety-seven and thirty-four one-hundredths (2597.34) feet to the place of beginning, reference being hereby made to a survey made by Harnish & Lookup on September 19, 1963.

Being a portion of the premises conveyed by Floyd I. Gates and Kittie C. Gates, his wife, to Glen E. Gates by deed dated June 26, 1925, and recorded in the Wayne County Clerk's Office in Liber 272 of Deeds at page 347.

Expressly excluding any right of way or easement to pass or repass across the premises now or formerly of Glen E. Gates adjoining the above described premises and any right of way or easement over premises now or formerly of Glen E. Gates adjoining the above described premises to the public highway by necessity or otherwise.

Subject to the terms of a land contract made between Glen E. Gates and Rochester Gas and Electric Corporation, dated August 23, 1964, and recorded in the Wayne County Clerk's Office in Liber 536 of Deeds at page 143.

Excepting and reserving, however, any and all rights to the use of the land described in this PARCEL C reserved by Glen E. Gates for himself, his heirs, distributes, executors or administrators, his widow or his children, all as set forth in and pursuant to the terms of the aforesaid land contract.

Being the same premises conveyed to Rochester Gas and Electric Corporation by deed from Glen E. Gates dated January 2, 1969, and recorded in the Wayne County Clerk's Office in Liber 611 of Deeds at page 129 on January 6, 1969.

**PARCEL D**

ALL THAT TRACT OR PARCEL OF LAND, situate in the Town of Ontario, County of Wayne and State of New York, being parts of lots numbers Nineteen and Twenty-four in Elihu Carvers Allotment of part of Township Number Fourteen in the Third Range of Townships, and

described as follows:

Beginning at a point on the easterly line of a thirty-six acre parcel of land conveyed by Henry Barnhart to James Barnhart by deed dated January 22, 1859, and recorded in the Wayne County Clerk's Office in Liber 72 of Deeds at page 193 in the center of a creek which flows easterly across said line and is approximately 560 feet north of the center line of the Lake Road, so-called, measured along the easterly boundary line of said thirty-six acre parcel; thence in a westerly direction up the center of said creek to a point where the center of said creek intersects the westerly line of said thirty-six acre parcel, which point is approximately 490 feet north of the center line of the Lake Road, so-called, measured along the westerly boundary of said thirty-six acre parcel; thence northerly along the westerly line of said thirty-six acre parcel to a point 515 feet from the shore of Lake Ontario as such shore line was on August 1, 1942, marked by an iron stake or other permanent monument; thence in an easterly direction to a point in the easterly line of said thirty-six acre parcel 515 feet from the shore of Lake Ontario as it was on August 1, 1942, marked by an iron stake or other permanent monument; thence southerly along the easterly line of said thirty-six acre parcel to the place of beginning.

TOGETHER with a right of way in common with others for pedestrians, automobiles, motor vehicles, equipment, horse drawn vehicles and domestic animals to and from the highway know as the Lake Road, northerly to the parcel of land hereby conveyed over strip of land twenty (20) feet in width, east and west, and the east boundary line of said strip of land is the east boundary line of said thirty-six acre parcel, SUBJECT, HOWEVER, to rights of way granted by Ada L. Barnhart for the benefit of the owners or those who may hereafter own or occupy that part of the said thirty-six acre parcel which is bounded on the south by that parcel hereby described and on the north by Lake Ontario, said rights of way passing over a strip of land twenty (20) feet in width, bounded on the east by the east line of said thirty-six acre parcel and on the west by a line parallel with the said east line and twenty (20) feet westerly therefrom, extending from the north line of the property hereby described to the south line of the property hereby described.

Being the same property conveyed to Luther Gates and Elizabeth Gates, his wife, by Ernest L. Adams and Charlotte Adams, his wife, by deed dated March 31, 1955, and recorded in the Wayne County Clerk's Office in Liber 428 of Deeds at page 255.

EXCEPTING AND RESERVING THEREFROM, HOWEVER, ALL THAT TRACT OR PARCEL OF LAND, situate in the Town of Ontario, County of Wayne and State of New York, being part of lots Nos. 19 and 24 in Elihu Carvers Allotment of part of Township No. 4 in the Third Range of Townships and described as follows: Beginning at an iron stake or permanent marker, 515 feet from the shore of Lake Ontario, as it was on August 1, 1942, and upon the east line of the 36 acre parcel of land conveyed by Henry Barnhart to James Barnhart by deed dated January 22, 1859, and recorded in the Wayne County Clerk's Office in Liber 72 of Deeds, page 193; thence southerly along the said east line of the 36 acre parcel, a distance of 187 feet to the concrete marker, or permanent monument; thence westerly at about a 82.5 degree angle, 480 feet more or less to an iron stake, or other permanent monument, 515 feet from the shore of Lake Ontario as it was on August 1, 1942, and upon the westerly line of the said 36 acre tract; thence in a general easterly direction along the south line of lands deeded to Carrie E. Towner by deed

recorded in the Wayne County Clerk's Office on March 25, 1944, in Liber 346 of Deeds, page 510, and deed recorded July 21, 1941, to the place of beginning.

