EXHIBIT G

FORM OF
SELLER'S PARENT GUARANTY

This Guaranty is made and given as of the ___ day of __________ 200_, by Energy East Corporation, a New York corporation ("Guarantor"), in favor of Constellation Generation Group, LLC, a limited liability company formed under the laws of the State of Maryland("Buyer").

WHEREAS, Rochester Gas and Electric Corporation, a New York corporation, and a wholly-owned, indirect subsidiary of Guarantor ("Seller"), has entered into an Asset Purchase Agreement dated as of the date hereof (the "Asset Purchase Agreement"), pursuant to which Buyer has agreed to purchase and Seller has agreed to sell Seller's R.E. Ginna Generating Plant, and certain facilities and other assets associated therewith and ancillary thereto, as more particularly set forth in the Asset Purchase Agreement, and the parties have undertaken certain duties, responsibilities and obligations as set forth in the Asset Purchase Agreement; and

WHEREAS, Guarantor has agreed to guarantee the Seller's obligation to pay the One-Time DOE Pre-1983 Fee to the Department of Energy pursuant to Article VIII (B)(2)(b) of the Standard Spent Fuel Disposal Contract; and

WHEREAS, it is a condition to the obligations of Buyer under the Asset Purchase Agreement that the Guarantor execute and deliver this Guaranty; and

WHEREAS, the Guarantor will benefit from the transactions contemplated by the Asset Purchase Agreement.

NOW, THEREFORE, the Guarantor and Buyer agree as follows:

Section 1. Definitions. Capitalized terms used herein shall have the meanings assigned to them herein or, if not defined herein, then such terms shall have the meanings assigned to them in the Asset Purchase Agreement.

Section 2. Guaranty. As an inducement to Buyer, for and in consideration of Buyer entering into the Asset Purchase Agreement, Guarantor hereby absolutely, unconditionally, and irrevocably guarantees to Seller and its successors, endorsees and assigns and each Seller Indemnitee, as primary obligor and not merely as a surety, the full and prompt performance of the covenant contained in Section 6.13(d) of the Asset Purchase Agreement (such covenant hereafter described as the "Guaranteed Obligation"). Guarantor agrees to reimburse Seller and each Seller Indemnity for all expenses, including reasonable attorneys' fees, of enforcing or obtaining or endeavoring to enforce or obtain performance or payment. The liability of Guarantor under this Guaranty is a guaranty of performance and payment and not of collection.

Section 3. Guaranty Absolute. The liability of Guarantor under this Guaranty shall be absolute, unconditional and irrevocable, and unaffected by:

(a) Any lack of validity or enforceability of the Asset Purchase Agreement or any other agreement, document or instrument relating thereto;

(b) The occurrence or continuance of any event of bankruptcy, reorganization or insolvency with respect to Guarantor or Seller, or in the event that all or any part of any payment is recovered from Buyer as a preference payment or fraudulent transfer under the Federal Bankruptcy Code or any applicable law, or the dissolution, liquidation or winding up of Guarantor or Seller;

(c) Any amendment, supplement, reformation or other modification of the Asset Purchase Agreement;

(d) The exercise, non-exercise or delay in exercising, by Buyer or any other Person, of any of their rights under this Guaranty or the Asset Purchase Agreement;

(e) Any change in time, manner or place of payment of, or in any other terms of, all or any of the Guaranteed Obligations or any other amendment or waiver of, or any consent to departure from, the Asset Purchase Agreement or any other agreement, document or instrument relating thereto;

(f) Any permitted assignment or other transfer of this Guaranty by Buyer, or any permitted assignment or other transfer of the Asset Purchase Agreement in whole or in part;

(g) Any change in ownership or control of Seller, Guarantor or Buyer;

(h) Any sale, transfer or other disposition by Guarantor of any direct or indirect interest it may have in Seller;

(i) The inaccuracy of any of the representations and warranties of Seller under the Asset Purchase Agreement;

(j) The absence of any notice to, or knowledge by, Guarantor of the existence or occurrence of any of the matters or events set forth in the foregoing clauses; or

(k) Any other circumstances which might otherwise constitute a defense to, or discharge of, Guarantor or Seller in respect of the Guaranteed Obligation or a legal or equitable discharge of Seller in respect thereof, including a discharge as a result of any bankruptcy or similar law; provided, however, the liability and obligation of Guarantor under this Guaranty shall only be limited or extinguished, as the case may be, to the extent of the lawful termination or excuse of the Guaranteed Obligation solely in accordance with the terms of the Asset Purchase Agreement.

