**Michael J. Wallace**
President, Constellation Generation Group

750 E. Pratt Street
18th Floor
Baltimore, Maryland 21202-3106
410 783-2877
410 783-2873 Fax
mjw@constellation.com

**Constellation Energy Group**

December 16, 2003

Docket No. 50-244

10 C.F.R. § 50.80
10 C.F.R. § 2.1315

U.S. Nuclear Regulatory Commission
Attention Document Control Desk
Washington, D.C. 20555

R.E. Ginna Nuclear Power Plant
Application for Order and Conforming Administrative Amendments for License Transfer

Pursuant to Section 184 of the Atomic Energy Act, as amended, and 10 C.F.R. § 50.80, Rochester Gas and Electric Corporation ("RG&E") and Constellation Generation Group, LLC ("CGG"), on behalf of its newly formed indirect subsidiary R.E. Ginna Nuclear Power Plant, LLC ("Ginna LLC"), hereby submit the enclosed application to the Nuclear Regulatory Commission ("NRC") for an order consenting to the transfer of Operating License No. DPR-18 ("Operating License") for the R.E. Ginna Nuclear Power Plant ("Ginna Station").

This application seeks NRC's consent to the transfer by RG&E of its operating authority under the license for the Ginna Station to Ginna LLC. This application also requests conforming administrative amendments to the license to delete references to RG&E and to authorize Ginna LLC as the new operator and owner to possess, use and operate the unit, and to possess and use related licensed materials under the same conditions and authorizations included in the current license. This application does not request any amendments to the Operating License other than those administrative amendments necessary to reflect Ginna LLC as the new operator and owner. Thus, pursuant to 10 C.F.R. § 2.1315, these amendments involve no significant hazards consideration because the application does no more than conform the license to reflect the transfer action.

APO1

CGG is also submitting separately a Confidential Addendum to this application. The affidavit supporting non-disclosure, in accordance with 10 C.F.R. § 2.790, of the information contained in the Confidential Addendum is provided as an attachment to this transmittal letter. Upon separation of the Confidential Addendum, the information provided herewith (Application, cover letter and affidavit) may be released to the public.

Subject to the receipt of all required regulatory approvals, the parties wish to close this transaction at the earliest practicable date and have targeted a closing in late June 2004. Further, the closing of the transaction is conditioned on NRC approval of the pending application to renew the Operating License for the Ginna Station for an additional 20 years beyond the current license expiration date of September 18, 2009. The conforming license amendments to reflect the proposed license transfer would therefore be to the renewed license following its issuance. Accordingly, RG&E, CGG and Ginna, LLC request that the NRC review this application on a schedule that will permit the issuance of the NRC order consenting to the transfer and the approval of the conforming license amendments as promptly as possible and in any event by June 1, 2004. Such consent should be immediately effective upon issuance and should permit the transfer and the implementation date of the conforming amendments to occur up to one year after issuance or such later date as the NRC may permit. The parties will keep the NRC informed if there are any significant changes in the status of other required regulatory approvals or other developments that affect the schedule.

If the NRC requires additional information concerning this application, please contact James M. Petro, Counsel to Constellation Energy Group at (410) 783-3303, or George Wrobel at RG&E at (585) 771-3535. Service upon the applicants of comments, hearing requests, intervention petitions or other pleadings should be made to James M. Petro, Counsel for Constellation Energy Group, 750 East Pratt Street, 5th Floor, Legal Department, Baltimore, MD 21201 (tel. (410) 783-3303; email: James.Petro@constellation.com); James R. Curtiss, Counsel for Constellation Energy Group, at Winston & Strawn, 1400 L St., N.W., Washington, DC 20005 (tel. (202) 371-5751; fax: (202) 371-5950; e-mail: jcurtiss@winston.com); and Samuel Behrends, IV, Counsel for Rochester Gas and Electric Corporation, at LeBoeuf, Lamb, Greene and MacRae, 1875 Connecticut Avenue, N.W., Washington, D.C. 20009 (tel. (202) 986-8018; fax: (202) 986-8102; e-mail: sbehrend@llgm.com), and Daniel F. Stenger, Counsel for Rochester Gas and Electric Corporation, at Ballard Spahr Andrews & Ingersoll, LLP, 601 13th Street, N.W., Suite 1000 South, Washington, D.C. 20005-3807 (tel. (202) 661-7617; fax: (202) 626-9045; email: stengerd@ballardspahr.com). In addition to the current Ginna distribution list, please place Mr. Petro, Mr. Curtiss, Mr. Behrends and Mr. Stenger on the NRC correspondence distribution list for all correspondence related to this application.

Affirmations by RG&E and CGG are included at the end of the application.

We appreciate your attention to this matter.

Very truly yours,

Michael J. Wallace
President and Chief Nuclear Officer
Constellation Generation Group, LLC

Dr. Robert C. Mecredy
Vice President, Nuclear Operations
Rochester Gas & Electric Corporation

Encl. Application and Affidavit

cc: H. J. Miller, NRC Region I Administrator
R. L. Clark, NRC Project Manager, R. E. Ginna Nuclear Power Plant
K. S. Kolaczyk, NRC Senior Resident Inspector, R. E. Ginna Nuclear Power Plant

# Attachment

# to

# Application for Order and Conforming Administrative Amendments for License Transfer

December 16, 2003

# Affidavit of Michael J. Wallace

STATE OF MARYLAND )

) ss

CITY OF BALTIMORE )

Michael J. Wallace, upon being first duly sworn according to law, under oath, deposes and states:

1. I am President and Chief Nuclear Officer of Constellation Generation Group, LLC. I have reviewed the information in the Confidential Addendum to the "Application for Order and Conforming Administrative Amendments to Transfer NRC Facility Operating License No. DPR-18" and have been authorized by Constellation Generation Group, LLC to file this Affidavit on its behalf with respect to such information.

2. The information in the Confidential Addendum contains confidential business information in the form of financial data on each page related to the operation of the R.E. Ginna Nuclear Power Plant that should be held in confidence by the Nuclear Regulatory Commission pursuant to 10 C.F.R. § 9.17(a)(4) and 10 C.F.R. § 2.790, because:

(i) This information is of a type that is customarily held in confidence by Constellation Generation Group, LLC and there is a rational basis for doing so because the information contains sensitive financial information concerning the projected revenues and operating expenses of Constellation Generation Group, LLC and other affiliated entities.

(ii) This information is being and has been held in confidence by Constellation Generation Group, LLC.

(iii) This information is being transmitted to the Nuclear Regulatory Commission in confidence.

(iv) This information is not available in public sources and could not be gathered readily from other publicly available information.

(v) Public disclosure of this information would create substantial harm to the competitive position of Constellation Generation Group, LLC and other affiliated entities by disclosing internal financial projections for these entities and confidential financial and corporate information to other parties whose commercial interests may be adverse to those of Constellation Generation Group, LLC and other affiliated entities.

3. Accordingly, Constellation Generation Group, LLC request that the designated documents be withheld from public disclosure pursuant to 10 C.F.R. 2.790(a)(4) and 10 CFR 9.17(a)(4).

LYNN J. CONANT NOTARY PUBLIC Baltimore City MARYLAND MY COMMISSION EXPIRES JULY 7 2007

Michael J. Wallace

Subscribed and sworn to me, a Notary Public, in and for the city and state above named, this 12th day of December 2003.

My Commission Expires: 7/7/07

(Notary Public)

December 16, 2003

UNITED STATES OF AMERICA
NUCLEAR REGULATORY COMMISSION

| | | |
|---|---|---|
| In the Matter of | ) | |
| | ) | |
| Rochester Gas and Electric Corporation, | ) | |
| | ) | Docket No. 50-244 |
| Constellation Generation Group, LLC, and | ) | |
| | ) | |
| R.E. Ginna Nuclear Power Plant, LLC | ) | |
| | ) | |
| (R.E. Ginna Nuclear Power Plant) | ) | |

