May 28, 2004

Dr. Robert C. Mecredy
Vice President, Nuclear Operations
Rochester Gas and Electric Corporation
89 East Avenue
Rochester, NY 14649

Mr. Michael J. Wallace
President, Constellation Generation Group
1997 Annapolis Exchange Parkway
Suite 500
Annapolis, MD 21401

SUBJECT: R.E. GINNA NUCLEAR POWER PLANT- ORDER APPROVING TRANSFER OF LICENSE FROM ROCHESTER GAS AND ELECTRIC CORPORATION TO R.E. GINNA NUCLEAR POWER PLANT, LLC AND APPROVING CONFORMING AMENDMENT (TAC NO. MC1567)

Dear Messrs. Mecredy and Wallace:

By letter dated December 16, 2003, Rochester Gas and Electric Corporation (RG&E) and Constellation Generation Group, LLC (CGG), acting on behalf of Constellation's newly formed indirect subsidiary R. E. Ginna Nuclear Power Plant, LLC, (Ginna LLC), submitted an application to the Nuclear Regulatory Commission (NRC) requesting approval of the transfer by RG&E of its operating authority under the license for the R. E. Ginna Nuclear Power Plant to Ginna LLC. This application also requested approval of a conforming amendment to the license pursuant to Section 50.80 and 50.90 of Title 10 of the *Code of Federal Regulations.* The application was supplemented by letters from RG&E dated March 26, and April 30, 2004, and from CGG dated February 27, and April 30, 2004. The supplements provided additional information that clarified the application, did not expand the scope of the application as originally noticed and did not change the staff's original proposed no significant hazards consideration determination as published in the *Federal Register* on January 22, 2004 (69 FR 3183).

The NRC staff has completed its review of the application. Enclosure 1 is the Order which approves both the proposed transfer, subject to the conditions described therein, and the conforming amendment. Enclosure 2 provides the conforming amendment pages for Ginna LLC. The conforming amendment will be issued and become effective at the time the transfer is consummated. Enclosures 3 and 4 contain the nonproprietary and proprietary versions, respectively, of the staff's safety evaluation (SE) related to the preceding action.

**NOTE: THIS DOCUMENT CONTAINS PROPRIETARY INFORMATION. THIS DOCUMENT BECOMES NONPROPRIETARY UPON REMOVAL OF ENCLOSURE 4.**

The nonproprietary version of the SE will be placed in the NRC public document room and added to the Agency-wide Documents Access and Management System's Publicly Available Records System (ADAMS PARS) Library.

The Order has been forwarded to the Office of the Federal Register for publication.

Sincerely,

***/RA/***

Robert L. Clark, Project Manager, Section 1
Project Directorate I
Division of Licensing Project Management
Office of Nuclear Reactor Regulation

Docket No. 50-244

Enclosures:
1. Order
2. Conforming Amendment
3. Safety Evaluation (nonproprietary)
4. Safety Evaluation (proprietary)

cc w/encls: See next page

**NOTE: THIS DOCUMENT CONTAINS PROPRIETARY INFORMATION. THIS DOCUMENT BECOMES NONPROPRIETARY UPON REMOVAL OF ENCLOSURE 4.**

The nonproprietary version of the SE will be placed in the NRC public document room and added to the Agency-wide Documents Access and Management System's Publicly Available Records System (ADAMS PARS) Library.

The Order has been forwarded to the Office of the Federal Register for publication.

Sincerely,

*/RA/*

Robert L. Clark, Project Manager, Section 1
Project Directorate I
Division of Licensing Project Management
Office of Nuclear Reactor Regulation

Docket No. 50-244

Enclosures: 1. Order
2. Conforming Amendment
3. Safety Evaluation (nonproprietary)
4. Safety Evaluation (proprietary)

cc w/encls: See next page

**NOTE: THIS DOCUMENT CONTAINS PROPRIETARY INFORMATION. THIS DOCUMENT BECOMES NONPROPRIETARY UPON REMOVAL OF ENCLOSURE 4.**

PACKAGE ACCESSION No.: ML041330549
PROPRIETARY VERSION ACCESSION No.: ML041330552
NONPROPRIETARY No.: ML041330540

*SE input provided

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| OFFICE | PDI-1\PM | PDI-1\LA | Tech Editor* | RPRP\SC* | IROB\SC* | | |
| NAME | RClark | SLittle | PKleene | BThomas | DTrimble | | |
| DATE | 5/27/04 | 05/13/04 | 05/10/04 | 04/06/04 | 03/26/04 | | |
| OFFICE | OGC* | PDI-2/SC | PDI\D | DLPM\D | ADPT | NRR/D | |
| NAME | CMarco | RLaufer | CHolden | TMarsh | BSheron | JDyer | |
| DATE | 05/26/04 | 5/27/04 | 5/27/04 | 5/28/04 | 5/28/04 | 5/28/04 | |

Official Record Copy

DATED: May 28, 2004

ORDER APPROVING TRANSFER OF FACILITY OPERATING LICENSE FOR R. E. GINNA NUCLEAR POWER PLANT

DISTRIBUTION w/Enclosures 1, 2, & 3 (nonproprietary)
PUBLIC
PDI-1 R/F
JDyer
AHowe
BThomas
DTrimble
RMoody
RPelton
MDusaniwskyj
PBollwerk, ASLBP
BSheron
TMarsh
CHolden
RLaufer
SLittle
OGC
GHill (2)
ACRS
SECY
TBergman, EDO
CBixler, RGN-I

DISTRIBUTION w/Enclosures 1, 2, 3, and 4 (proprietary)
R. Clark

PROPRIETARY CC LIST

R. E. Ginna LLC

cc w/encls 1, 2, 3, and 4:

Regional Administrator, Region I
U.S. Nuclear Regulatory Commission
475 Allendale Road
King of Prussia, PA 19406

Daniel F. Stenger
Ballard Spahr Andrews & Ingersoll, LLP
601 13th Street, N.W., Suite 1000 South
Washington, DC 20005