The property hereby excepted being the same property conveyed by Luther Gates and Elizabeth Gates, his wife, to Carrie E. Towner dated November 5, 1955, and recorded in the Wayne County Clerk's Office in Liber 449 of Deeds at page 48.

The foregoing premises being the same property conveyed to Luther Gates and Elizabeth Gates, his wife, by deed recorded in the Wayne County Clerk's Office in Liber 428 of Deeds, page 255; excepting the parcel herein described as conveyed to Carrie E. Towner, as aforesaid.

Subject to the terms of a land contract made between Luther Gates and Elizabeth Gates, his wife, and Rochester Gas and Electric Corporation, dated August 23, 1964, and recorded in the Wayne County Clerk's Office in Liber 536 of Deeds at page 135.

Excepting and reserving, however, any and all rights to the use of the land described in this PARCEL D reserved by Luther Gates and Elizabeth Gate, his wife, for themselves, their heirs, distributes, executors and administrators, and in the event of the death of Luther Gates for his widow or his children, all as set forth in and pursuant to the terms of the aforesaid land contract.

Being the same premises conveyed to Rochester Gas and Electric Corporation by deed from Luther Gates and Elizabeth Gates, his wife, dated January 2, 1969, and recorded in the Wayne County Clerk's Office in Liber 611 of Deeds at page 132 on January 6, 1969.

**PARCEL E**

ALL THAT TRACT OR PARCEL OF LAND, situate in the Town of Ontario, County of Wayne and State of New York, being part of Lot No. 92, Township 14, Range 3, containing ninety-six (96) acres, be the same more or less, bounded north by Lake Ontario, east by lands formerly of Ellwanger and formerly of Frederick H. Hodges, south by the center of the highway known as the Lake Road and west by lands formerly owned by the heirs of James Barnhart.

Excepting, however, from the last above described premises that part thereof conveyed to Elizabeth Wickes Crain by deed recorded in Liber 425 of Deeds at page 569 on December 30, 1954.

The above described premises being part of the premises conveyed to Ralph B. Bailey and Elsie Bailey, his wife, and Robert F. Bailey and Anna Bailey, his wife, by deed recorded in Liber 364 of Deeds at page 134 on March 6, 1947.

The above described premises being part of the premises conveyed to Rochester Gas and Electric Corporation as PARCEL II by deed from Ralph B. Bailey and Elsie Bailey, his wife, and Robert F. Bailey and Anna Bailey, his wife, dated July 14, 1958, and recorded in the Wayne County Clerk's Office in Liber 463 of Deeds at page 483 on July 16, 1958.

EXCEPTING AND RESERVING to Rochester Gas and Electric Corporation a permanent easement to, from time to time, lay, construct, reconstruct, erect, relocate, repair, increase, enlarge, raise, lower, replace, protect, operate, and remove, in, upon, over, under, above, across, along and through premises described in this PARCEL E, as more particularly described hereinafter, the facilities, and for the purposes, set forth as follows:

A. Any and all poles, lines of poles, supporting structures, cables, crossarms, anchors, guys, braces, wires, conduits, and all other appurtenances and fixtures adaptable to the present or future needs, uses, or purposes of Rochester Gas and Electric Corporation for the transmission and distribution of electricity, data and communications for any purpose, the easement premises therefor being more particularly described hereinafter.

B. Any and all conduits, tunnels, manholes, wires, cables, meters, transformers, switching equipment, and all other appurtenances and fixtures adaptable to the present or future needs, uses, or purposes of Rochester Gas and Electric Corporation for the transmission and distribution of electricity, data and communications for any purpose, the easement premises therefor being more particularly described hereinafter. Manhole covers, transformer enclosures and service pedestals may be at or above ground level within said easement premises.

C. Any and all mains, pipes, regulators, valves, vaults, meters, stacks, manholes, cabinets, services, and all other appurtenances and fixtures adaptable to the present or future needs, uses, or purposes of Rochester Gas and Electric Corporation for the underground transmission and distribution of gas for any purpose, the easement premises therefor being more particularly described hereinafter. Manhole covers, valves, cabinets and stacks may be at or above ground level within said easement premises.

The easement premises for all of the foregoing are more particularly described as follows:

> That portion of the tract or parcel of land described in this PARCEL E that is bounded to the south by the centerline of Lake Road, bounded to the north by a line parallel to (and ten (10) feet north of) the north boundary of Lake Road, bounded to the west by the west boundary of said PARCEL E and bounded to the east by the east boundary of said PARCEL E.

Rochester Gas and Electric Corporation, by its employees, servants, agents, and contractors, shall have the right to enter upon the easement premises, and adjacent premises, and to utilize the same, whenever necessary for the exercise of the rights and privileges granted herein.