Section 4. Waiver. In addition to waiving any defenses to which clauses (a) through (k) of Section 3 may refer:

(a) Guarantor hereby irrevocably, unconditionally and expressly waives, and agrees that it shall not at any time insist upon, plead or in any manner whatsoever claim or take the benefit or advantage of, any appraisal, valuation, stay, extension, marshaling of assets or redemption laws, or exemption, whether now or at any time hereafter in force, which may delay, prevent or otherwise affect the performance by Guarantor

of its obligations under, or the enforcement by Buyer of, this Guaranty;

(b) Guarantor hereby irrevocably, unconditionally and expressly waives all notices, diligence, presentment and demand of every kind (whether for nonpayment or protest or of acceptance, maturity, extension of time, change in nature or form of the Guaranteed Obligation, acceptance of security, release of security, composition or agreement arrived at as to the amount of, or the terms of, the Guaranteed Obligation, notice of adverse change in Seller's financial condition, or any other fact which might materially increase the risk to Guarantor hereunder) with respect to the Guaranteed Obligation which are not specifically provided for in the Asset Purchase Agreement, and any other demands whatsoever which are not specifically provided for in the Asset Purchase Agreement, and waives the benefit of all provisions of law which are in conflict with the terms of this Guaranty;

(c) The Guarantor hereby irrevocably, unconditionally and expressly waives promptness, diligence, notice of acceptance and any other notice with respect to any of the Guaranteed Obligation and the delivery, acceptance, performance, default or enforcement of this Guaranty and any requirement that Seller protect, secure or perfect any security interest or exhaust any right or first proceed against Seller or any other person or entity; and

(d) Until satisfaction in full of the Guaranteed Obligation, Guarantor irrevocably, unconditionally and expressly waives any right it may have to bring a case or proceeding against Seller by reason of its performance under this Guaranty, under any state or federal bankruptcy, insolvency, reorganization, moratorium or similar laws for the relief of debtors.

Section 5. Representations and Warranties. Guarantor hereby represents and warrants as follows:

(a) Guarantor is a corporation duly organized and validly existing under the laws of New York.

(b) Guarantor has full corporate power, authority and legal right to execute and deliver this Guaranty and to perform its obligations hereunder.

(c) This Guaranty has been duly authorized, executed and delivered by Guarantor.

(d) This Guaranty constitutes the legal, valid and binding obligation of Guarantor enforceable against Guarantor in accordance with its terms.

(e) The execution and delivery by Guarantor of this Guaranty and the performance by Guarantor of its obligations hereunder will not (i) conflict with or result in any breach of any provisions of Guarantor's certificate of incorporation or bylaws (or other similar governing documents); (ii) conflict with or result in any breach of any provision of any law applicable to Guarantor or the transactions contemplated hereby; (iii) result in a breach of or constitute a default (or give rise to any right of termination, cancellation or acceleration) under any of the terms, conditions or

provisions of any note, bond, mortgage, indenture, lease, agreement or other instrument or obligation to which Guarantor is a party or by which it or its assets or property are bound; or (iv) require any consent, approval, permit or authorization of, or filing with or notification to, any governmental or regulatory authority.

(f) No action, suit or proceeding at law or in equity or by or before any governmental authority or arbitral tribunal is now pending or, to the best knowledge of Guarantor, threatened against Guarantor that reasonably could be expected to have a material adverse effect on Guarantor's ability to perform its obligations under this Guaranty.

Section 6. Continuing Guarantee. This Guaranty is a continuing guaranty and shall remain in full force and effect until the Guaranteed Obligation has been performed. This Guaranty shall continue to be effective, or be reinstated, as the case may be, if at any time performance of the Guaranteed Obligation is rescinded or must otherwise be restored by Seller upon the insolvency, bankruptcy, dissolution, liquidation or reorganization of Seller or Guarantor, or upon or as a result of the appointment of a receiver, intervenor or conservator of, or trustee or similar officer for, Seller, Guarantor or any substantial part of their respective properties, or otherwise, all as though such payments had not been made.

Section 7. Performance Assurance. If at any time while the Guaranty is in effect, Guarantor is no longer rated Baa3 or better by Moody's Investment Services, Inc. (or its successor), or BBB- or better by Standard and Poor's Rating Group (or its successor), then the Seller may require Guarantor to provide collateral in the form of an irrevocable and unconditional standby letter of credit by a banking or other financial institution that is reasonably acceptable to Buyer, for the benefit of the Buyer, having a drawing amount which is equal to One-Time DOE Pre-1983 Fee, and payable at the offices of a bank reasonably acceptable to the Buyer; provided that Guarantor's obligation to provide such collateral shall cease, and the Buyer shall promptly and in any event within two business days after notice from the Guarantor, return the letter of credit to Guarantor, in the event that Guarantor's ratings subsequently are increased to Baa3 or better by Moody's Investment Services, Inc. (or its successor), or BBB- or better by Standard and Poor's Rating Group (or its successor).