---

APPLICATION FOR ORDER AND
CONFORMING ADMINISTRATIVE AMENDMENTS TO
TRANSFER NRC FACILITY OPERATING LICENSE NO. DPR-18

---

# TABLE OF CONTENTS


| | | | |
|---|---|---|---|
| I. | INTRODUCTION AND DESCRIPTION OF THE PROPOSED TRANSACTION | | 1 |
| II. | NATURE AND PURPOSE OF THE PROPOSED TRANSACTION | | 3 |
| III. | INFORMATION REQUIRED BY 10 C.F.R. §§ 50.33 AND 50.80 FOR TRANSFERS OF CONTROL | | 5 |
| | A. | NAME OF PROPOSED NEW LICENSEE | 5 |
| | B. | ADDRESS OF THE PROPOSED NEW LICENSEE | 5 |
| | C. | DESCRIPTION OF BUSINESS | 5 |
| | D. | CORPORATE INFORMATION | 5 |
| | | 1. State of Incorporation and Principal Place of Business | 5 |
| | | 2. Names, Addresses, and Citizenship of Directors and Principal Officers | 5 |
| | | 3. No Foreign Ownership, Control, or Domination | 6 |
| | | 4. No Agency | 7 |
| | | 5. Related Entities | 8 |
| | E. | NRC LICENSES INVOLVED | 8 |
| | F. | TECHNICAL QUALIFICATIONS | 8 |
| | G. | FINANCIAL QUALIFICATIONS | 10 |
| | | 1. Projected Operating Revenues and Operating Costs | 10 |
| | | 2. Additional Sources of Funds | 12 |
| | H. | DECOMMISSIONING FUNDING | 13 |
| | I. | ANTITRUST CONSIDERATIONS | 15 |
| | J. | RESTRICTED DATA, CLASSIFIED NATIONAL SECURITY INFORMATION, AND LACK OF FOREIGN OWNERSHIP | 15 |

K. ENVIRONMENTAL CONSIDERATIONS ..... 16

L. NO SIGNIFICANT HAZARDS CONSIDERATIONS ..... 16

IV. ADDITIONAL INFORMATION REGARDING SPECIFIC REGULATORY REQUIREMENTS, PLANS, PROGRAMS, AND PROCEDURES ..... 17

A. OFFSITE POWER ..... 17

B. EMERGENCY PLANNING ..... 18

C. EXCLUSION AREA ..... 20

D. SECURITY PLAN ..... 20

E. QUALITY ASSURANCE PROGRAM ..... 21

F. UPDATED FINAL SAFETY ANALYSIS REPORT ..... 21

G. TRAINING ..... 22

H. INDEMNITY AND NUCLEAR INSURANCE ..... 22

I. STANDARD CONTRACT FOR DISPOSAL OF SPENT NUCLEAR FUEL ..... 23

J. LICENSE RENEWAL ..... 23

K. OTHER REQUIRED REGULATORY APPROVALS ..... 24

V. EFFECTIVE DATE ..... 24

VI. CONCLUSION ..... 25

AFFIRMATIONS ..... 26-27

# LIST OF EXHIBITS


| | | |
|---|---|---|
| Exhibit | 1 | Proposed Changes to the License |
| Exhibit | 2 | Asset Purchase Agreement Between RG&E and Constellation Generation Group LLC |
| Exhibit | 3 | Corporate Organization Chart |
| Exhibit | 4 | Constellation's 2002 Annual Report and Form 10-K |
| Exhibit | 5 | Ginna LLC's Proposed Organization Chart for Ginna Station |
| Exhibit | 6 | Ginna LLC's Projected Income Statement (redacted) |
| Exhibit | 7 | Ginna LLC's Projected Opening Balance Sheet (redacted) |
| Exhibit | 8 | Power Purchase Agreement |
| Exhibit | 9 | Form of Master Demand Note |
| Exhibit | 10 | Form of Inter-Company Credit Agreement |
| Exhibit | 11 | Decommissioning Funding Worksheet |
| Exhibit | 12 | Interconnection Agreement |

# APPLICATION FOR ORDER AND CONFORMING ADMINISTRATIVE AMENDMENTS TO TRANSFER NRC FACILITY OPERATING LICENSE NO. DPR-18

## I. INTRODUCTION AND DESCRIPTION OF THE PROPOSED TRANSACTION

Pursuant to Section 184 of the Atomic Energy Act of 1954, as amended (the "Act") and 10 C.F.R. §§ 50.80 and 50.90, Rochester Gas and Electric Corporation ("RG&E") and Constellation Generation Group, LLC ("CGG"), on behalf of its newly formed indirect subsidiary R.E. Ginna Nuclear Power Plant, LLC ("Ginna LLC"), hereby apply to the U.S. Nuclear Regulatory Commission ("NRC") for an order consenting to the transfer of Facility Operating License No. DPR-18 ("Operating License") for the R.E. Ginna Nuclear Power Plant ("Ginna Station") located in Ontario, New York to Ginna LLC.

This application further requests that conforming administrative amendments to the Operating License be issued to delete references to RG&E and authorize Ginna LLC as the new operator and owner to possess, use, and operate Ginna Station, and to possess and use related licensed materials under the applicable conditions and authorizations included in the current Operating License. This application does not request any amendments to the facility Operating License other than those administrative amendments necessary to reflect Ginna LLC as the new operator and owner. This application does not request approval of any physical changes in the unit, or any changes to the conduct of operations. After transfer of the license, the unit will continue to be operated and maintained in accordance with the current licensing basis.

Marked-up pages showing the requested changes to the Operating License are provided in Exhibit 1 to this application. If any other license amendments that might be issued prior to the license transfer affect the proposed conforming amendments, the parties will notify the NRC and

supplement this application to show the new marked-up pages. Pursuant to 10 C.F.R. § 2.1315, these amendments involve no significant hazards considerations because the application does no more than conform the license to reflect the transfer action. In this regard, the closing of the transaction is conditioned on the NRC approving RG&E's pending license renewal application for Ginna Station by renewing the operating license for an additional 20 years beyond the current expiration date of September 18, 2009. Accordingly, the conforming license amendments to reflect the proposed license transfer would be to the renewed operating license following its issuance, if approved, by the NRC.

RG&E and CGG have entered into an Asset Purchase Agreement (the "Agreement"), dated as of November 24, 2003, under which RG&E will transfer its operating and ownership interest in Ginna Station to CGG. CGG will assign all of its interests, rights and obligations under the Agreement to Ginna LLC.[1] This transaction is part of the ongoing restructuring of the electric utility industry in the State of New York.

Ginna Station is a two loop pressurized water reactor, rated at 490 megawatts electric ("MWe"), located on the south shore of Lake Ontario in Wayne County, New York, approximately 20 miles northeast of Rochester, New York. RG&E is currently the sole owner and operator of Ginna Station.

RG&E is a New York corporation engaged principally in the generation of electricity as well as the purchase, transmission, distribution, and sale of electric power and natural gas in western New York State. RG&E operates under the general regulatory supervision of the New York State Public Service Commission ("NYPSC") and, for its wholesale electricity sales and related interstate activities, RG&E is subject to regulation by the Federal Energy Regulatory

[1] A copy of the Agreement is attached as Exhibit 2. The Agreement includes numerous schedules, exhibits and ancillary agreements totaling hundreds of pages that are not being provided with this application. Copies of this information can be made available upon request.

Commission ("FERC"). RG&E recovers its costs of generating electricity through rates subject to the regulatory authority of the NYPSC and FERC.

RG&E is a wholly owned indirect subsidiary of Energy East Corporation ("Energy East"). However, RG&E retains its distinct corporate existence and remains the sole operating owner and licensee for Ginna Station.

This application addresses issues central to the NRC's review of a direct license transfer request, including the nature and purpose of the proposed transaction, the financial and technical qualifications of Ginna LLC as the new owner and operator, Ginna LLC's ability to provide decommissioning funding assurance, and the absence of foreign control or domination over Ginna LLC and its affiliates. In the following sections, the applicants demonstrate that Ginna LLC will be financially and technically qualified to own and operate Ginna Station, and will provide decommissioning funding assurance that meets the NRC's requirements under 10 C.F.R. § 50.75. In short, the proposed transfer satisfies the NRC's standards for approval of a license transfer under 10 C.F.R. § 50.80.

## II. NATURE AND PURPOSE OF THE PROPOSED TRANSACTION

On November 24, 2003, RG&E and CGG executed the Agreement for Ginna Station. Pursuant to the Agreement, RG&E will transfer its 100% ownership interest in Ginna Station and operating authority to CGG. CGG will assign all of its interests, rights and obligations under the Agreement to its subsidiary, Ginna LLC.

The closing of the transaction will take place on the Closing Date, as defined in the Agreement, once all conditions precedent are satisfied and all required regulatory approvals are obtained. On and after the Closing Date (and subject to NRC's consent and license amendments):

(a) Ginna LLC will assume title to the acquired assets in the Ginna Station facility including all equipment, spare parts, fixtures, inventory, fuel and other property necessary for the operation and maintenance of Ginna Station.

(b) Ginna LLC will make offers of employment to all Ginna Station employees, as described in the Agreement.

(c) Ginna LLC will assume responsibility for the operation, maintenance, and eventual decommissioning of Ginna Station, including responsibility for the management, storage, removal, transportation and disposal of spent nuclear fuel, as described in the Agreement.

(d) At closing, RG&E will transfer qualified and non-qualified decommissioning funds for Ginna Station to decommissioning trust funds established by Ginna LLC. The value of these transferred funds at closing is estimated to meet the NRC minimum requirements for prepayment of Ginna LLC's decommissioning obligation, as further discussed in Section III.H of this application. After closing, Ginna LLC will be responsible for all Ginna Station decommissioning activities, as well as the decommissioning costs, and the decommissioning obligations of RG&E will be extinguished.