Samuel Behrends, IV
Counsel for Rochester Gas and Electric Corporation at LeBoeuf, Lamb, Greene and MacRae
1875 Connecticut Avenue, N.W.
Washington, DC 20009

James M. Petro
Counsel for Constellation Energy Group
750 East Pratt Street, 5th Floor
Legal Department
Baltimore, MD 2101

James R. Curtiss
Counsel for Constellation Energy Group, at Winston & Strawn
1400 L Street, N.W.
Washington, DC 20005

<u>NONPROPRIETARY CC LIST:</u> (w/o Enclosure 4)

R.E. Ginna Nuclear Power Plant

cc:

Kenneth Kolaczyk, Sr. Resident Inspector
R.E. Ginna Plant
U.S. Nuclear Regulatory Commission
1503 Lake Road
Ontario, NY 14519

Regional Administrator, Region I
U.S. Nuclear Regulatory Commission
475 Allendale Road
King of Prussia, PA 19406

Peter R. Smith, President
New York State Energy, Research,
and Development Authority
17 Columbia Circle
Albany, NY 12203-6399

Charles Donaldson, Esquire
Assistant Attorney General
New York Department of Law
120 Broadway
New York, NY 10271

Daniel F. Stenger
Ballard Spahr Andrews & Ingersoll, LLP
601 13th Street, N.W., Suite 1000 South
Washington, DC 20005

Ms. Thelma Wideman, Director
Wayne County Emergency Management
Office
Wayne County Emergency Operations
Center
7336 Route 31
Lyons, NY 14489

Ms. Mary Louise Meisenzahl
Administrator, Monroe County
Office of Emergency Preparedness
1190 Scottsville Road, Suite 200
Rochester, NY 14624

Mr. Paul Eddy
New York State Department of
Public Service
3 Empire State Plaza, 10th Floor
Albany, NY 12223

7590-01-P

UNITED STATES OF AMERICA

NUCLEAR REGULATORY COMMISSION

| | | |
|---|---|---|
| In the Matter of | ) | |
| | ) | |
| ROCHESTER GAS AND ELECTRIC CORPORATION | ) | Docket No. 50-244 |
| | ) | |
| | ) | |
| (R. E. Ginna Nuclear Power Plant) | ) | |

ORDER APPROVING TRANSFER OF LICENSE
AND CONFORMING AMENDMENT

I.

Rochester Gas and Electric Corporation (RG&E) is the holder of Renewed Facility Operating License No. DPR-18, which authorizes the operation of R. E. Ginna Nuclear Power Plant (Ginna) at steady-state power levels not in excess of 1520 megawatts thermal. The facility is located on the south shore of Lake Ontario, in Wayne County, New York. The license authorizes Ginna to possess, use, and operate the facility.

II.

By letter dated December 16, 2003, RG&E and Constellation Generation Group, LLC (CGG), acting on behalf of Constellation's newly formed indirect subsidiary, R. E. Ginna Nuclear Power Plant, LLC, (Ginna LLC), jointly submitted an application to the Nuclear Regulatory Commission (NRC) requesting approval of the transfer of Facility Operating License No. DPR-18 for Ginna from RG&E to Ginna LLC. The licensee, RG&E, and Ginna LLC also jointly requested approval of a conforming amendment to reflect the transfer. The application was supplemented by submittals dated March 26 and April 30, 2004, from RG&E and

February 27, and April 30, 2004, from CGG. The application and supplements are collectively referred to herein as the application, unless otherwise noted.

Ginna LLC, a Maryland limited liability company, is an indirect wholly owned subsidiary of CGG. According to the application, Ginna LLC would assume title to the facility following approval of the proposed license transfer. The conforming license amendment would remove references to RG&E from the license and add references to Ginna LLC, as appropriate, and make other administrative changes to reflect the proposed transfer.

RG&E and CGG requested approval of the transfer of the license and a conforming license amendment pursuant to 10 CFR 50.80 and 50.90. Notice of the requests for approval and an opportunity to request a hearing or submit written comments was published in the *Federal Register* on January 22, 2004 (69 FR 3183). The Commission received no requests for a hearing and no written comments.

Under 10 CFR 50.80, no license, or any right thereunder, shall be transferred, directly or indirectly, through transfer of control of the license, unless the Commission shall give its consent in writing. After reviewing the information submitted in the application and other information before the Commission, and relying upon the representations and agreements contained in the application, the NRC staff has determined that Ginna LLC is qualified to be the holder of the license to the extent proposed in the application, and that the transfer of the license to Ginna LLC is otherwise consistent with applicable provisions of law, regulations, and orders issued by the Commission, subject to the conditions set forth below. The NRC staff has further found that the application for the proposed license amendment complies with the standards and requirements of the Atomic Energy Act of 1954, as amended (the Act), and the Commission's rules and regulations set forth in 10 CFR Chapter I; the facility will operate in conformity with the application, the provisions of the Act, and the rules and regulations of the Commission; there is reasonable assurance that the activities authorized by the proposed

license amendment can be conducted without endangering the health and safety of the public and that such activities will be conducted in compliance with the Commission's regulations; the issuance of the proposed license amendment will not be inimical to the common defense and security or the health and safety of the public; and the issuance of the proposed license amendment will be in accordance with 10 CFR Part 51 of the Commission's regulations and all applicable requirements have been satisfied. The findings set forth above are supported by the staff's Safety Evaluation dated May 28, 2004.

III.

Accordingly, pursuant to Sections 161b, 161i, and 184 of the Atomic Energy Act of 1954, as amended, 42 U.S.C. 2201(b), 2201(i), and 2234; and 10 CFR 50.80, IT IS HEREBY ORDERED that the transfer of the license as described herein to Ginna LLC is approved, subject to the following conditions:

(1) Before the completion of the sale and transfer of Ginna, Ginna LLC shall provide the Director of the Office of Nuclear Reactor Regulation satisfactory documentary evidence that Ginna LLC has obtained the appropriate amount of insurance required of licensees under 10 CFR Part 140 of the Commission's regulations.