Together with the right, but not the duty, to trim, cut, and remove at any time such growth or objects, of any nature, as, in the reasonable opinion of Rochester Gas and Electric Corporation, may interfere with, obstruct, or endanger the rights and privileges granted herein to, or the facilities of, Rochester Gas and Electric Corporation.

After any exercise of the rights and privileges granted herein, Rochester Gas and Electric

Corporation shall leave the premises in as good condition as found, and Rochester Gas and Electric Corporation shall make reasonable compensation to the owner of the easement premises for any damage (except as specifically permitted herein) to the property of said owner caused by Rochester Gas and Electric Corporation's exercise of the rights and privileges granted herein.

## PARCEL F

ALL THAT TRACT OR PARCEL OF LAND, situate in the Town of Ontario, County of Wayne and State of New York, lying on the southern border of Lake Ontario, known as Lot #91 in the east division of Township #14, in the third range of townships and bounded as follows: On the north by Lake Ontario; on the west by land now or formerly owned by Ralph B. Bailey and Elsie Bailey, his wife, and Robert F. Bailey and Anna Bailey, his wife; on the south by the center of the highway known as the Lake Road; and on the east by land now or formerly owned by Lyman Brewer, containing 77 acres, more of less.

Being the same premises conveyed to Laura S. Ellwanger by deed recorded in Liber 229 of Deeds, page 385, on April 22, 1913, and devised by said Laura S. Ellwanger by Will recorded in Monroe County Clerk's Office on January 7, 1949, in Liber 2526 of Deeds at page 432.

Being also the same premises conveyed to Rochester Gas and Electric Corporation by deed from Evelyn S. Field dated July 14, 1958, and recorded in the Wayne County Clerk's Office in Liber 463 of Deeds at page 472 on July 16, 1958.

EXCEPTING AND RESERVING to Rochester Gas and Electric Corporation a permanent easement to, from time to time, lay, construct, reconstruct, erect, relocate, repair, increase, enlarge, raise, lower, replace, protect, operate, and remove, in, upon, over, under, above, across, along and through premises described in this PARCEL F, as more particularly described hereinafter, the facilities, and for the purposes, set forth as follows:

A. Any and all poles, lines of poles, supporting structures, cables, crossarms, anchors, guys, braces, wires, conduits, and all other appurtenances and fixtures adaptable to the present or future needs, uses, or purposes of Rochester Gas and Electric Corporation for the transmission and distribution of electricity, data and communications for any purpose, the easement premises therefor being more particularly described hereinafter.

B. Any and all conduits, tunnels, manholes, wires, cables, meters, transformers, switching equipment, and all other appurtenances and fixtures adaptable to the present or future needs, uses, or purposes of Rochester Gas and Electric Corporation for the transmission and distribution of electricity, data and communications for any purpose, the easement premises therefor being more particularly described hereinafter. Manhole covers, transformer enclosures and service pedestals may be at or above ground within said easement premises.

C. Any and all mains, pipes, regulators, valves, vaults, meters, stacks, manholes, cabinets, services, and all other appurtenances and fixtures adaptable to the present or future needs, uses,

or purposes of Rochester Gas and Electric Corporation for the underground transmission and distribution of gas for any purpose, the easement premises therefor being more particularly described hereinafter. Manhole covers, valves, cabinets and stacks may be at or above ground level within said easement premises.

The easement premises for all of the foregoing are more particularly described as follows:

> That portion of the tract or parcel of land described in this PARCEL F that is bounded to the south by the centerline of Lake Road, bounded to the north by a line parallel to (and ten (10) feet north of) the north boundary of Lake Road, bounded to the west by the west boundary of said PARCEL F and bounded to the east by the east boundary of said PARCEL F.

Rochester Gas and Electric Corporation, by its employees, servants, agents, and contractors, shall have the right to enter upon the easement premises, and adjacent premises, and to utilize the same, whenever necessary for the exercise of the rights and privileges granted herein.

Together with the right, but not the duty, to trim, cut, and remove at any time such growth or objects, of any nature, as, in the reasonable opinion of Rochester Gas and Electric Corporation, may interfere with, obstruct, or endanger the rights and privileges granted herein to, or the facilities of, Rochester Gas and Electric Corporation.

After any exercise of the rights and privileges granted herein, Rochester Gas and Electric Corporation shall leave the premises in as good condition as found, and Rochester Gas and Electric Corporation shall make reasonable compensation to the owner of the easement premises for any damage (except as specifically permitted herein) to the property of said owner caused by Rochester Gas and Electric Corporation's exercise of the rights and privileges granted herein.