Section 8. Amendments; Waivers; Etc. Neither this instrument nor any terms hereof may be changed, waived, discharged or terminated orally, but only by an instrument in writing signed by Buyer and Guarantor. No delay or failure by Buyer to exercise any remedy against Seller or Guarantor will be construed as a waiver of that right or remedy. No failure on the part of Buyer to exercise, and no delay in exercising, any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right. The remedies herein provided are cumulative and not exclusive of any remedies provided by any applicable law.

Section 9. Severability. In the event that the provisions of this Guaranty are claimed or held to be inconsistent with any other instrument evidencing or securing the Guaranteed Obligations, the terms of this Guaranty shall remain fully valid and effective. If anyone or more of the provisions of this Guaranty should be determined to be illegal or unenforceable, all other provisions shall remain effective.

Section 10. Assignment.

(a) Assignability. Guarantor shall not have the right to assign any of Guarantor's rights or obligations or delegate any of its duties under this Guaranty without the prior written consent of Buyer. Guarantor shall remain liable under the Guaranty, notwithstanding assumption of this Guaranty by a successor or assign, unless and until released in writing from its obligations hereunder by Buyer. Buyer may, at any time and from time to time, assign, in whole or in part, its rights hereunder to any Person to whom Buyer has the right to assign its rights or obligations under and pursuant to the terms of the Asset Purchase Agreement, whereupon such assignee shall succeed to all rights of Buyer hereunder.

(b) Successors and Assigns. Subject to Section 9(a) hereof, all of the terms of this instrument shall be binding upon and inure to the benefit of the parties hereof and their respective permitted successors and assigns.

Section 11. Address for All Notices. All notices and other communications provided for hereunder shall be given and effective in accordance with the notice requirements of the Asset Purchase Agreement and if to Guarantor, at the following address:

________________________
________________________
________________________

Section 12. Governing Law. This Guaranty shall be governed by and construed in accordance with the law of the State of New York (without giving effect to conflict of law principles) as to all matters, including but not limited to matters of validity, construction, effect, performance and remedies. GUARANTOR AGREES THAT VENUE IN ANY AND ALL ACTIONS AND PROCEEDINGS RELATED TO THE SUBJECT MATTER OF THIS AGREEMENT MAY BE IN THE STATE AND FEDERAL COURTS FOR MONROE COUNTY, NEW YORK, AND GUARANTOR IRREVOCABLY SUBMITS TO THE EXCLUSIVE JURISDICTION OF SUCH COURTS AND IRREVOCABLY WAIVES THE DEFENSE OF AN INCONVENIENT FORUM TO THE MAINTENANCE OF ANY SUCH ACTION OR PROCEEDING. SERVICE OF PROCESS MAY BE MADE IN ANY MANNER RECOGNIZED BY SUCH COURTS. GUARANTOR IRREVOCABLY WAIVES ITS RIGHT TO A JURY TRIAL WITH RESPECT TO ANY ACTION OR CLAIM ARISING OUT OF ANY DISPUTE IN CONNECTION WITH THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

Section 13. Entire Agreement. This writing is the complete and exclusive statement of the terms of this Guaranty and supersedes all prior oral or written representations, understandings, and agreements between Buyer and Guarantor with respect to the subject matter hereof. Guarantor agrees that there are no conditions to the full effectiveness of this Guaranty.

REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK

IN WITNESS WHEREOF, Guarantor and Buyer have duly caused this Guaranty to be executed and delivered as of the date first written above.

ENERGY EAST CORPORATION

By: ______________________
Name:
Title:

CONSTELLATION GENERATION GROUP, LLC

By: ______________________
Name:
Title:

STATE OF _______ )
) ss.:
COUNTY OF _______ )

On _________, 200_, before me personally came _____________, to me known, who, being by me duly sworn, did depose and say that he resides at ______________, that he is the ______________ of Energy East Corporation, the corporation described in and which executed the above instrument, and that he signed his name thereto by authority of the board of directors or by-laws of said corporation.

______________________
Notary Public

STATE OF _______ )
) ss.:
COUNTY OF _______ )

On _________, 200_, before me personally came _____________, to me known, who, being by me duly sworn, did depose and say that he resides at ______________, that he is the ______________ of Constellation Generation Group, LLC., the corporation described in and

which executed the above instrument, and that he signed his name thereto by authority of the board of directors or by-laws of said corporation.

______________________________
Notary Public