No physical changes to the plant are being proposed as part of this application. The conforming amendments that are being requested are limited to those amendments necessary to reflect the new owner and its organization, and to delete references to the entity that is transferring its interest. Ginna LLC will assume all regulatory commitments and will continue to comply with the current licensing basis of the facility.

The purpose of this transaction is to allow the acquisition of Ginna Station by a technically and financially strong entity that has a long-term commitment to the safe and reliable

generation of nuclear power. Upon closing CGG through its affiliates will own and operate five nuclear reactor units at three sites located in the United States.

## III. INFORMATION REQUIRED BY 10 C.F.R. §§ 50.33 AND 50.80 FOR TRANSFERS OF CONTROL

### A. NAME OF PROPOSED NEW LICENSEE

R.E. Ginna Nuclear Power Plant, LLC ("Ginna LLC").

### B. ADDRESS OF THE PROPOSED NEW LICENSEE

1997 Annapolis Exchange Parkway, Suite 500
Annapolis, MD 21401

### C. DESCRIPTION OF BUSINESS

Ginna LLC is a limited liability company newly formed to acquire and operate Ginna Station. Ginna LLC will be an Exempt Wholesale Generator ("EWG") under applicable FERC regulations engaged in the generation and sale of electric energy to wholesale customers.

### D. CORPORATE INFORMATION

#### 1. State of Incorporation and Principal Place of Business

Ginna LLC is a limited liability company organized and existing under the laws of the State of Maryland. Ginna LLC's principal place of business is New York State.

#### 2. Names, Addresses, and Citizenship of Directors and Principal Officers

Ginna LLC will be managed by a Board of Directors. The names and addresses of the Directors and Principal Officers of Ginna LLC, all of whom are U.S. citizens, are listed below:

**Directors**

| | |
|---|---|
| Michael J. Wallace | Chairman of the Board |
| Business Address | 1997 Annapolis Exchange Parkway, Suite 500<br>Annapolis, MD 21401 |

| | |
|---|---|
| Maria A. Korsnick | Director |
| Business Address | 1997 Annapolis Exchange Parkway, Suite 500<br>Annapolis, MD 21401 |

**Principal Officers**

| | |
|---|---|
| Michael J. Wallace | President and Chief Nuclear Officer |
| Business Address | 1997 Annapolis Exchange Parkway, Suite 500<br>Annapolis, MD 21401 |
| Maria A. Korsnick | Vice President |
| Business Address | 1997 Annapolis Exchange Parkway, Suite 500<br>Annapolis, MD 21401 |
| Stephen A. Mormann | Treasurer |
| Business Address | 1997 Annapolis Exchange Parkway, Suite 500<br>Annapolis, MD 21401 |
| Steven L. Miller | Secretary |
| Business Address | 750 E. Pratt Street<br>Baltimore, MD 21202 |
| James M. Petro, Jr. | Assistant Secretary |
| Business Address | 750 E. Pratt Street<br>Baltimore, MD 21202 |

3. No Foreign Ownership, Control, or Domination

CGG, its parent company Constellation Energy Group, Inc., and Ginna LLC are not owned, controlled, or dominated by an alien, foreign corporation, or foreign government.

4. No Agency

In seeking to become the licensed owner and operator of Ginna Station, Ginna LLC is not acting as the agent or representative of any other person.

5. Related Entities

Ginna LLC is an indirect, wholly-owned subsidiary of CGG. CGG is a wholly-owned subsidiary of Constellation Energy Group, Inc. ("Constellation"). CGG serves a company headquarters function for Constellation's national fleet of generating plants with approximately 12,125 megawatts of generating capacity. Of this 12,125 megawatts of generating capacity, CGG indirectly owns and controls the consolidated assets, liabilities, and net worth of approximately 3,235 megawatts of nuclear generation. CGG's nuclear operation is comprised of over $3 billion of assets, approximately $925 million of net worth, and approximately $1 billion in annual revenue. Through ownership of CGG's wholly-owned subsidiary, Constellation Nuclear Power Plants, Inc., it will have an indirect ownership interest in Ginna LLC. These corporate relationships are depicted in Exhibit 3.

Constellation is a publicly traded utility holding company incorporated in 1995 under the laws of the State of Maryland. Constellation is engaged in competitive wholesale and retail energy supply, including generation, distribution and marketing. A copy of Constellation's 2002 Annual Report and 2002 10-K Form are included as Exhibit 4.

E. NRC LICENSES INVOLVED

The proposed transaction involves NRC Facility Operating License No. DPR-18 for Ginna Station.

F. TECHNICAL QUALIFICATIONS

Exhibit 5 is a proposed organization chart illustrating the management structure and reporting relationships for Ginna Station that will become effective on the effective date of the license transfer. When the proposed transfer of the Ginna Station Operating License becomes effective, Ginna LLC will assume responsibility for, and control over, the operation and

maintenance of Ginna Station. Ginna LLC will make offers of employment with comparable compensation and benefits to all of RG&E's existing on-site nuclear organization at Ginna Station in accordance with the Agreement.

The Ginna Station on-site nuclear organization will report operationally through the Site Vice President to Mr. Michael J. Wallace, who is CGG's President and Chief Nuclear Officer. Mr. Wallace is responsible for all nuclear activities at CGG and upon transfer of the Ginna Station Operating License will assume, in addition to his current duties, the position of President and Chief Nuclear Officer of Ginna LLC. Mr. Wallace is a career nuclear professional with over 30 years of direct relevant experience in the construction, management, and safe operation of U.S. nuclear power plants.

It is expected that the vast majority of Ginna Station's plant staff, including senior managers, will remain essentially unchanged by the transfer. However, as is common for the management and staff at operating nuclear power plants, individuals routinely transfer to other positions within the same company, retire, resign, or transfer to positions at other sites. Thus, it is to be expected that additional experienced personnel may join the site organization during the period leading up to and after the proposed license transfer. Prior to the transfer, decisions regarding such changes will be made by RG&E, and following the transfer, such decisions will be made by Ginna LLC. Ginna LLC will ensure that following the transfer, new personnel meet all existing qualifications requirements in accordance with the Ginna Station Operating License and Technical Specifications. The guiding principle that will govern Ginna LLC's management of Ginna Station will be to assure that it manages, operates, and maintains Ginna Station safely and in accordance with the conditions and requirements established by the NRC.

The existing on-site operations, maintenance and technical support organizations for Ginna Station will continue to perform their functions as part of the Ginna LLC organization. The functions, responsibilities, and reporting relationships of these organizations, especially as they relate to activities important to the safe operation of Ginna Station, will continue to be clear and unambiguous, and the performance of these organizations will be essentially unaffected by the transfer. Moreover, engineering support for Ginna Station is currently provided by a dedicated engineering organization that is an integral part of the site organization that will be transferred to Ginna LLC.

As detailed in Section 2.1 of the Agreement, RG&E will transfer to Ginna LLC those assets related to Ginna Station that are sufficient to allow Ginna LLC to operate Ginna Station safely in accordance with NRC requirements. Section 2.1 of the Agreement provides an extensive listing of assets in addition to plant and equipment that will be transferred, such as books, operating records, safety, maintenance, and operating manuals, engineering design plans, documents, blueprints and as-built plans, specifications, procedures, and other similar items. The records that the NRC requires a licensee to maintain are currently located and maintained at Ginna Station or under Ginna Station's control. Section 2.2 of the Agreement sets forth those assets specifically excluded from the proposed license transfer to Ginna LLC, including certain switchyard facilities and related transmission and interconnection assets.

Ginna LLC will not be relying on other organizations to establish its technical qualifications. Nevertheless, the extensive experience and technical capabilities of CGG are a valuable resource available to Ginna LLC. CGG and its nuclear subsidiaries currently own and operate four operating power reactor units at its Calvert Cliffs and Nine Mile Point plants. This level of experience and capability in an affiliated company provides added assurance that Ginna

LLC will have the requisite technical qualifications necessary to conduct licensed activities at Ginna Station.

G. FINANCIAL QUALIFICATIONS

Ginna LLC will meet the financial qualification requirements for a "non-electric utility" licensee pursuant to 10 C.F.R. § 50.33(f). As set forth below, Ginna LLC will be financially qualified to own and operate Ginna Station.