(2) On the closing date of the transfer of Ginna, Ginna LLC shall obtain from RG&E a minimum of $201.6 million for decommissioning funding assurance for the facility, and ensure the deposit of such funds into a decommissioning trust for Ginna established by Ginna LLC.

(3) Decommissioning Trust

(i) The decommissioning trust agreement must be in a form acceptable to the NRC.

(ii) Ginna LLC shall take all necessary steps to ensure that the decommissioning trust is maintained in accordance with the application and the requirements of this Order, and consistent with the Safety Evaluation supporting this Order.

(4) After receipt of all required regulatory approvals of the transfer of Ginna, Ginna LLC shall inform the Director of the Office of Nuclear Reactor Regulation in writing of such receipt within 5 business days, and of the closing date of the sale and transfer of Ginna no later than 7 business days prior to the date of closing. If the transfer of the license is not completed by June 1, 2005, this Order shall become null and void, provided, however, on written application and for good cause shown, this date may, in writing, be extended.

IT IS FURTHER ORDERED that, consistent with 10 CFR 2.1315(b), a license amendment that makes changes, as indicated in Enclosure 2 to the cover letter forwarding this Order, to conform the license to reflect the subject license transfer is approved. The amendment shall be issued and made effective at the time the proposed license transfer is completed.

This Order is effective upon issuance.

For further details with respect to this Order, see the initial application dated December 16, 2003, and supplemental letters from RG&E dated March 26, and April 30, 2004, and from CGG dated February 27, and April 30, 2004, and the Safety Evaluation dated May 28, 2004, which are available for public inspection at the Commission's Public Document Room, located at One White Flint North, File Public Area O1F21, 11555 Rockville Pike

(first floor), Rockville, Maryland, and accessible electronically through ADAMS Public Electronic Reading Room link at the NRC Web site (http://www.nrc.gov).

Dated at Rockville, Maryland, this 28th day of May 2004.

FOR THE NUCLEAR REGULATORY COMMISSION

***/RA/***

J. E. Dyer, Director
Office of Nuclear Reactor Regulation

ROCHESTER GAS AND ELECTRIC CORPORATION

DOCKET NO. 50-244

R. E. GINNA NUCLEAR POWER PLANT

AMENDMENT TO RENEWED FACILITY OPERATING LICENSE

Amendment No.
License No. DPR-18

1. The Nuclear Regulatory Commission (the Commission) has found that:

   A. The application for amendment filed by Rochester Gas and Electric Corporation (the licensee) dated December 16, 2003, as supplemented by letters from the licensee dated March 26, and April 30, 2004, and from Constellation Generation Group, LLC dated February 27, and April 30, 2004, complies with the standards and requirements of the Atomic Energy Act of 1954, as amended (the Act), and the Commission's rules and regulations set forth in 10 CFR Chapter I;

   B. The facility will operate in conformity with the application, the provisions of the Act, and the rules and regulations of the Commission;

   C. There is reasonable assurance: (i) that the activities authorized by this amendment can be conducted without endangering the health and safety of the public, and (ii) that such activities will be conducted in compliance with the Commission's regulations;

   D. The issuance of this amendment will not be inimical to the common defense and security or to the health and safety of the public; and

   E. The issuance of this amendment is in accordance with 10 CFR Part 51 of the Commission's regulations and all applicable requirements have been satisfied.

2. Accordingly, Renewed Facility Operating License No. DPR-18 is hereby amended as indicated in the attachment to this license amendment.

3. This license amendment is effective as of its date of issuance and shall be implemented within 30 days.

FOR THE NUCLEAR REGULATORY COMMISSION

J. E. Dyer, Director
Office of Nuclear Reactor Regulation

Attachment: Changes to the Operating License

Date of Issuance:

ATTACHMENT TO LICENSE AMENDMENT NO. __

TO RENEWED FACILITY OPERATING LICENSE NO. DPR-18

DOCKET NO. 50-244

Replace the following pages of the Renewed Facility Operating License with the attached revised pages. The revised pages are identified by amendment number and contain marginal lines indicating the areas of change.

| Remove Pages | Insert Pages |
| --- | --- |
| 1 through 5 | 1 through 6 |

R. E. GINNA NUCLEAR POWER PLANT, LLC

DOCKET NO. 50-244

R. E. GINNA NUCLEAR POWER PLANT

RENEWED FACILITY OPERATING LICENSE NO. DPR-18

1. The U.S. Nuclear Regulatory Commission (the Commission) having previously made the findings set forth in License No. DPR-18 issued December 10, 1984, has now found that:

   A. The application to renew License No. DPR-18 filed by Rochester Gas and Electric Corporation (RG&E) complies with the standards and requirements of the Atomic Energy Act of 1954, as amended (the Act), and the rules and regulations of the Commission set forth in Title 10 of the *Code of Federal Regulations* (10 CFR) Chapter I and all required notifications to other agencies or bodies have been duly made;

   B. Actions have been identified and have been or will be taken with respect to (1) managing the effects of aging during the period of extended operation on the functionality of structures and components that have been identified to require review under 10 CFR 54.21(a)(1), and (2) time-limited aging analyses that have been identified to require review under 10 CFR 54.21(c), such that there is reasonable assurance that the activities authorized by this renewed license will continue to be conducted in accordance with the current licensing basis, as defined in 10 CFR 54.3, for R. E. Ginna Nuclear Power Plant (the facility), and that any changes made to the plant's current licensing basis in order to comply with 10 CFR 54.29(a) are in accord with the Act and the Commission's regulations;

   C. The facility will operate in conformity with the application, the provisions of the Act, and the rules and regulations of the Commission;

   D. There is reasonable assurance (i) that the facility can be operated at power levels up to 1520 megawatts (thermal) without endangering the health and safety of the public; and (ii) that such activities will be conducted in compliance with the regulations of the Commission (except as exempted from compliance in Section 2.D below);

   E. Ginna LLC is technically and financially qualified to engage in the activities authorized by this renewed operating license in accordance with the rules and regulations of the Commission;

F. Ginna LLC has furnished proof of financial protection that satisfies the requirements of 10 CFR Part 140;

G. The issuance of this renewed license will not be inimical to the common defense and security or to the health and safety of the public; and

H. After weighing the environmental, economic, technical, and other benefits of the facility against environmental costs and considering available alternatives, the Commission concludes that the issuance of Renewed Operating License No. DPR-18 is in accordance with 10 CFR Part 51 of the Commission's regulations and all applicable requirements have been satisfied.