## PARCEL G

ALL THAT TRACT OR PARCEL OF LAND situate in Lots Numbers 19 and 24, Township 14, Range 3, Town of Ontario, County of Wayne, and State of New York, bounded and described as follows:

Beginning at a point in the westerly line of premises conveyed to Glen E. Gates by Floyd I. Gates and Kittie C. Gates, his wife, by deed dated June 26, 1925, and recorded in the Wayne County Clerk's Office in Liber 272 of Deeds on page 347, which is Four hundred seventy-five (475) feet northerly from the centerline of the Lake Road measured along said west line, which is also the property line between Lots 19 and 24 on the east side and Lots 20 and 23 on the west side; thence N 9° 26' 10" E along said westerly line to the high water line of Lake Ontario; thence in an easterly direction along the high water line along Lake Ontario Five Hundred (500) feet, plus or minus, to the northwesterly corner of the premises conveyed by Glen E. Gates to Rochester Gas and Electric Corporation by deed dated January 2, 1969, and recorded in the Wayne County Clerk's Office in Liber 611 of Deeds at page 129; thence S 9° 26' 10" W along the westerly line

of premises conveyed by Glen E. Gates to Rochester Gas and Electric Corporation as aforesaid to the southwesterly corner thereof; thence N 85° 0' W parallel to the center line of said Lake Road a distance of Five Hundred (500) feet, more or less, to the place beginning.

Being a portion of the premises conveyed by Floyd I. Gates and Kittie C. Gates, his wife, to Glen E. Gates by deed dated June 26, 1925, and recorded in the Wayne County Clerk's Office in Liber 272 of Deeds on page 347.

Subject to a Land Contract made between Glen E. Gates and the Rochester Gas and Electric Corporation, dated August 3, 1971 and recorded in the Wayne County Clerk's Office in Liber 643 of Deeds on page 819.

Excepting and reserving, however, any and all rights to the use of the land described in this PARCEL G and reserved by Glen E. Gates in the Land Contract, dated August 3, 1971, for his heirs, distributes, executors or administrators, and his children, all as set forth in and pursuant to the terms of the aforesaid land contract.

Being the same premises conveyed to Rochester Gas and Electric Corporation by deed from Luther H. Gates dated June 7, 1976, and recorded in the Wayne County Clerk's Office in Liber 697 of Deeds at page 837 on June 23, 1976.

## PARCEL H

ALL THAT TRACT OR PARCEL OF LAND situate in Lot Numbers 20 and 23, Township 14, Range 3, Town of Ontario, County of Wayne and State of New York, bounded and described as follows:

Beginning at the point of intersection of the centerline of Lake Road with the westerly line of premises conveyed to Glen E. Gates by Floyd I. Gates and Kittie C. Gates, his wife, by deed dated June 26, 1925, and recorded in the Wayne County Clerk's Office in Liber 272 of Deeds at page 347; thence S84° -44'-28" W along the centerline of Lake Road a distance of 1384.615 feet to a railroad spike in the centerline of the road; thence S 84° 55'-07" W along the centerline of the road a distance of 344.988 feet to a point; thence N 1° -12'-31" W a distance of approximately 2887.72 feet to the high water line of Lake Ontario; thence easterly along the high water line of Lake Ontario to the intersection of the Lake and the above mentioned westerly line of premises conveyed to Glen E. Gates, by deed dated June 26, 1925, which is also the Lot line between Lots 19 and 24 on the east and Lots 20 and 23 on the west; thence S 0° -49'-21" E a distance of approximately 3107.95 feet to the place of beginning, containing approximately 122.47 acres in all, all in accordance with the revised map of R. I. McCutchan dated February 19, 1976.

Excepting therefrom, however, a vacant lot located in the southwesterly corner of said farm having a frontage on the north side of Lake Road of one hundred fifty (150) feet and a depth from the northerly side of Lake Road of three hundred (300) feet.

Being the same property as described in the Land Contract made between Ross A. Gates and Rochester Gas and Electric Corporation dated November 22, 1971, and recorded in the Wayne County Clerk's Office in Liber 643 of Deeds at page 825.

Subject to the terms of a Land Contract made between Ross A. Gates and Rochester Gas and Electric Corporation, dated November 22, 1971, and recorded in the Wayne County Clerk's Office in Liber 643 of Deeds at page 825.

Excepting all rights and privileges of others arising from thirteen leases described in said contract and the cottages, garages and sheds owned by the lessees of said thirteen leases.

There is also excepted and reserved during the lifetime of Ross A. Gates the use of the large house where he resided on June 26, 1976, which house is known as 2482 Lake Road, and the yard surrounding the same together with the garage and sheds located in such yard, rent free, all as reserved and described by paragraphs numbered "3" and "7" of said Land Purchase Contract.

There is also excepted and reserved the right to use the remainder of the premises for agricultural purposes, rent free, all as reserved and conditioned by paragraphs numbered "4", "5" and "7" of said Land Purchase Contract.

Excepting the premises previously conveyed by Rochester Gas and Electric Corporation to Peter Dusel and Sandra Dusel, husband and wife, by deed dated January 30, 2001, and recorded in the Wayne County Clerk's Office in Liber 991 of Deeds at page 221 on February 8, 2001.