1. Projected Operating Revenues and Operating Costs

Ginna LLC will possess, or will have reasonable assurance of obtaining, the funds necessary to cover estimated operating costs for the period of the license in accordance with 10 C.F.R. § 50.33(f)(2), as well as the guidance in the Standard Review Plan for Power Reactor Licensee Financial Qualifications and Decommissioning Funding Assurance (NUREG-1577, Rev. 1) ("Standard Review Plan"). In accordance with the Standard Review Plan, projected income statements for the operation of Ginna Station for the five-year period following the Closing Date have been prepared by CGG for NRC review. The proprietary projected income statements are being submitted with the CGG Confidential Addendum to the Application, supported by the CGG affidavit transmitted with this Application, that provides justification for withholding the statements from public disclosure. The non-proprietary projected income statements are included in Exhibit 6. In addition to the projected income statements, CGG is providing a Ginna LLC projected opening balance sheet showing its anticipated assets, liabilities and capital structure expected as of the Closing Date. The proprietary projected opening balance sheet is being submitted with the CGG Confidential Addendum to the Application, supported by the CGG affidavit transmitted with this Application, that provides justification for withholding

the statements from public disclosure. A non-proprietary version of the opening balance sheet is included in Exhibit 7.

The projected income statements are based in part on a Power Purchase Agreement ("PPA") between Constellation Power Source, Inc. ("CPS") and RG&E that will provide Ginna LLC with a substantial portion of its revenue over the next ten years. The PPA is included as Exhibit 8. CPS is Constellation's merchant subsidiary that markets energy and ancillary services. A back-to-back contract will be executed between CPS and Ginna LLC to provide revenue to Ginna LLC that results from the sale of capacity and energy from Ginna Station. Under the PPA executed as part of this transaction, CPS will sell 90 percent of the output from Ginna Station to RG&E for a 10-year period at prices established in the PPA. The remaining 10 percent of the output will be sold into the power market.

The projected income statements prepared by CGG provide the total estimated annual operating costs for Ginna Station. They also indicate that the source of funds to cover these operating costs will be operating revenues. The projected income statements include various projections by CGG for plant operations, the prices for capacity and energy under the PPA and in the market, fuel expenses, and depreciation, including the effects of anticipated capital additions.

The Ginna LLC projected income statements demonstrate that the anticipated revenues from sales of capacity and energy from Ginna Station provide reasonable assurance of an adequate source of funds to meet Ginna LLC's operating expenses for Ginna Station during the five year period following the Closing Date. Additionally, the projected income statements set forth the projected annual level of cash flow from operations, before interest and taxes, and also provide the projected annual level of cash flow after covering both capital expenditures and nuclear fuel expenditures. Operating revenues from Ginna Station are projected to produce

sufficient cash flow, before interest and taxes, to cover both capital expenditures and nuclear fuel expenditures.

2. Additional Sources of Funds

Constellation operates a cash pool for all of its subsidiaries. Ginna LLC will be a member of the cash pool for as long as it is a subsidiary of Constellation. Each day, each member of the cash pool provides Constellation with its cash position for that day. Each day, the member also transfers to the pool any excess cash, which is invested. On any day, if members need more cash than is available from the pool, Constellation sells commercial paper to the public markets. Money from the sale of commercial paper is wired into another member's account later the same day. When a member borrows money from the pool, the amount is recorded on a master demand note, and is payable with interest to Constellation upon 24 hours demand. A form of Master Demand Note is enclosed as Exhibit 9.

The cash pool and Constellation's commercial paper program are extremely liquid and can provide cash to meet operating and maintenance expenses usually on the same day such needs are identified. Currently, Constellation has a $2.5 billion commercial paper program rated A2/P2 by Standard & Poor's and Moody's, respectively. It currently has credit agreements and committed bank lines of credit totaling $1.5 billion to support its commercial paper program. Constellation has not issued commercial paper since April, 2002 and continues to maintain a zero balance. Therefore, the entire $1.5 billion (less any letters of credit issued) is available to support the issuance of commercial paper.

Ginna LLC will execute an inter-company credit agreement with its parent, Constellation, whereby Constellation will provide Ginna LLC with cash needed by Ginna LLC that is not

available from the cash pool to protect the public health and safety. A form Inter-Company Credit Agreement between Constellation and Ginna LLC is enclosed as Exhibit 10.

These arrangements provide assurance that Ginna LLC will have sufficient funds available to meet its operating and maintenance expenses during a six-month outage of Ginna Station. Such an extended outage is the benchmark six-month outage defined by NRC guidance in the Standard Review Plan with respect to providing added assurance of financial qualifications.

The projected income statements contained in this application provide reasonable assurance that Ginna LLC will be financially qualified to own and operate Ginna Station. Moreover, the additional sources of funds discussed above provide assurance that Ginna LLC will have funds sufficient to pay the fixed costs of an outage lasting six months, as suggested in the guidance provided in the Standard Review Plan.

H. DECOMMISSIONING FUNDING

As noted above, RG&E expects to transfer to Ginna LLC at closing an aggregate amount of decommissioning funds that will meet the NRC minimum funding requirement with credit for two-percent real earnings, as permitted by the NRC regulations, assuming the renewal of Ginna Station's Operating License which is a condition of closing.[2] The amount of funds to be transferred is defined as the "Decommissioning Target" in the Agreement. The decommissioning funds will be held in an external trust segregated from Ginna LLC's assets and outside its administrative control. The terms of the Ginna LLC decommissioning trust agreement will comply with the NRC's final rule on Decommissioning Trust Provisions (67 Fed. Reg. 78332) which becomes effective December 24, 2003.

2 See Sections 7.1(o) and 7.2(l) of the Agreement.

On the closing date the funds in RG&E's qualified decommissioning trust fund will be transferred to Ginna LLC, and RG&E will also transfer to Ginna LLC so much of its nonqualified decommissioning trust funds as is necessary, when combined with the amount in RG&E's qualified trust fund, to meet the Decommissioning Target amount agreed upon by RG&E and CGG in the Agreement. Upon the closing of the sale and the transfer of the Decommissioning Target amount to Ginna LLC, RG&E's decommissioning trust will be terminated and the balance of the nonqualified funds will be retained by RG&E and applied as directed by the NYPSC.

Under the Agreement, the Decommissioning Target amount to be transferred at closing is projected to be approximately $201.6 million assuming a June 30, 2004 closing. The precise amount will vary depending on the actual closing date. The full amount of the decommissioning funds transferred to Ginna LLC at closing will be in cash or cash equivalents, and will be available to Ginna LLC for decommissioning as defined under the NRC's decommissioning regulations. As shown in Exhibit 11, when a two-percent annual real rate of earnings is credited to the Decommissioning Target amount through the expected term of the renewed license in 2029,[3] as permitted by 10 C.F.R. § 50.75(e)(1)(i), the value of the decommissioning funds at closing is estimated to meet the NRC minimum requirement under 10 C.F.R. § 50.75(c) for prepayment, without the need for additional contributions Accordingly, as demonstrated by Exhibit 11, Ginna LLC will provide adequate decommissioning funding assurance in accordance with 10 C.F.R. § 50.75(e)(1)(i) through prepayment of the decommissioning obligation.

---

[3] As discussed in Section IV.J below, closing of this transaction is conditioned on the NRC having issued a renewed operating license for Ginna Station for a period of not less than 20 years beyond its original license term of 2009. Thus it is appropriate to use the expected term of the renewed license in the decommissioning funding calculations in this application for purposes of demonstrating that the proposed new licensee will provide adequate assurance of decommissioning funding.

I. ANTITRUST CONSIDERATIONS

In accordance with the NRC's decision in *Kansas Gas and Electric Company* (Wolf Creek Generating Station, Unit 1), CLI-99-19, 49 NRC 441, 468 (1999) and the recent amendments to 10 C.F.R. § 50.80, 65 FR 44649 (July 19, 2000), antitrust reviews of post-operating license transfer applications are not required under the Act. For this reason, the NRC need not consider any antitrust issues in connection with this application.

J. RESTRICTED DATA, CLASSIFIED NATIONAL SECURITY INFORMATION, AND LACK OF FOREIGN OWNERSHIP

This application does not contain any Restricted Data or classified National Security Information, and it is not expected that any licensed activities at Ginna Station will involve any such information. However, pursuant to 10 C.F.R. § 50.37, in the event that such information does become involved, Ginna LLC agrees that it will (1) appropriately safeguard such information and (2) not permit any individual to have access to such information unless, and until, (a) the Office of Personnel Management ("OPM") has investigated the character, associations, and loyalty of any such individual, (b) OPM has reported to the NRC on the result of such an investigation, and (c) the NRC has determined that permitting such person to have access to such information will not endanger the common defense and security of the United States.

Constellation, CGG and Ginna LLC are not, and following implementation of the proposed license transfer will not be owned, controlled, or dominated by an alien, foreign corporation, or foreign government. In addition, Ginna LLC is not functioning as an agent or representative of another person with respect to this application.