2. On the basis of the foregoing findings regarding this facility, Facility Operating License No. DPR-18, is superseded by Renewed Facility Operating License No. DPR-18, hereby issued to RG&E and subsequently transferred to Ginna LLC to read as follows:

A. This renewed license applies to the R. E. Ginna Nuclear Power Plant, a closed cycle, pressurized, light-water-moderated and cooled reactor, and electric generating equipment which is owned by Ginna LLC (licensee). The facility is located on the licensee's site on the south shore of Lake Ontario, Wayne County, New York, about 16 miles east of the City of Rochester and is described in the licensee's Updated Final Safety Analysis Report (UFSAR), as supplemented and amended.

B. Subject to the conditions and requirements incorporated herein, the Commission hereby licenses Ginna LLC:

(1) Pursuant to Section 104b of the Act and 10 CFR Part 50, "Domestic Licensing of Production and Utilization Facilities," to possess, use and operate the facility at the designated location in Wayne County, New York, in accordance with the procedures and limitations set forth in this renewed license;

(2) Pursuant to the Act and 10 CFR Part 70, to receive, possess, and use at any time special nuclear material or reactor fuel, in accordance with the limitations for storage and amounts required for reactor operation as described in the Final Safety Analysis Report, as amended, and Commission Safety Evaluations dated November 15, 1976, October 5, 1984, November 14, 1984, and August 30, 1995.

(a) Pursuant to the Act and 10 CFR Part 70, to receive and store four (4) mixed oxide fuel assemblies in accordance with the RG&E's application dated December 14, 1979 (transmitted by letter dated December 20, 1979);

(b) Pursuant to the Act and 10 CFR Part 70, to possess and use four (4) mixed oxide fuel assemblies in accordance with the RG&E's application dated December 14, 1979 (transmitted by letter dated December 20, 1979), as supplemented February 20, 1980 and March 5, 1980;

(3) Pursuant to the Act and 10 CFR Parts 30, 40, and 70 to receive, possess, and use at any time any byproduct, source, and special nuclear material as sealed neutron sources for reactor startup, sealed sources for reactor instrumentation and radiation monitoring equipment calibration, and as fission detectors in amounts as required;

(4) Pursuant to the Act and 10 CFR Parts 30, 40, and 70, to receive, possess, and use in amounts as required any byproduct, source, or special nuclear material without restriction to chemical or physical form, for sample analysis or instrument calibration or associated with radioactive apparatus or components; and

(5) Pursuant to the Act and 10 CFR Parts 30 and 70, to possess, but not separate, such byproduct and special nuclear materials as may be produced by the operation of the facility.

C. This renewed license shall be deemed to contain and is subject to the conditions specified in the following Commission regulations in 10 CFR Part 20, Section 30.34 of Part 30, Section 40.41 of Part 40, Sections 50.54 and 50.59 of Part 50, and Section 70.32 of Part 70; and is subject to all applicable provisions of the Act and rules, regulations and orders of the Commission now or hereafter in effect; and is subject to the additional conditions specified below:

(1) Maximum Power Level

Ginna LLC is authorized to operate the facility at steady-state power levels up to a maximum of 1520 megawatts (thermal).

(2) Technical Specifications

The Technical Specifications contained in Appendix A, as revised through Amendment No. , are hereby incorporated in the renewed license. The licensee shall operate the facility in accordance with the Technical Specifications.

(3) Fire Protection

(a) The licensee shall implement and maintain in effect all fire protection features described in the licensee's submittals referenced in and as approved or modified by the NRC's Fire Protection Safety Evaluation (SE) dated February 14, 1979 and

SE supplements dated December 17, 1980, February 6, 1981, June 22, 1981, February 27, 1985 and March 21, 1985 or configurations subsequently approved by the NRC, subject to provision (b) below.

(b) The licensee may make changes to the approved fire protection program without prior approval of the Commission only if those changes would not adversely affect the ability to achieve and maintain safe shutdown in the event of a fire.

(c) Deleted

(4) Deleted

(5) Deleted

(6) Deleted

(7) <u>License Transfer</u>

(a) On the closing date of the transfer, Ginna LLC shall obtain from RG&E a minimum of $201.6 million for decommissioning funding assurance for the facility, and ensure the deposit of such funds into a decommissioning trust for the facility established by Ginna LLC.

(b) The decommissioning trust agreement must be in a form acceptable to the NRC.

(c) The licensee shall take all necessary steps to ensure that the decommissioning trust is maintained in accordance with the application and the requirements of the Order approving license transfer, and shall be consistent with the Safety Evaluation supporting that Order.

D. The facility requires an exemption from certain requirements of 10 CFR 50.46(a)(1). This includes an exemption from 50.46(a)(1), that emergency core cooling system (ECCS) performance be calculated in accordance with an acceptable calculational model which conforms to the provisions in Appendix K (SER dated April 18, 1978). The exemption will expire upon receipt and approval of revised ECCS calculations. The aforementioned exemption is authorized by law and will not endanger life property or the common

defense and security and is otherwise in the public interest. Therefore, the exemption is hereby granted pursuant to 10 CFR 50.12.