Being a portion of the premises conveyed to Rochester Gas and Electric Corporation by deed from Ross A. Gates dated June 26, 1976, and recorded in the Wayne County Clerk's Office in Liber 698 of Deeds at page 358 on July 2, 1976.

EXCEPTING AND RESERVING to Rochester Gas and Electric Corporation a permanent easement to, from time to time, lay, construct, reconstruct, erect, relocate, repair, increase, enlarge, raise, lower, replace, protect, operate, and remove, in, upon, over, under, above, across, along and through premises described in this PARCEL H, as more particularly described hereinafter, the facilities, and for the purposes, set forth as follows:

A. Any and all poles, lines of poles, supporting structures, cables, crossarms, anchors, guys, braces, wires, conduits, and all other appurtenances and fixtures adaptable to the present or future needs, uses, or purposes of Rochester Gas and Electric Corporation for the transmission and distribution of electricity, data and communications for any purpose, the easement premises therefor being more particularly described hereinafter.

B. Any and all conduits, tunnels, manholes, wires, cables, meters, transformers, switching equipment, and all other appurtenances and fixtures adaptable to the present or future needs, uses, or purposes of Rochester Gas and Electric Corporation for the transmission and distribution of electricity, data and communications for any purpose, the easement premises therefor being

more particularly described hereinafter. Manhole covers, transformer enclosures and service pedestals may be at or above ground within said easement premises.

C. Any and all mains, pipes, regulators, valves, vaults, meters, stacks, manholes, cabinets, services, and all other appurtenances and fixtures adaptable to the present or future needs, uses, or purposes of Rochester Gas and Electric Corporation for the underground transmission and distribution of gas for any purpose, the easement premises therefor being more particularly described hereinafter. Manhole covers, valves, cabinets and stacks may be at or above ground level within said easement premises.

The easement premises for all of the foregoing are more particularly described as follows:

> That portion of the tract or parcel of land described in this PARCEL H that is bounded to the south by the centerline of Lake Road, bounded to the north by a line parallel to (and ten (10) feet north of) the north boundary of Lake Road, bounded to the west by the west boundary of said PARCEL H and bounded to the east by the east boundary of said PARCEL H.

Rochester Gas and Electric Corporation, by its employees, servants, agents, and contractors, shall have the right to enter upon the easement premises, and adjacent premises, and to utilize the same, whenever necessary for the exercise of the rights and privileges granted herein.

Together with the right, but not the duty, to trim, cut, and remove at any time such growth or objects, of any nature, as, in the reasonable opinion of Rochester Gas and Electric Corporation, may interfere with, obstruct, or endanger the rights and privileges granted herein to, or the facilities of, Rochester Gas and Electric Corporation.

After any exercise of the rights and privileges granted herein, Rochester Gas and Electric Corporation shall leave the premises in as good condition as found, and Rochester Gas and Electric Corporation shall make reasonable compensation to the owner of the easement premises for any damage (except as specifically permitted herein) to the property of said owner caused by Rochester Gas and Electric Corporation's exercise of the rights and privileges granted herein.

**EXHIBIT B**

**DESCRIPTION OF STATION 13A PARCEL**

ALL THAT TRACT OR PARCEL OF LAND, situate in the Town of Ontario, County of Wayne and State of New York, being part of Lot No. 73, Township 14, Range 3 and more particularly bounded and described as follows:

Beginning at the point of intersection of the center line of Lake Road and the center line of Ontario Center Road, thence (1) Southerly 1251.35 feet to a point; thence (2) Westerly making an exterior angle of 90° 07' 40" with the last described course 1174.73 feet to an iron pipe; thence (3) Southerly making an exterior angle of 89° 47' with the last described course 1449.09 feet to an iron pipe in the southerly line of said Lot No. 73; thence (4) Westerly making an interior angle of 90° with the last described course and along the southerly line of said Lot No. 73, 495 feet to the southwest corner of said Lot No. 73; thence (5) Northerly making an interior angle of 90° with the last described course and along the westerly line of said Lot No. 73, 2702.32 feet to the center line of Lake Road, and thence (6) Easterly making an interior angle of 89° 47' with the last described course and along the center line of Lake Road 1671.67 feet to the point or place of beginning, as more particularly shown on the map attached to and made a part hereof and designated thereon "Ralph and Elsie Bailey, et al."

EXCEPTING, HOWEVER, from the above described premises that part thereof conveyed to Helen R.C. Motley by deed recorded in Liber 344 of Deeds at page 480 on November 20, 1943.

The above described premises being part of the premises conveyed to Ralph B. Bailey and Elsie Bailey, his wife, and Robert F. Bailey and Anna Bailey, his wife, by deed recorded in Liber 364 of Deeds at page 134 on March 6, 1947.

The above described premises being part of the premises conveyed to Rochester Gas and Electric Corporation as PARCEL I by deed from Ralph B. Bailey and Elsie Bailey, his wife, and Robert F. Bailey and Anna Bailey, his wife, dated July 14, 1958, and recorded in the Wayne County Clerk's Office in Liber 463 of Deeds at page 483 on July 16, 1958.