K. ENVIRONMENTAL CONSIDERATIONS

The proposed Ginna Station license transfer and conforming administrative amendments fall within the categorical exclusion appearing at 10 C.F.R. § 51.22(c)(21), so that neither an Environmental Assessment nor an Environmental Impact Statement is required with respect to those actions. Moreover, the proposed license transfer does not involve any amendments to the license or other changes that would directly affect the actual operation of Ginna Station in any substantive manner. The proposed license transfer and amendments do not involve an increase in the amounts, or a change in the types, of any radiological effluents that may be allowed to be released off-site. Further, no increase in the individual or cumulative occupational radiation exposure is expected. For these reasons, the proposed license transfer and amendments involve no significant environmental impact.

L. NO SIGNIFICANT HAZARDS CONSIDERATION

The only actions sought in this application with respect to the license is the transfer of ownership of Ginna Station pursuant to 10 C.F.R. § 50.80 and administrative amendments under 10 C.F.R. § 50.90 solely to conform the license to reflect the change in ownership of Ginna Station. Pursuant to the NRC's generic determination in 10 C.F.R. §2.1315, the requested amendments therefore involve "no significant hazards consideration."

Because the closing of the transaction is conditioned on the NRC's issuance of a renewed license for Ginna Station, the license that will be amended to reflect the proposed license transfer will be the renewed Operating License following NRC approval, if granted, of RG&E's pending license renewal application and issuance of the renewed license. Thus the conforming administrative amendments will relate to the expected renewed license if approved by the NRC.

## IV. ADDITIONAL INFORMATION REGARDING SPECIFIC REGULATORY REQUIREMENTS, PLANS, PROGRAMS, AND PROCEDURES

### A. OFFSITE POWER

Offsite power to Ginna Station is currently provided over transmission and interconnection facilities owned and operated by RG&E. As part of the sale of Ginna Station, RG&E has entered into an Interconnection Agreement to continue to provide interconnection services to Ginna Station after the effective date of the proposed license transfer. A copy of the Interconnection Agreement is attached as Exhibit 12. In addition, RG&E is obligated to provide offsite power services to Ginna Station pursuant to an NYPSC-approved tariff. These arrangements will provide assurance that Ginna LLC will continue to have reliable offsite power meeting applicable NRC requirements.

Functionally, the interconnection of RG&E's transmission and interconnection facilities with Ginna Station will not change as a result of the proposed license transfer. Pursuant to the Interconnection Agreement, Ginna LLC will maintain the facilities and equipment located between the generating facility and the points of interconnection that are necessary to physically and electrically interconnect Ginna Station to RG&E's interconnection facilities and transmission system. The Interconnection Agreement further provides that RG&E will operate, maintain and control its interconnection facilities in a manner that maintains compliance with the NRC's maintenance rule and other applicable NRC requirements and commitments. As the licensee, Ginna LLC will remain responsible for ensuring compliance with all applicable NRC requirements.[4]

---

4 In accordance with the Agreement, RG&E will retain ownership of the 115 kV switchyard ("Station 13A") since most of the 115 kV switchyard equipment and operations at Station 13A are integral to the interconnection of Ginna Station with the RG&E transmission system. Although Ginna LLC will not own the Station 13A property, it will have appropriate control as necessary to satisfy applicable NRC requirements and commitments through the existing security and emergency plans as well as written protocols to be established by RG&E and Constellation

The Interconnection Agreement will enable Ginna LLC to have access to the transmission facilities subject to the operational control of the New York Independent System Operator ("NYISO"). The NYISO, which began operating on November 18, 1999, has responsibility for, and independent control over, operation of the electric power transmission grid in the State of New York. This power grid, which includes the transmission system of RG&E as well as the other former member systems of the New York Power Pool ("NYPP"), was previously operated by the NYPP.[5] Consistent with FERC requirements, the NYISO provides all market participants with equal access to unbundled electric transmission service throughout the State of New York. The NYISO monitors the capacity that is available on the system and centrally dispatches generating units to meet load, provide necessary ancillary services, and accommodate bilateral transactions while not violating any security-related constraints.

The NYISO exercises operational control over the transmission facilities of the member systems, including RG&E's transmission facilities. The Interconnection Agreement, through access to the transmission facilities subject to the operational control of the NYISO, will provide an avenue for either Ginna LLC or its customers to obtain through separate arrangements all of the services, including transmission services, necessary to participate in the market for the sale of power from the facility.

---

relating to access, control, safety, security, and evacuation with respect to each other's property, including Station 13A.

[5] On January 31, 1997, eight members of the NYPP submitted for FERC approval an application for authorization to establish an independent system operator ("ISO"). By order issued on June 30, 1998, FERC authorized the establishment of the New York Independent System Operator ("NYISO"). *Central Hudson Gas & Electric Corp., et al.*, 83 FERC ¶ 61,352 (1998), *reh'g*, 87 FERC ¶ 61,135 (1999). On February 5, 1999, the NYPP member systems filed an application with FERC requesting authorization to transfer control over certain transmission facilities to the NYISO. FERC authorized the requested transfer on April 30, 1999. 87 FERC ¶ 61,135.

B. EMERGENCY PLANNING

Upon consummation of the proposed license transfer, Ginna LLC will assume authority and responsibility for functions necessary to fulfill the emergency planning requirements specified in 10 C.F.R. § 50.47(b) and Part 50, Appendix E. Any changes made to the existing Ginna Station Emergency Plan developed and implemented by the current licensee will be made in accordance with 10 C.F.R. § 50.54(q). It is anticipated that no changes will be made that will result in a decrease in the effectiveness of the Plan, and that the Plan will continue to meet the standards of 10 C.F.R. § 50.47(b) and the requirements of Appendix E of Part 50. Any specific emergency plan changes will be submitted to the NRC within 30 days after the changes are made, pursuant to 10 C.F.R. § 50.54(q) and Appendix E, Section V.

If RG&E or Ginna LLC identify any proposed changes that would decrease the effectiveness of the approved Emergency Plan, then application will be made to the NRC and such proposed changes will not be implemented until approved. Determinations as to whether any proposed changes would result in a decrease in effectiveness will be made in accordance with RG&E's currently approved plan, programs, and procedures.

No substantive changes are anticipated to be made to the existing emergency planning organization. Currently, RG&E owns and operates the Emergency Operations Facility ("EOF"). Upon closing, Ginna LLC will lease the EOF from RG&E and assume responsibility for its operation in accordance with the Ginna Station Emergency Plan. Existing agreements for support from organizations and agencies not affiliated with RG&E will be assigned to Ginna LLC. RG&E will notify the parties to such agreements in advance of the proposed license transfer, and will advise those parties of Ginna LLC's responsibility for management and

operation of Ginna Station, effective as of the Closing Date. In sum, the proposed license transfer will not affect compliance with the emergency planning requirements.

C. EXCLUSION AREA

Upon the transfer from RG&E to Ginna LLC, Ginna LLC will own or control all real property within the Exclusion Area of Ginna Station. Ginna LLC will have authority to determine and control all activities within the Exclusion Area for Ginna Station, including the right to control activities and remove or exclude personnel and property from the Exclusion Area.

D. SECURITY PLAN

Upon consummation of the proposed license transfer, Ginna LLC will assume authority and responsibility for the functions necessary to fulfill the security planning requirements specified in 10 C.F.R. Part 73. Ginna LLC will assume the existing NRC-approved Physical Security, Guard Training and Qualification, and Safeguards Contingency plans developed and implemented by the current licensee, as well as RG&E's commitments in response to the applicable NRC Security Orders.

Any changes to the plans will be made in accordance with 10 C.F.R. § 50.54(p). It is anticipated that no changes will be made as a result of the license transfer that will lead to a decrease in the effectiveness of the plan, and the plan will continue to meet the standards of 10 C.F.R. Part 73, Appendix C. Any specific security plan changes will be submitted to the NRC within two months after the changes are made, pursuant to 10 C.F.R. § 50.54(p)(2). If RG&E or Ginna LLC identify any proposed changes that would decrease the effectiveness of the approved security plan, then application to the NRC will be made, and such proposed changes will not be implemented until approved by the NRC. Determinations as to whether any proposed changes

would result in a decrease in effectiveness will be made in accordance with RG&E's currently approved security plan, programs, and procedures.

It is not anticipated that substantive changes will be made to the existing security organization as a result of the proposed license transfer to Ginna LLC. Existing agreements for support from organizations and agencies not affiliated with RG&E will be assigned to Ginna LLC. RG&E will notify the parties to such agreements in advance of the proposed license transfer to Ginna LLC, and will advise those parties of Ginna LLC's responsibility for management and operation of Ginna Station. In sum, the proposed transfer will not affect compliance with physical security requirements.