E. The licensee shall fully implement and maintain in effect all provisions of the Commission-approved physical security, guard training and qualification, and safeguards contingency plans including amendments made pursuant to provisions of the Miscellaneous Amendments and Search Requirements revisions to 10 CFR 73.55 (51 FR 27827 and 27822) and to the authority of 10 CFR 50.90 and 10 CFR 50.54(p). The plans, which contain Safeguards Information protected under 10 CFR 73.21, are entitled: "Robert Emmet Ginna Nuclear Plant Physical Security Plan," with revisions submitted through August 18, 1987; "Robert Emmet Ginna Nuclear Plant Guard Training and Qualification Plan" with revisions submitted through July 30, 1981; and "Robert Emmet Ginna Nuclear Plant Safeguards Contingency Plan" with revisions submitted through April 14, 1981. Changes made in accordance with 10 CFR 73.55 shall be implemented in accordance with the schedule set forth therein.

F. The Updated Final Safety Analysis Report supplement, submitted pursuant to 10 CFR 54.21(d), describes certain future activities to be completed prior to the period of extended operation. Ginna LLC shall complete these activities no later than September 18, 2009, and shall notify the NRC in writing when implementation of these activities is complete and can be verified by NRC inspection.

The Updated Final Safety Analysis Report supplement, as revised, shall be included in the next scheduled update to the Updated Final Safety Analysis Report required by 10 CFR 50.71(e)(4) following issuance of this renewed license. Until that update is complete, Ginna LLC may make changes to the programs and activities described in the supplement without prior Commission approval, provided that Ginna LLC evaluates each such change pursuant to the criteria set forth in 10 CFR 50.59 and otherwise complies with the requirements in that section.

G. All capsules in the reactor vessel that are removed and tested must meet the test procedures and reporting requirements of ASTM E 185-82 to the extent practicable for the configuration of the specimens in the capsule. Any changes to the capsule withdrawal schedule, including spare capsules, must be approved by the NRC prior to implementation. Any capsules placed in storage must be maintained for future insertion, unless approved by the NRC.

H. This renewed license is effective as of the date of issuance and shall expire at midnight on September 18, 2029.

FOR THE NUCLEAR REGULATORY COMMISSION

Original signed by

J. E. Dyer, Director
Office of Nuclear Reactor Regulation

Attachment: Appendix A - Technical Specifications

Date of Issuance: May 19, 2004

SAFETY EVALUATION BY THE OFFICE OF NUCLEAR REACTOR REGULATION

RELATED TO TRANSFER OF OPERATING LICENSE DPR-18

TO R. E. GINNA NUCLEAR POWER PLANT, LLC

FOR THE R. E. GINNA NUCLEAR POWER PLANT

DOCKET NO. 50-244

## 1.0 INTRODUCTION

In its application submitted by letter dated December 16, 2003 (ADAMS No. ML033560218), Rochester Gas and Electric Corporation (RG&E), and Constellation Generation Group, LLC (CGG), acting on behalf of Constellation's newly formed indirect subsidiary, R. E. Ginna Nuclear Power Plant, LLC, (Ginna LLC), requested that the Nuclear Regulatory Commission (NRC) consent to the transfer of Facility Operating License No. DPR-18 for the R. E. Ginna Nuclear Power Plant (Ginna) from RG&E to Ginna LLC.

The application also requested the approval of a conforming license amendment to reflect the proposed transfer and was filed pursuant to Sections 50.80 and 50.90 of Title 10 of the *Code of Federal Regulations*. The application was supplemented by letters from RG&E dated March 26 (ADAMS No. ML040930194) and April 30, 2004 (ADAMS No. ML041280087) and from CGG dated February 27 (ADAMS No. ML040630855) and April 30, 2004 (ADAMS No. ML041280417). The supplements provided additional information that clarified the application, and did not expand the scope of the application as originally noticed in the *Federal Register* on January 22, 2004 (69 FR 3183).

The license transfer application addresses the nature and purpose of the proposed transaction, the financial and technical qualification of Ginna LLC as the new owner and operator, Ginna LLC's ability to provide decommissioning funding assurance, and the absence of foreign control or domination over Ginna LLC and its affiliates.

## 2.0 BACKGROUND

Ginna is a two loop pressurized-water reactor, rated at 490 megawatts electric, located on the south shore of Lake Ontario, in Wayne County, New York, approximately 20 miles northeast of Rochester, New York. RG&E is currently the sole owner and operator of Ginna. RG&E and CGG have entered into an Asset Purchase Agreement, dated November 24, 2003, under which RG&E will transfer its operating and ownership interest in Ginna to CGG. Immediately and without pause, CGG will assign all of its interests, rights, and obligations under the Asset Purchase Agreement to Ginna LLC. This transaction is part of the ongoing restructuring of the electric utility industry in the State of New York.

A material condition of the transfer is that the NRC must approve RG&E's pending license renewal application for Ginna for an additional 20 years beyond the current license expiration date of September 18, 2009. The Ginna license renewal was issued on May 19, 2004.

## 3.0 REGULATORY EVALUATION

RG&E requests the approval of the direct transfer of the Ginna ownership interest and operating license pursuant to 10 CFR 50.80. Section 50.80(a) of 10 CFR states: "No license for a production or utilization facility, or any right thereunder, shall be transferred, assigned, or in any manner disposed of, either voluntarily or involuntarily, directly or indirectly, through the transfer of control of the license to any person, unless the Commission shall give its consent in writing."

In addition, the requirements of 10 CFR 50.80(b) and (c) apply. Section 50.80(b) states: "An applicant for transfer of a license shall include as much of the information described in [10 CFR] 50.33 and [10 CFR] 50.34 of this part with respect to the identity and technical and financial qualifications of the proposed transferee as would be required by those sections if the application were for an initial license, and, if the license to be issued is a Class 103 construction permit or initial operating license, the information required by 10 CFR 50.33(a)." Section 50.80(c) states: "the Commission will approve an application for the transfer of a license, if the Commission determines: (1) That the proposed transferee is qualified to be the holder of the license; and (2) That transfer of the license is otherwise consistent with applicable provisions of the law, regulations, and orders issued by the Commission pursuant thereto."