EXCEPTING, HOWEVER, from the above described premises that part thereof conveyed to Norman R. and Laura R. Loomis, husband and wife, by Rochester Gas and Electric Corporation by deed dated May 5, 1992, and recorded in the Wayne County Clerk's Office in Liber 871 of Deeds at page 843 on June 4, 1992, and by correction deed dated July 28, 1993, and recorded in the Wayne County Clerk's Office in Liber 885 of Deeds at page 864 on August 30, 1993.

ALSO ALL THAT TRACT OR PARCEL OF LAND situate in the Town of Ontario, County of Wayne, State of New York, being part of Town Lot 73, Township 12, Range 3, and being more particularly described as follows:

Commencing at the intersection of the centerlines of Lake Road and Ontario Center Road, the former being also the North line of Lot 73; Thence (1) Southerly, along the centerline of Ontario Center Road, a distance of 1251.35 feet to a point, which point is 1444.34 feet Northerly of the line between Town Lots 73 and 72 as measured along said Ontario Center Road centerline; Thence (2) Westerly, making an angle in the Southwest with said Ontario Center Road centerline of 90 degrees 07 minutes 40 seconds, along course "2" of the description of "PARCEL I" in a Deed from Ralph B. Bailey and Elsie Bailey, his wife, and Robert F. Bailey and Anna Bailey, his wife, to Rochester Gas and Electric Corporation dated July 14, 1958, and recorded in the Wayne County Clerk's Office on July 16, 1958, in Liber 463 of Deeds at page 483, a distance of 1174.73 feet to a monument, which monument: (a) marks the beginning of course "3" of said "PARCEL I" in the aforesaid Deed from Baileys to Rochester Gas and Electric Corporation; (b) marks the Northwest corner of premises conveyed by Baileys to Smith by Deed dated June 14, 1958, and recorded in the Wayne County Clerk's Office in Liber 463 of Deeds at page 317; (c) marks the Northwest corner of premises conveyed to Wallace E. Wilson and Pauline F. Wilson, his wife, by Deed dated April 21, 1959, and recorded in the Wayne County Clerk's Office on April 23, 1959, in Liber 470 of Deeds at page 528; and (d) marks the place of beginning of this parcel.

Thence (3) Southerly, making an interior angle with course 2 of 89 degrees 47 minutes 00 seconds, along the aforesaid course "3" of "PARCEL I" in the Deed from Baileys to Rochester Gas and Electric Corporation, a distance of 200 feet to a point; Thence (4) Easterly making an interior angle with course 3 of 90 degrees 13 minutes 00 seconds, parallel to course 2 hereinabove, a distance of 200 feet to a point; Thence (5) Northerly, making an interior angle with course 4 of 89 degrees 47 minutes 00 seconds, parallel to course 3, a distance of 200 feet to a point in course 2 hereinabove; and Thence (6) Westerly, making an interior angle with course 5 of 90 degrees 13 minutes 00 seconds, along course 2 hereinabove, a distance of 200 feet to the monument marking the place of beginning of this parcel.

Being a parcel: (a) containing 0.92 of an acre, more or less; (b) 200 feet on all four sides; (c) bounded by, and adjacent to, premises conveyed to Rochester Gas and Electric Corporation by Deed dated July 14, 1958, and recorded in the Wayne County Clerk's Office on July 16, 1958, in Liber 463 of Deeds at page 483 on the North and West and (d) which is part of the premises conveyed to Wallace E. Wilson and Pauline F. Wilson, his wife, by Deed dated April 21, 1959, and recorded in the Wayne County Clerk's Office on April 23, 1959, in Liber 470 of Deeds at page 528.

Being the same premises conveyed to Rochester Gas and Electric Corporation by deed from Wallace E. Wilson and Pauline F. Wilson, his wife, dated April 12, 1967, and recorded in the Wayne County Clerk's Office in Liber 585 of Deeds at page 670 on May 1, 1967.