E. QUALITY ASSURANCE PROGRAM

Upon the proposed license transfer, Ginna LLC will assume authority and responsibility for the functions necessary to fulfill the quality assurance requirements of 10 C.F.R. Part 50, Appendix B. Any changes made to Ginna Station's existing Quality Assurance Plan ("QAP") developed and implemented by RG&E will be made in accordance with 10 C.F.R. § 50.54(a). It is not anticipated that any changes will be made as a result of the proposed license transfer that would reduce a commitment in the QAP previously accepted by the NRC. If Ginna LLC identifies any reduction in a commitment in the QAP, then application to the NRC will be made and such proposed reduction will not be implemented until approved by the NRC. Determinations as to whether any commitments would be reduced will be made in accordance with RG&E's currently approved plan, programs, and procedures.

It is not anticipated that any substantive changes will be made to the existing QAP organization as a result of the transfer of the license to Ginna LLC.

F. UPDATED FINAL SAFETY ANALYSIS REPORT

With the exception of areas discussed in this application, the proposed license transfer and conforming administrative amendments will not change or invalidate information presently appearing in Ginna Station's Updated Final Safety Analysis Report ("UFSAR"), and all currently existing licensing basis commitments will remain in effect. Changes necessary to accommodate the proposed license transfer and conforming administrative license amendments will be incorporated into the UFSAR, in accordance with 10 C.F.R. § 50.71(e), following the NRC's approval of this request for consent to the proposed license transfer.

G. TRAINING

The Ginna Training Center will be transferred to Ginna LLC and all or substantially all staff members currently working at this facility will be offered employment with Ginna LLC. The proposed license transfer will not affect compliance with the operator re-qualification program requirements of 10 C.F.R. § 50.54(i-1) and related sections, or maintenance of the INPO accreditation for Ginna Station licensed and non-licensed operator training. Upon consummation of the license transfer, Ginna LLC will assume responsibility for implementation of present training programs. Changes to the programs resulting from the license transfer will not decrease the scope or effectiveness of the approved operator re-qualification program without the specific authorization of the NRC, in accordance with 10 C.F.R. § 50.54(i).

H. INDEMNITY AND NUCLEAR INSURANCE

In accordance with 10 C.F.R. § 140.92, Art. IV.2, Ginna LLC and RG&E request NRC approval of the assignment and transfer of the interests of RG&E in the Price Anderson Indemnity Agreement for Ginna Station to Ginna LLC upon consent to the proposed license transfer. Ginna LLC's Projected Income Statements and financial arrangements with

Constellation will provide adequate assurance that Ginna LLC will be able to pay a total annual retrospective premium of $10 million for Ginna Station pursuant to 10 C.F.R. §§ 140.21(e)-(f). Prior to the license transfer, Ginna LLC will obtain all required nuclear property damage insurance pursuant to 10 C.F.R. § 50.54(w) and nuclear energy liability insurance pursuant to Section 170 of the Act and 10 C.F.R. Part 140.

I. STANDARD CONTRACT FOR DISPOSAL OF SPENT NUCLEAR FUEL

On the Closing Date, Ginna LLC will assume title to and responsibility for storage and disposal of spent or used nuclear fuel at Ginna Station. RG&E will assign, and Ginna LLC will assume, the rights and obligations of RG&E under the Standard Contract with the Department of Energy ("DOE"), except that RG&E will remain liable for any fees payable to DOE under the Standard Contract for electricity generated and sold prior to the Closing Date.

J. LICENSE RENEWAL

RG&E submitted a license renewal application to the NRC by letter dated July 30, 2002. The NRC's technical and environmental reviews of the license renewal application have proceeded on schedule. A draft environmental impact statement (draft Supplement 14 to NUREG-1437) was issued by the NRC in June 2003, and the NRC Staff's Safety Evaluation Report was issued in October 2003. The NRC's technical and environmental reviews of the license renewal application are continuing. According to the NRC's published schedule, upon the successful completion of the NRC's license renewal reviews, a renewed Operating License is scheduled to be approved by early June 2004.

As provided in Sections 7.1(o) and 7.2(l) of the Agreement, closing is conditioned on the NRC having issued a renewed Operating License for Ginna Station for a period of not less than 20 years beyond its original license term of 2009. The Agreement also provides (at Section 6.19)

that Ginna LLC will maintain and operate the facility in accordance with licensing basis commitments, which include the commitments made in connection with RG&E's license renewal application. Accordingly, adequate measures are in place to ensure that the new licensee will fulfill the commitments made in the license renewal process. It is also important to note, in this connection, that Ginna LLC's affiliated companies have long been leaders in the license renewal arena, with Calvert Cliffs Nuclear Power Plant being the first plant to seek and obtain a renewed license.

K. OTHER REQUIRED REGULATORY APPROVALS

The proposed sale of Ginna Station to Ginna LLC is subject to the approval of FERC and the New York State Public Service Commission ("NYPSC"). RG&E and Ginna LLC are requesting FERC approval for the sale of jurisdictional assets pursuant to Section 203 of the Federal Power Act ("FPA"), and NYPSC approval for the transfer of assets pursuant to Section 70 of the New York Public Service Law. RG&E will also seek FERC acceptance of the Interconnection Agreement under Section 205 of the FPA. In addition, appropriate state rulings will be sought to permit Ginna LLC to obtain EWG status under applicable FERC regulations.

V. EFFECTIVE DATE

RG&E and Ginna LLC request that the NRC review this application on a timetable permitting issuance of the NRC Order consenting to the proposed license transfer as promptly as possible, and in any event by June 1, 2004 (assuming that issuance of a renewal license has been approved by that date). RG&E and Ginna LLC request that any needed license changes be approved with issuance of the Order, with implementation to be effective on the Closing Date. RG&E and Ginna LLC shall keep the NRC apprised of any significant changes in the status of other required regulatory approvals or developments affecting the schedule.

## VI. CONCLUSION

For the foregoing reasons, the Commission should find that Ginna LLC is qualified to be the holder of the license for Ginna Station, and that the proposed license transfer will not be inimical to the common defense and security or result in any undue risk to public health and safety, and otherwise will be consistent with the requirements of the Act and the NRC regulations. Accordingly, and based upon the foregoing information, RG&E and Ginna LLC respectfully request that the NRC issue an Order approving: (1) the transfer of Facility Operating License No. DPR-18 for Ginna Station from RG&E to Ginna LLC; and (2) the associated conforming administrative license amendments.

I, Michael J. Wallace, being duly sworn, state that I am President and Chief Nuclear Officer, Constellation Generation Group, LLC ("CGG"), and that I am duly authorized to execute and file this application on behalf of CGG. To the best of my knowledge and belief, the statements contained in this document are true and correct. To the extent that these statements are not based on my personal knowledge, they are based upon information provided by other CGG employees and/or consultants. Such information has been reviewed in accordance with company practice and I believe it to be reliable.

Constellation Generation Group, LLC

Michael J. Wallace
President and
Chief Nuclear Officer

STATE OF: New York

COUNTY OF: Wayne

Subscribed and sworn to before me, a Notary Public, in and for the County and State above named, this 15th day of December, 2003.

Michalene A. Bunts

My Commission Expires: 1-11-07

MICHALENE A BUNTS
Notary Public, State of New York
Registration No. 01BU60[illegible]76
Monroe County
Commission [illegible] 11, 2007

I, Dr. Robert C. Mecredy, being duly sworn, state that I am the Vice President, Nuclear Operations of Rochester Gas & Electric Corporation ("RG&E),, and that I am duly authorized to execute and file this application on behalf of RG&E. To the best of my knowledge and belief, the statements contained in this document are true and correct. To the extent that these statements are not based on my personal knowledge, they are based upon information provided by other RG&E employees and/or consultants. Such information has been reviewed in accordance with company practice and I believe it to be reliable.

Rochester Gas & Electric Corporation

Robert C Mecredy

Dr. Robert C. Mecredy
Vice President,
Nuclear Operations

STATE OF: New York

COUNTY OF: Wayne

Subscribed and sworn to before me, a Notary Public, in and for the County and State above named, this 4th day of December, 2003.

Michalene A. Bunts

My Commission Expires: 1-11-07

MICHALENE A. BUNTS
Notary Public, State of New York
Registration No. 01BU6018576
Monroe County
Commission Expires Jan 11, 2007

# Exhibit 1

# EXHIBIT 1

Proposed Changes to the Facility Operating License
Associated with the Proposed Transfer of R.E. Ginna Nuclear Power Plant
from Rochester Gas and Electric Corporation to R.E. Ginna Nuclear Power Plant, LLC

## I. Reason for the Change

The ownership of R.E. Ginna Nuclear Power Plant ("Ginna Station") located in Ontario, New York is being transferred from Rochester Gas and Electric Corporation ("RG&E") to R.E. Ginna Nuclear Power Plant, LLC ("Ginna LLC"), a wholly owned indirect subsidiary of Constellation Generation Group, LLC ("CGG"), necessitating the submittal of a conforming change to the Facility Operating License for the plant. The transfer in ownership is pursuant to an Asset Purchase Agreement ("Agreement") executed between CGG and RG&E on November 24, 2003. The proposed changes delete references to RG&E, as the owner and operator of Ginna Station, and replace them with references to "Ginna LLC."