## 4.0 FINANCIAL EVALUATIONS

### 4.1 Financial Qualifications

Section 50.33(f) of 10 CFR states: "Except for an electric utility applicant for a license to operate a utilization facility of the type described in [10 CFR] 50.21(b) or [10 CFR] 50.22, information sufficient to demonstrate to the Commission the financial qualification of the applicant to carry out, in accordance with the regulations of this chapter, the activities for which the permit or license is sought."

Section 50.2 of 10 CFR states that an electric utility is "any entity that generates or distributes electricity and which recovers the cost of this electricity, either directly or indirectly, through rates established by the entity itself or by a separate regulatory authority."

The NRC staff finds that Ginna LLC does not qualify as an "electric utility" as defined in 10 CFR 50.2 because most of its electric revenue, used to recover costs, will not be set by a separate regulatory authority or by the entity itself. Thus, the staff has determined that Ginna LLC must meet the financial qualifications requirements for a non-electric utility pursuant to 10 CFR 50.33(f). Ginna LLC, a non-electric utility, is subject to a full financial qualification review by the NRC. Because Ginna LLC is not an electric utility and subject to a full review, Ginna LLC must provide the following information:

1) Information that demonstrates that Ginna LLC possesses or has reasonable assurance of obtaining the necessary funds to cover estimated operating costs

for the first 5 years of facility operations and indicates the source(s) of funds to cover these costs.

2) Information that shows: a) the legal and financial relationship Ginna LLC has or proposes to have with its stockholders or owners; b) its financial ability to meet any contractual obligations to any entity which it has incurred or proposes to incur; and c) any other information considered necessary by the NRC staff to enable it to determine the applicant's financial qualification.

This information will demonstrate how Ginna LLC meets the requirements of 10 CFR 50.33(f). Also, 10 CFR 50.33(k)(1) requires that Ginna LLC provide information described in 10 CFR 50.75 indicating reasonable assurance that funds will be available to decommission the facility.

In accordance with 10 CFR 50.33(f), Ginna LLC provided in their December 2003 application, the projected income statements for the full 5-year period from 2005 to 2009, including partial year 2004.

**Ginna LLC**
**Summary of**
**PROJECTED INCOME STATEMENT**
(In $ millions)

| | FY2004F | Y2005 | FY2006 | FY2007 | FY2008 | FY2009 |
|---|---|---|---|---|---|---|
| TOTAL REVENUE: | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| Total Operating Expense: | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| Operating Income: | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| Other Income/ Expense Tax | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |
| NET INCOME AFTER TAX | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] | $ [redacted] |

The NRC staff has chosen to test the sensitivity of the financial information in the above Projected Income Statement by analyzing two scenarios with different revenue assumptions. The staff notes that if prices per megawatt hour were to drop by an average of 10.0%, the average net effect on the 5 ½ years of Net Income, is a drop from the projected average of $[redacted] million to a possible $[redacted] million. Similarly, if an average historical capacity factor of 90.6% is assumed instead of the projected average capacity factor of [redacted]%, then the average net effect on the 5 ½ years of Net Income is a drop to a possible $[redacted] million. The staff considers that the impact on Net Income under each of the two scenarios should provide reasonable assurance of adequate funding to recover costs of operations.

According to the applicant, the Projected Income Statements are based in part on a Power Purchase Agreement between Constellation Power Sources, Inc., and RG&E that will provide Ginna LLC with a substantial portion of its revenue over the next 10 years, by selling 90 percent of the output from Ginna to RG&E. Constellation Power Source, Inc. is CGG's merchant subsidiary that markets energy and ancillary services. A secondary agreement will be executed between Constellation Power Services, Inc., and Ginna LLC to provide revenue to Ginna LLC from the sale of capacity and energy from Ginna.

The staff finds that Ginna LLC's Projected Income Statement shows that the anticipated revenues from sales of energy and capacity from Ginna provides reasonable assurance of an adequate source of funds to meet Ginna LLC's anticipated expenses during the 5 ½ year period covered by the projections. The NRC staff finds that no further financial qualifications analysis or review is necessary.

Thus, the NRC staff has determined that Ginna LLC has met the financial qualifications requirements for a non-electric utility pursuant to 10 CFR 50.33(f).

The staff takes note that CGG operates a cash pool for all its subsidiaries. Ginna LLC, as a subsidiary of CGG, will have access to the cash pool made up of commercial paper and bank credits. Currently, CGG has a $2.5 billion commercial paper program and it has credit agreements and committed bank lines of credit totaling $1.5 billion. Thus, the cash pool provides additional assurance that Ginna LLC will be able to cover costs if electric revenues should fall short.

4.2 Decommissioning Funding Assurance

The NRC has determined that the requirements to provide reasonable assurance of decommissioning funding are necessary to ensure the adequate protection of public health and safety. The regulations in 10 CFR 50.33(k) require that an applicant for an operating license for a utilization facility contain information on how reasonable assurance will be provided that funds will be available to decommission the facility to NRC standards.

RG&E expects to transfer to Ginna LLC at closing an aggregate amount of decommissioning funds that will meet the NRC minimum funding requirements with credit for 2 percent real rate of return, as permitted under 10 CFR 50.75(e)(1)(i), based on the renewal of Ginna's Operating License which is a condition of closing. The amount of funds to be transferred is defined as the "Decommissioning Target" in the Agreement. The decommissioning funds will be held in an external trust segregated from Ginna LLC's assets and outside its administrative control. The terms of the Ginna LLC decommissioning trust agreement will comply with the NRC final rule on Decommissioning Trust Provisions (67 FR 78332) which became effective on December 24, 2003.