# EXHIBIT C

## MAJOR ITEMS OF INTERCONNECTION CUSTOMER'S EASEMENT EQUIPMENT

1. 115kV oil pipe cable to the generation step-up transformer, which oil pipe cable is located at Station 13A.
2. Control house for 115kV oil pipe cable, which control house is located at Station 13A.
3. Disconnect switch 6T13A74, which disconnect switch is located at Station 13A.
4. 3 – 121kV surge arresters on #6 transformer, which surge arresters are located at Station 13A.
5. #6 transformer, which transformer is located at Station 13A.
6. 3 - 30kV surge arresters on #6 transformer, which surge arresters are located at Station 13A.
7. Disconnect switches 76704, 76705 and 76706, which disconnect switches are located at Station 13A.
8. Circuit 767 voltage regulator, which voltage regulator is located at Station 13A.
9. 34kV power cable for circuit 767, which power cable is located at Station 13A.
10. Motor-operated disconnect switch 1G13A71, which disconnect switch is located at Station 13A.
11. 115kV circuit breaker 1G13A72, which circuit breaker is located at Station 13A.
12. Disconnect switch 1G13A73, which disconnect switch is located at Station 13A.
13. 3 – 96kV surge arresters between disconnect switches 9X13A71 and 1G13A73, which surge arresters are located at Station 13A.
14. Disconnect switch 9X13A71, which disconnect switch is located at Station 13A.
15. 115kV circuit breaker 9X13A72, which circuit breaker is located at Station 13A.
16. Motor-operated disconnect switch 9X13A73, which disconnect switch is located at Station 13A.
17. Duplex panels 1F, 1R and 2F, which duplex panels are located at Station 13A.

18. Dual unit 1, which dual unit is located at Station 13A.

19. Tone equipment cabinet, which cabinet is located at Station 13A.

20. Pilot wire cabinet, which cabinet is located at Station 13A.

21. Isolation cabinet, which cabinet is located at Station 13A.

22. 34kV power cable for circuit 767, which power cable is located at Station 13A.

23. Grounding, conduit, foundations, structures, conductor, junction boxes, cable and miscellaneous equipment associated with the equipment listed in nos. 1 through 22 above.

24. Meteorological station located on the Station 13A Parcel, which station is located to the north of Station 13A and to the west of the existing road that extends from Lake Road to Station 13A.

25. Environmental air sampler #13, which environmental air sampler is located on the Station 13A Parcel.

26. Thermoluminescent dosimeter ("TLD") #18, which TLD is located on the Station 13A Parcel approximately thirty feet north of the northeast corner of the Station 13A fence.

## EXHIBIT D

## MAJOR ITEMS OF TRANSMISSION OWNER'S EASEMENT EQUIPMENT

1. Certain meters and associated current transformers, potential transformers, wiring, poles and other appurtenances located in or on the Generation Land, including the following:

- Circuit 751 Metering Equipment, which Metering Equipment is located immediately north of Lake Road.

- [12 kV Metering Equipment, which Metering Equipment is located on poles situated on the Generation Land.]

# EXHIBIT E

## INTERCONNECTION CUSTOMER'S FACILITIES

1. Disconnect switch 76703.
2. 34kV circuit breaker 76702.
3. Disconnect switch 76701.
4. Disconnect switch 75113.
5. 34kV circuit breaker 75112.
6. Disconnect switch 75111.

# EXHIBIT F

## ADDRESSES FOR DELIVERY OF NOTICES

**To the Transmission Owner:**

Rochester Gas and Electric Corporation
[89 East Avenue]
Rochester, NY 14649
Title: ______________________________
Phone: ______________________________
Facsimile: ___________________________
Email: ______________________________

**To the Interconnection Customer:**

__________________________________
__________________________________
__________________________________
Title: ______________________________
Phone: ______________________________
Facsimile: ___________________________
Email: ______________________________

# EXHIBIT G

## JOINT USE FACILITIES

### Station 13A Joint Use Facilities

A. The following items of equipment owned by the Interconnection Customer are hereby designated as Joint Use Facilities:

1. Motor-operated disconnect switch 1G13A71.
2. 115kV circuit breaker 1G13A72.
3. Disconnect switch 1G13A73.
4. 3 - 96kV surge arresters between disconnect switches 9X13A71 and 1G13A73.
5. Disconnect switch 9X13A71.
6. 115kV circuit breaker 9X13A72.
7. Motor-operated disconnect switch 9X13A73.
8. Duplex panels 1F, 1R and 2F.
9. Dual unit 1.
12. Tone equipment cabinet.
13. Pilot wire cabinet.
14. Isolation cabinet.
16. Disconnect switch 6T13A74.
17. #6 transformer.

B. The following items of equipment owned by the Transmission Owner are hereby designated as Joint Use Facilities:

1. Two (2) 3000 amps current transformers that are used for switchboard and revenue metering.
2. 3 - 69kV potential transformers that are used for control, switchboard and revenue metering.
3. Disconnect switch 6T13A71.
4. 115kV circuit breaker 6T13A72.
5. Disconnect switch 6T13A73.
6. Duplex panels 6F and 6R.
7. Dual unit 6.
8. Duplex panel 2R - this panel contains circuit 911 relays.
9. Disconnect switch 8X13A71.
10. 115kV circuit breaker 8X13A72.
11. Disconnect switch 8X13A73.
12. Duplex panels 5F and 5R.
13. Dual unit 4.
14. Primary and secondary DC systems.

15. AC station service system.
16. Disconnect switch K13A35 and normal house service.

**Generating Facility Joint Use Facilities**

The following items of equipment owned by the Interconnection Customer are hereby designated as Joint Use Facilities:

1. Disconnect switch 76703.
2. 34kV circuit breaker 76702.
3. Disconnect switch 76701.
4. Disconnect switch 75113.
5. 34kV circuit breaker 75112.
6. Disconnect switch 75111.