## II. Basis for the Change

After the license transfer, RG&E will retain no responsibility for the regulatory obligations contained in License No. DPR-18 for Ginna Station, as described in the Agreement. Accordingly, the entity to which that responsibility is being transferred, Ginna LLC, must be identified in the Facility Operating License.

## III. Safety Assessment

The proposed changes to the Facility Operating License for Ginna Station identify Ginna LLC as the new owner and operator of the facility. No physical modifications are being made to plant systems or components nor are any significant changes in day-to-day

operation of the unit being made. Therefore, the proposed changes are administrative in nature and will not adversely affect nuclear safety or safe plant operation.

IV. Description of the Proposed Changes

The proposed changes to the Facility Operating License for Ginna Station include the following: (1) the deletion of references to RG&E as operator or owner of Ginna Station as applicable; and (2) the authorization of Ginna LLC to possess, use and operate Ginna Station under essentially the same conditions and authorization included in the existing license. The actual wording changes (marked-up pages) associated with the conforming administrative amendments to the Ginna Station License are provided at the end of this Exhibit. The following changes to the Ginna Station License are proposed:

| License Section and Page Number | Action Description |
|---|---|
| Title, Page 1 | Delete "ROCHESTER GAS AND ELECTRIC CORPORATION" and replace it with "R.E. GINNA NUCLEAR POWER PLANT, LLC" |
| Section 2, Page 2 | Strike "hereby" and replace it with "originally" and insert "and subsequently transferred to R.E. Ginna Nuclear Power Plant, LLC" immediately following the word "Corporation" |
| Section 2.A, Page 2 | Strike "the Rochester Gas and Electric Corporation" and replace it with "R.E. Ginna Nuclear Power Plant, LLC" and strike "RG&E" and replace it with "Ginna LLC" |
| Section 2.B (first sentence), Page 2 | Strike "RG&E" and replace it with "Ginna LLC" |
| Section 2.C(1), Page 3 | Strike "RG&E" and replace it with "Ginna LLC" |
| Section 2.C(2), Page 3 | Insert "83" representing the number of amendments issued to date |
| Date of Issuance, Page 4 | Delete the date "December 10, 1984" and replace it with the new date of issuance. |
| | |

UNITED STATES
NUCLEAR REGULATORY COMMISSION
WASHINGTON, DC 20555

R.E. GINNA NUCLEAR POWER PLANT, LLC
~~ROCHESTER GAS AND ELECTRIC CORPORATION~~

DOCKET NO. 50-244

R.E. GINNA NUCLEAR POWER PLANT

FACILITY OPERATING LICENSE

License No. DPR-18

1. The Nuclear Regulatory Commission (the Commission) has found that:

   A. The application complies with the requirements of the Atomic Energy Act of 1954, as amended (the Act), and the regulations of the Commission set forth in 10 CFR Chapter I and all required notifications to other agencies or bodies have been duly made;

   B. Construction of the R.E. Ginna Nuclear Power Plant (the facility) has been substantially completed in conformity with Construction Permit No. CPPR-19, as amended, and the application, the provisions of the Act, and the rules and regulations of the Commission;

   C. The facility will operate in conformity with the application, the provisions of the Act, and the rules and regulations of the Commission;

   D. There is reasonable assurance (i) that the facility can be operated at power levels up to 1520 megawatts (thermal) without endangering the health and safety of the public; and (ii) that such activities will be conducted in compliance with the regulations of the Commission (except as exempted from compliance in Section 2.D below);

   E. The applicant is technically and financially qualified to engaged in the activities authorized by this operating license in accordance with the rules and regulations of the Commission;

   F. The applicant has furnished proof of financial protection that satisfies the requirements of 10 CFR Part 140; and

   G. The issuance of this license will not be inimical to the common defense and security or to the health and safety of the public.

and subsequently transferred to R.E. Ginna Nuclear Power Plant, LLC



originally

2. The Provisional Operating License dated September 19, 1969, is superseded by Facility Operating License No. DPR-18 ~~hereby~~ issued to Rochester Gas and Electric Corporation to read as follows:

"Ginna LLC"

A. This license applies to the R.E. Ginna Nuclear Power Plant, a closed cycle, pressurized, light-water-moderated and cooled reactor, and electric generating equipment (herein referred to as "the facility") which is owned by ~~the Rochester Gas and Electric Corporation~~ R.E. Ginna Nuclear Power Plant, LLC (hereinafter "the licensee" or ~~"RG&E"~~). The facility is located on the licensee's site on the south shore of Lake Ontario, Wayne County, New York, about 16 miles east of the City of Rochester and is described in license application Amendment No. 6, "Final Facility Description and Safety Analysis Report," and subsequent amendments thereto, and in the application for power increase notarized February 2, 1971, and Amendment Nos. 1 through 4 thereto (herein collectively referred to as "the application").

B. Subject to the conditions and requirements incorporated herein, the Commission hereby licenses ~~RG&E~~ Ginna LLC:

(1) Pursuant to Section 104b of the Act and 10 CFR Part 50, "Domestic Licensing of Production and Utilization Facilities," to possess, use and operate the facility at the designated location in Wayne County, New York, in accordance with the procedures and limitations set forth in this license;

(2) Pursuant to the Act and 10 CFR Part 70, to receive, possess, and use at any time special nuclear material or reactor fuel, in accordance with the limitations for storage and amounts required for reactor operation as described in the Final Safety Analysis Report, as amended, and Commission Safety Evaluations dated November 15, 1976, October 5, 1984, November 14, 1984, and August 30, 1995.

(a) Pursuant to the Act and 10 CFR Part 70, to receive and store four (4) mixed oxide fuel assemblies in accordance with the licensee's application dated December 14, 1979 (transmitted by letter dated December 20, 1979);

(b) Pursuant to the Act and 10 CFR Part 70, to possess and use four (4) mixed oxide fuel assemblies in accordance with the licensee's application dated December 14, 1979 (transmitted by letter dated December 20, 1979), as supplemented February 20, 1980 and March 5, 1980;

(3) Pursuant to the Act and 10 CFR Parts 30, 40, and 70 to receive, possess, and use at any time any byproduct, source, and special nuclear material as sealed neutron sources for reactor startup, sealed sources for reactor instrumentation and radiation monitoring equipment calibration, and as fission detectors in amounts as required;

(4) Pursuant to the Act and 10 CFR Parts 30, 40, and 70, to receive, possess, and use in amounts as required any byproduct, source, or special nuclear material without restriction to chemical or physical form, for sample analysis or instrument calibration or associated with radioactive apparatus or components; and

(5) Pursuant to the Act and 10 CFR Parts 30 and 70, to possess, but not separate, such byproduct and special nuclear materials as may be produced by the operation of the facility.

C. This license shall be deemed to contain and is subject to the conditions specified in the following Commission regulations in 10 CFR Part 20, Section 30.34 of Part 30, Section 40.41 of Part 40, Sections 50.54 and 50.59 of Part 50, and Section 70.32 of Part 70; and is subject to all applicable provisions of the Act and rules, regulations and orders of the Commission now or hereafter in effect; and is subject to the additional conditions specified below:

(1) Maximum Power Level

Ginna LLC ~~RG&E~~ is authorized to operate the facility at steady-state power levels up to a maximum of 1520 megawatts (thermal).

(2) Technical Specifications

The Technical Specifications contained in Appendix A, as revised through Amendment No. 83, are hereby incorporated in the license. The licensee shall operate the facility in accordance with the Technical Specifications.

(3) Fire Protection

(a) The licensee shall implement and maintain in effect all fire protection features described in the licensee's submittals referenced in and as approved or modified by the NRC's Fire Protection Safety Evaluation (SE) dated February 14, 1979 and SE supplements dated December 17, 1980, February 6, 1981, June 22, 1981, February 27, 1985 and March 21, 1985 or configurations subsequently approved by the NRC, subject to provision (b) below.

(b) The licensee may make changes to the approved fire protection program without prior approval of the Commission only if those changes would not adversely affect the ability to achieve and maintain safe shutdown in the event of a fire.

(c) Deleted

(4) DELETED

(5) DELETED

(6) DELETED

D. The facility requires an exemption from certain requirements of 10 CFR 50.46(a)(1). This includes an exemption from 50.46(a)(1), that emergency core cooling system (ECCS) performance be calculated in accordance with an acceptable calculational model which conforms to the provisions in Appendix K (SER dated April 18, 1978). The exemption will expire upon receipt and approval of revised ECCS calculations. The aforementioned exemption is authorized by law and will not endanger life property or the common defense and security and is otherwise in the public interest. Therefore, the exemption is hereby granted pursuant to 10 CFR 50.12.