As stated in the submittal on the closing date, the funds in RG&E's qualified decommissioning trust fund will be transferred to Ginna LLC, and RG&E will also transfer to Ginna LLC as much of its non-qualified decommissioning trust funds as is necessary, when combined with the amount in RG&E's qualified trust fund, to meet the Decommissioning Target amount agreed by RG&E and CGG in their Agreement. Upon closing of the sale and the transfer of the Decommissioning Target amount to Ginna LLC, RG&E's decommissioning trust will be

terminated and the balance of the non-qualified funds will be retained by RG&E and applied as directed by the New York Public Service Commission.

Under the Agreement, the Decommissioning Target amount to be transferred at closing is projected to be $201.6 million, assuming a June 30, 2004, closing. The precise amount will depend on the actual closing date. The NRC staff will hold Ginna LLC to the $201.6 million minimum amount that will be transferred at closing and accordingly, the following should be made a condition of the transfer and a corresponding license condition:

> On the closing date of the transfer of Ginna, Ginna LLC shall obtain from RG&E a minimum of $201.6 million for decommissioning funding assurance for the facility, and ensure the deposit of such funds into a decommissioning trust for Ginna established by Ginna LLC.

The NRC staff finds no objection to the minimum amount of decommissioning trust funds anticipated to be transferred at the time of closing. The NRC staff further concludes that in order to ensure that the decommissioning trust is maintained consistent with the NRC staff's action on the application, essentially the following must be included as conditions of the transfer approval and as conditions in the license:

(i) The decommissioning trust agreement must be in a form acceptable to the NRC.

(ii) Ginna LLC shall take all necessary steps to ensure that the decommissioning trust is maintained in accordance with the application and the requirements of the Order approving license transfer, and shall be consistent with this Safety Evaluation.

4.3 Antitrust Review

The Atomic Energy Act of 1954, as amended (AEA), does not require or authorize antitrust reviews of post-operating licence transfer applications. *Kansas Gas and Electric Co., et al.* (Wolf Creek Generating Station, Unit 1), CLI-99-19, 49 NRC 441 (1999). Therefore, since the application postdates the issuance of the Ginna Operating License, no antitrust review is required or authorized.

4.4 Foreign Ownership, Control, or Domination

Ginna LLC will be a wholly owned subsidiary of CGG. Ginna LLC will be the owner operator of Ginna. According to the application, CGG is a corporation, and Ginna LLC is a limited liability company, both formed under the laws of the State of Maryland. CGG's corporate stock is publicly traded and widely held. Ginna LLC is, or, on the closing date of the sale, will be qualified to conduct business in the State of New York. The applicant states that all the officers and directors of Ginna LLC are expected to be United States citizens. The application further states that neither Ginna LLC nor CGG will be owned, controlled, or dominated by foreign interests. The NRC staff does not know or have any reason to believe otherwise.

4.5 Nuclear Insurance and Indemnity

The provisions of the Price-Anderson Act (Section 170 of the AEA) and the Commission's regulations at 10 CFR Part 140 require that CGG and Ginna LLC be added to the current indemnity agreement for Ginna. In accordance with the Price-Anderson Act, CGG and Ginna LLC will also be required to provide primary insurance and participate in the secondary retrospective insurance pool. These requirements can be met by purchasing insurance policies from American Nuclear Insurers. Ginna LLC will also be required to maintain property insurance as specified in 10 CFR 50.54(w). The information provided in the application concerning financial qualifications demonstrates that Ginna LLC will be able to pay the $10 million potential annual retrospective premium in accordance with 10 CFR 140.21(e)-(f).

Consistent with NRC practice, the NRC staff will require Ginna LLC to provide satisfactory documentary evidence that Ginna LLC has obtained the appropriate amount of insurance required of licensees under 10 CFR Part 140 of the Commission's regulations prior to the issuance of the amended license reflecting Ginna LLC as the licensee. Because the issuance of the amended license is directly tied to the proposed transfer, the order approving the transfer of the license for Ginna will be conditioned as follows:

> CGG and Ginna LLC shall, prior to the completion of the transfers, provide the Director, Office of Nuclear Reactor Regulation satisfactory documentary evidence that CGG and Ginna LLC have obtained the appropriate amount of insurance required of licensees under 10 CFR Part 140 of the Commission's regulations.

4.6 Conclusion

In view of the foregoing, the NRC staff finds that Ginna LLC is qualified to be the holder of the facility operating licenses for Ginna, and that the transfer of the license is otherwise consistent with applicable provisions of law, regulations, and orders issued by the Commission pursuant thereto, subject to all of the conditions addressed in this SE.

In view of the forgoing, the NRC staff finds acceptable the direct transfer of RG&E's ownership interest in Ginna to CGG's wholly owned subsidiary, Ginna LLC.

The NRC staff finds that the applicant in its application has provided sufficient financial information to address the applicable regulatory requirements of 10 CFR 50.33 and 10 CFR 50.80. Therefore, in accordance with 10 CFR 50.80, the NRC staff finds acceptable the proposed direct transfer of control of the Ginna license.

5.0 TECHNICAL QUALIFICATIONS

5.1 Background

The following evaluation addresses the technical qualifications of Ginna, LLC, the proposed operator of Ginna, using the guidance as described in the Standard Review Plan (SRP) NUREG-0800, Section 13.1.1, "Management and Technical Support Organization," and Sections 13.1.2 - 13.1.3, "Operating Organizations." The staff also based its evaluation on 10 CFR 50.40(b), "Common Standards," and 10 CFR 50.80, "Transfer of Licenses."

5.2 Purpose of the Evaluation

The purpose of this evaluation is to ensure that the proposed corporate management is involved with, informed of, and dedicated to the safe operation of the plant and that sufficient, qualified technical resources will be provided to support safe plant operation and maintenance; and to evaluate proposed changes to the operating organization that may occur as a result of the license transfer.

5.3 Management and Technical Support Organization

The staff reviewed the applicant's submittal to determine the acceptability of the proposed corporate management and technical support organization. The staff evaluated the submittal using the applicable acceptance criteria contained in SRP, Section 13.1.1, "Management and Technical Support Organization."