# EXHIBIT H

## INTERCONNECTION CUSTOMER'S INTERCONNECTION FACILITIES

### Station 13A Equipment

1. 115kV oil pipe cable to the generation step-up transformer, which oil pipe cable is located at Station 13A.

2. Control house for 115kV oil pipe cable, which control house is located at Station 13A.

3. Disconnect switch 6T13A74, which disconnect switch is located at Station 13A.

4. 3 – 121kV surge arresters on #6 transformer, which surge arresters are located at Station 13A.

5. #6 transformer, which transformer is located at Station 13A.

6. 3 - 30kV surge arresters on #6 transformer, which surge arresters are located at Station 13A.

7. Disconnect switches 76704, 76705 and 76706, which disconnect switches are located at Station 13A.

8. Circuit 767 voltage regulator, which voltage regulator is located at Station 13A.

9. 34kV power cable for circuit 767, which power cable is located at Station 13A.

10. Motor-operated disconnect switch 1G13A71, which disconnect switch is located at Station 13A.

11. 115kV circuit breaker 1G13A72, which circuit breaker is located at Station 13A.

12. Disconnect switch 1G13A73, which disconnect switch is located at Station 13A.

13. 3 – 96kV surge arresters between disconnect switches 9X13A71 and 1G13A73, which surge arresters are located at Station 13A.

14. Disconnect switch 9X13A71, which disconnect switch is located at Station 13A.

15. 115kV circuit breaker 9X13A72, which circuit breaker is located at Station 13A.

16. Motor-operated disconnect switch 9X13A73, which disconnect switch is located at Station 13A.

17. Duplex panels 1F, 1R and 2F, which duplex panels are located at Station 13A.

18. Dual unit 1, which dual unit is located at Station 13A.

19. Tone equipment cabinet, which cabinet is located at Station 13A.

20. Pilot wire cabinet, which cabinet is located at Station 13A.

21. Isolation cabinet, which cabinet is located at Station 13A.

22. 34kV power cable for circuit 767, which power cable is located at Station 13A.

23. Grounding, conduit, foundations, structures, conductor, junction boxes, cable and miscellaneous equipment associated with the equipment listed in nos. 1 through 22 above.

**Station 204 Equipment**

The line extending northerly from the Circuit 751 Metering Equipment, which Metering Equipment is located immediately north of Lake Road. (Note that the Circuit 751 Metering Equipment is owned by the Transmission Owner.)

**Joint Use Facilities**

Those Joint Use Facilities in Exhibit G designated as being owned by the Interconnection Customer.

# EXHIBIT I

## TRANSMISSION OWNER'S INTERCONNECTION FACILITIES

### Station 13A Equipment

All of Station 13A, except for the Station 13A Interconnection Customer's Interconnection Facilities designated in Exhibit H.

### Station 204 Equipment

All of Station 204. (Note Station 204 equipment includes Circuit 751 up to the Circuit 751 Metering Equipment, which Metering Equipment is located immediately north of Lake Road. The line extending northerly from this Metering Equipment is owned by the Interconnection Customer.)

### Joint Use Facilities

Those Joint Use Facilities in Exhibit G designated as being owned by the Transmission Owner.

# EXHIBIT J

## POINTS OF INTERCONNECTION

1. The Delivery Point for the generator is the jaw end of switch 9X13A73 and switch 1G13A71.

2. The Off-Site Power Supply Points are

   (a) The jaw end of switch 6T13A74; and

   (b) The Circuit 751 metering pole associated with the Circuit 751 Metering Equipment, which pole and Metering Equipment are located immediately north of Lake Road.

# APPENDIX A


NO.33309-401
SCHEDULE A
STATION: 13A-13
INTERCONNECTION DIAGRAM
NOTES:
1. NEW BILLING ACCURACY METER TO BE INSTALLED
2. NEW METER INSTALLATION
KEY:
MP = METERING POINT
DP = DELIVERY POINT
OSP = OFF-SITE POWER
DP FOR THE GENERATOR IS AT THE JAW END OF SW. 9X13A73 AND SW. 1G13A71
OSP SUPPLY POINTS ARE - FOR CIRCUIT 767, AT THE JAW END OF SW. 6T13A74 AND FOR CIRCUIT 751, AT A NEW METERING POLE TO BE INSTALLED AT THE SOUTH PROPERTY BOUNDARY LINE ON LAKE ROAD.
PRODUCER OR GENERATION OWNER (AT LAKE ROAD)
UTILITY
MP (RETAIL) OSP SUPPLY POINT
115KV BUS SECT. 1
115KV BUS SECT. 2
19KV BUS
1 GEN
1 TRANS
11 TRANS
12A TRANS
12B TRANS
6 TRANS
767 REG
1 CAP
NORM HSE SERV
PRODUCER OR GENERATION OWNER STA. 13
UTILITY STA. 13A