E. The licensee shall fully implement and maintain in effect all provisions of the Commission-approved physical security, guard training and qualification, and safeguards contingency plans including amendments made pursuant to provisions of the Miscellaneous Amendments and Search Requirements revisions to 10 CFR 73.55 (51 FR 27827 and 27822) and to the authority of 10 CFR 50.90 and 10 CFR 50.54(p). The plans, which contain Safeguards Information protected under 10 CFR 73.21, are entitled: "Robert Emmet Ginna Nuclear Plant Physical Security Plan," with revisions submitted through August 18, 1987; "Robert Emmet Ginna Nuclear Plant Guard Training and Qualification Plan" with revisions submitted through July 30, 1981; and "Robert Emmet Ginna Nuclear Plant Safeguards Contingency Plan" with revisions submitted through April 14, 1981. Changes made in accordance with 10 CFR 73.55 shall be implemented in accordance with the schedule set forth therein.

F. This license is effective as of the date of issuance and shall expire at midnight, September 18, 2009.

FOR THE NUCLEAR REGULATORY COMMISSION

~~Original signed by~~

~~Darrell G. Eisenhut, Director~~
~~Division of Licensing~~

Attachment:
Appendix A – Technical Specifications

Date of Issuance: ~~December 10, 1984~~

UNITED STATES
NUCLEAR REGULATORY COMMISSION
WASHINGTON, DC 20555

R.E. GINNA NUCLEAR POWER PLANT, LLC

DOCKET NO. 50-244

R.E. GINNA NUCLEAR POWER PLANT

FACILITY OPERATING LICENSE

License No. DPR-18

1. The Nuclear Regulatory Commission (the Commission) has found that:

   A. The application complies with the requirements of the Atomic Energy Act of 1954, as amended (the Act), and the regulations of the Commission set forth in 10 CFR Chapter I and all required notifications to other agencies or bodies have been duly made;

   B. Construction of the R.E. Ginna Nuclear Power Plant (the facility) has been substantially completed in conformity with Construction Permit No. CPPR-19, as amended, and the application, the provisions of the Act, and the rules and regulations of the Commission;

   C. The facility will operate in conformity with the application, the provisions of the Act, and the rules and regulations of the Commission;

   D. There is reasonable assurance (i) that the facility can be operated at power levels up to 1520 megawatts (thermal) without endangering the health and safety of the public; and (ii) that such activities will be conducted in compliance with the regulations of the Commission (except as exempted from compliance in Section 2.D below);

   E. The applicant is technically and financially qualified to engaged in the activities authorized by this operating license in accordance with the rules and regulations of the Commission;

   F. The applicant has furnished proof of financial protection that satisfies the requirements of 10 CFR Part 140; and

   G. The issuance of this license will not be inimical to the common defense and security or to the health and safety of the public.

2. The Provisional Operating License dated September 19, 1969, is superseded by Facility Operating License No. DPR-18 originally issued to Rochester Gas and Electric

Corporation and subsequently transferred to R.E. Ginna Nuclear Power Plant, LLC to read as follows:

A. This license applies to the R.E. Ginna Nuclear Power Plant, a closed cycle, pressurized, light-water-moderated and cooled reactor, and electric generating equipment (herein referred to as "the facility") which is owned by R.E. Ginna Nuclear Power Plant, LLC (hereinafter "the licensee" or "Ginna LLC"). The facility is located on the licensee's site on the south shore of Lake Ontario, Wayne County, New York, about 16 miles east of the City of Rochester and is described in license application Amendment No. 6, "Final Facility Description and Safety Analysis Report," and subsequent amendments thereto, and in the application for power increase notarized February 2, 1971, and Amendment Nos. 1 through 4 thereto (herein collectively referred to as "the application").

B. Subject to the conditions and requirements incorporated herein, the Commission hereby licenses Ginna LLC:

(1) Pursuant to Section 104b of the Act and 10 CFR Part 50, "Domestic Licensing of Production and Utilization Facilities," to possess, use and operate the facility at the designated location in Wayne County, New York, in accordance with the procedures and limitations set forth in this license;

(2) Pursuant to the Act and 10 CFR Part 70, to receive, possess, and use at any time special nuclear material or reactor fuel, in accordance with the limitations for storage and amounts required for reactor operation as described in the Final Safety Analysis Report, as amended, and Commission Safety Evaluations dated November 15, 1976, October 5, 1984, November 14, 1984, and August 30, 1995.

(a) Pursuant to the Act and 10 CFR Part 70, to receive and store four (4) mixed oxide fuel assemblies in accordance with the licensee's application dated December 14, 1979 (transmitted by letter dated December 20, 1979);

(b) Pursuant to the Act and 10 CFR Part 70, to possess and use four (4) mixed oxide fuel assemblies in accordance with the licensee's application dated December 14, 1979 (transmitted by letter dated December 20, 1979), as supplemented February 20, 1980 and March 5, 1980;

(3) Pursuant to the Act and 10 CFR Parts 30, 40, and 70 to receive, possess, and use at any time any byproduct, source, and special nuclear material as sealed neutron sources for reactor startup, sealed sources for reactor instrumentation and radiation monitoring equipment calibration, and as fission detectors in amounts as required;

(4) Pursuant to the Act and 10 CFR Parts 30, 40, and 70, to receive, possess, and use in amounts as required any byproduct, source, or special nuclear material without restriction to chemical or physical form, for sample analysis or instrument calibration or associated with radioactive apparatus or components; and

(5) Pursuant to the Act and 10 CFR Parts 30 and 70, to possess, but not separate, such byproduct and special nuclear materials as may be produced by the operation of the facility.

C. This license shall be deemed to contain and is subject to the conditions specified in the following Commission regulations in 10 CFR Part 20, Section 30.34 of Part 30, Section 40.41 of Part 40, Sections 50.54 and 50.59 of Part 50, and Section 70.32 of Part 70; and is subject to all applicable provisions of the Act and rules, regulations and orders of the Commission now or hereafter in effect; and is subject to the additional conditions specified below:

(1) Maximum Power Level

Ginna LLC is authorized to operate the facility at steady-state power levels up to a maximum of 1520 megawatts (thermal).

(2) Technical Specifications

The Technical Specifications contained in Appendix A, as revised through Amendment No. 83, are hereby incorporated in the license. The licensee shall operate the facility in accordance with the Technical Specifications.

(3) Fire Protection

(a) The licensee shall implement and maintain in effect all fire protection features described in the licensee's submittals referenced in and as approved or modified by the NRC's Fire Protection Safety Evaluation (SE) dated February 14, 1979 and SE supplements dated December 17, 1980, February 6, 1981, June 22, 1981, February 27, 1985 and March 21, 1985 or configurations subsequently approved by the NRC, subject to provision (b) below.

(b) The licensee may make changes to the approved fire protection program without prior approval of the Commission only if those changes would not adversely affect the ability to achieve and maintain safe shutdown in the event of a fire.

(c) Deleted

(4) DELETED

(5) DELETED

(6) DELETED

D. The facility requires an exemption from certain requirements of 10 CFR 50.46(a)(1). This includes an exemption from 50.46(a)(1), that emergency core cooling system (ECCS) performance be calculated in accordance with an acceptable calculational model which conforms to the provisions in Appendix K (SER dated April 18, 1978). The exemption will expire upon receipt and approval of revised ECCS calculations. The aforementioned exemption is authorized by law and will not endanger life property or the common defense and security and is otherwise in the public interest. Therefore, the exemption is hereby granted pursuant to 10 CFR 50.12.

E. The licensee shall fully implement and maintain in effect all provisions of the Commission-approved physical security, guard training and qualification, and safeguards contingency plans including amendments made pursuant to provisions of the Miscellaneous Amendments and Search Requirements revisions to 10 CFR 73.55 (51 FR 27827 and 27822) and to the authority of 10 CFR 50.90 and 10 CFR 50.54(p). The plans, which contain Safeguards Information protected under 10 CFR 73.21, are entitled: "Robert Emmet Ginna Nuclear Plant Physical Security Plan," with revisions submitted through August 18, 1987; "Robert Emmet Ginna Nuclear Plant Guard Training and Qualification Plan" with revisions submitted through July 30, 1981; and "Robert Emmet Ginna Nuclear Plant Safeguards Contingency Plan" with revisions submitted through April 14, 1981. Changes made in accordance with 10 CFR 73.55 shall be implemented in accordance with the schedule set forth therein.

F. This license is effective as of the date of issuance and shall expire at midnight, September 18, 2009.

FOR THE NUCLEAR REGULATORY COMMISSION

Attachment:
Appendix A – Technical Specifications

Date of Issuance:

# Exhibit 2