In their submittal dated December 16, 2003, the applicants stated: "...the vast majority of Ginna Station's [Ginna's] plant staff, including senior managers, will remain essentially unchanged... [A]dditional experienced personnel may join the site organization...up to and after the proposed license transfer...Ginna LLC will ensure that following the transfer, new personnel meet all existing qualifications requirements in accordance with the Ginna Station Operating License and Technical Specifications."

"Ginna LLC will not be relying on other organizations to establish its technical qualifications. Nevertheless, the extensive experience and technical capabilities of CGG [Constellation Generation Group, LLC] are a valuable resource available to Ginna LLC...This level of experience and capability in an affiliated company provides added assurance that Ginna LLC will have the requisite technical qualifications necessary to conduct licensed activities at Ginna Station."

"The guiding principle that will govern Ginna LLC's management of Ginna Station [Ginna] will be to assure that it manages, operates, and maintains Ginna Station safely and in accordance with the conditions and requirements established by the NRC."

Based on the applicant's submittal, the applicant has shown and described its organization for managing and its means for providing technical support to the plant staff that will be essentially equivalent to the current qualifications of the RG&E management and technical support organization, regarding which the staff is aware of no deficiencies. Accordingly, the staff concludes that the proposed Ginna LLC organization for managing and providing technical support for the continued operation of Ginna under both normal and off-normal conditions are in accordance with SRP Section 13.1.1, "Management and Technical Organization."

5.4 Operating Organization

The staff reviewed the applicant's submittal to determine the acceptability of the Ginna LLC operating organization and to evaluate changes to the operating organization proposed as a result of the license transfer. The initial operating organization was determined to be acceptable by the initial licensing review. Subsequent safety-related changes to the operating organization were required to have been evaluated with an appropriate methodology. Therefore, the existing operating organization remains acceptable. The staff's review focused

on evaluating any changes to the operating organization proposed as a result of the transfer. The staff evaluated the applicant's submittal using the applicable acceptance criteria contained in SRP Section 13.1.2-1.3, "Operating Organization."

In their December 16, 2003, submittal, the applicants stated: "The existing on-site operations, maintenance and technical support organizations for Ginna Station [Ginna] will continue to perform their functions as part of the Ginna LLC organization. The functions, responsibilities, and reporting relationships of these organizations, especially as they relate to activities important to the safe operation of Ginna Station, will continue to be clear and unambiguous...[E]ngineering support for Ginna Station [Ginna] is currently provided by a dedicated engineering organization that is an integral part of the site organization that will be transferred to Ginna LLC."

Since substantially all of the operating organizations and personnel now responsible for the operation and maintenance of Ginna will be transferred to Ginna LLC, the staff concludes that Ginna LLC's onsite organizations established to operate and maintain Ginna under both normal and off-normal conditions are in accordance with SRP Section 13.1.2 - 1.3, "Operating Organization."

### 5.5 Conclusion

The application has described the corporate level management and technical support organization and the onsite operating organization of Ginna LLC that will be responsible for the operation and maintenance of Ginna after the transfer of licensed operating authority to Ginna LLC. The staff concludes that Ginna LLC will have an acceptable corporate organization, onsite organization, and adequate resources to provide technical support for the safe operation of the plant under both normal and off-normal conditions after the transfer of licensed operating authority from RG&E to Ginna LLC. The RG&E submittal adequately addresses the relevant requirements of 10 CFR 50.40(b) and 10 CFR 50.80.

Accordingly, in light of the foregoing evaluation, the staff concludes that Ginna LLC will be technically qualified to hold the operating authority under the Ginna license.

## 6.0 CONFORMING AMENDMENT

### 6.1 Introduction

As previously stated, the applicants have requested approval of a proposed conforming amendment to Ginna Renewed Facility Operating License No. DPR-18. The requested changes eliminate references to RG&E in the License and, as appropriate, replace them with references to R. E Ginna Nuclear Power Plant, LLC, to reflect the proposed license transfer. No physical changes to the facility have been requested. Supplemental information received after the initial *Federal Register* notice did not affect the applicability of the Commission's generic no significant hazards consideration determination set forth in 10 CFR 2.1315.

### 6.2 Discussion

The changes to be made to the license, as indicated in Enclosure 2 to the cover letter forwarding the Order approving the transfer, do no more than accurately reflect the approved

transfer action, which is subject to certain conditions set forth in the Order approving the transfer, and that were identified and discussed earlier in this SE. The amendment involves no safety questions and is administrative in nature. Accordingly, the proposed amendment is acceptable.

6.3 State Consultation

In accordance with the Commission's regulations, the State of New York official was notified of the proposed issuance of the amendment. The State official did not provide any comments.

6.4 Conclusion With Respect to the Conforming Amendment

The Commission has concluded, based on the considerations discussed above, that (1) there is reasonable assurance that the health and safety of the public will not be endangered by operation in the proposed manner, (2) such activities will be conducted in compliance with the Commission's regulations, and (3) the issuance of the amendment will not be inimical to the common defense and security or the health and safety of the public.

7.0 ENVIRONMENTAL CONSIDERATION

The subject application is for approval of the transfer of a license issued by the NRC and approval of a conforming amendment. Accordingly, the actions involved meet the eligibility criteria for categorical exclusion set forth in 10 CFR 51.22(c)(21). Pursuant to 10 CFR 51.22(b), no environmental impact statement or environmental assessment need be prepared in connection with approval of the application.

8.0 CONCLUSIONS

The NRC staff has concluded, based on the information and representations contained in the application and on the considerations in the foregoing discussion, that with the appropriate conditions discussed above, Ginna LLC, is qualified to be the license holders for Ginna to the extent requested, and the transfer of the license to Ginna LLC is otherwise consistent with the applicable provisions of law, regulations, and orders issued by the Commission pursuant thereto.

Principal Contributors: B. Moody
M. Dusaniwskyj
R. Pelton

Date: May 28, 2004