No. 04-118C(Senior Judge Margolis)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

ROCHESTER GAS AND ELECTRIC COMPANY,
R.E. GINNA NUCLEAR POWER PLANT, LLC,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

---

DEFENDANT'S MOTION TO CERTIFY FOR INTERLOCUTORY APPEAL
AND TO STAY FURTHER PROCEEDINGS IN THIS CASE

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

Elizabeth Thomas
ELIZABETH THOMAS
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tele: (202) 353-4175
Fax: (202) 307-2503

January 23, 2006

Attorneys for Defendant

**TABLE OF CONTENTS**

**PAGE(S)**

DEFENDANT'S MOTION TO CERTIFY FOR INTERLOCUTORY APPEAL AND TO STAY FURTHER PROCEEDINGS IN THIS CASE .................................. 1

BACKGROUND .................................................................................................... 1

DISCUSSION ........................................................................................................ 5

I. THE GOVERNMENT'S PROPOSED CONTROLLING QUESTION ................ 5

II. THE STANDARD FOR CERTIFICATION OF INTERLOCUTORY APPEAL ........................................................................................ 6

III. THE STANDARDS FOR CERTIFICATION OF AN INTERLOCUTORY APPEAL ARE SATISFIED IN THIS CASE ....................................................... 7

A. "A Controlling Question Of Law" And The "Possible Material Advancement Of The Ultimate Termination Of The Litigation" .............. 7

B. "Substantial Ground For Difference Of Opinion" .................................. 10

1. Whether The NWPA Assignment Provision Permits Assignment Of Pre-Existing Damages Claims ............................................... 10

2. Whether The NWPA Assignment Provision Permits Assignment Of Pre-Existing Damages Claims ............................................... 12

IV. THIS COURT SHOULD STAY FURTHER PROCEEDINGS IN THIS CASE PENDING THE CONCLUSION OF ANY INTERLOCUTORY APPEAL ....... 15

CONCLUSION .................................................................................................... 16

## TABLE OF AUTHORITIES

**CASES** **PAGE(s)**

AD Global Fund, LLC v. United States,
68 Fed. Cl. 663 (2005) .......... 9, 15

Aleut Tribe v. United States,
702 F.2d 1015 (Fed. Cir. 1983) .......... 6

American Tel. & Tel. Co. v. United States,
33 Fed. Cl. 540 (1995) .......... 5, 6, 10

Brown v. United States, 3 Cl. Ct. 409 (1983) .......... 8

Canal Electric Co. v. United States,
No. 04-0035C (Fed. Cl.) .......... 8

Caparco v. United States,
28 Fed. Cl. 736 (1993) .......... 16

Clinton v. Jones,
117 S. Ct. 1636 (1997) .......... 16

Coast Federal Bank v. United States,
49 Fed. Cl. 11 (2001) .......... 16

Colonial Navigation Company v. United States,
149 Ct. Cl. 242 (1960) .......... 13

Consolidated Edison Co. of N.Y. v. United States,
No. 04-0033C (Fed. Cl.) .......... 8

In re Convertible Rowing Exerciser Patent Lit.,
903 F.2d 822 (Fed. Cir.) , cert. denied, 498 U.S. 897 (1990) .......... 5

Delmarva Power & Light Co. v. United States,
Nos. 04-34C (Fed. Cl.) .......... 4, 8

Department of the Army v. Blue Fox, Inc.,
525 U.S. 255 (1999) .......... 12, 15

Entergy Nuclear Indian Point 2, LLC v. United States,
62 Fed. Cl. 798 (2004) .......... 8, 9

## TABLE OF AUTHORITIES
**-continued-**

**CASES** **PAGE(s)**


Ethicon, Inc. v. Quigg,
849 F.2d 1422 (Fed. Cir. 1988) .................................................................... 16

Exelon Generation Company, LLC v. United States,
Nos. 98-621C, 04-102C, 04-103C .................................................................... 4

Favell v. United States, 22 Cl. Ct. 132 (1990) .................................................................... 6

Fireman's Fund Ins. Co. v. England,
313 F.3d 1344 (Fed. Cir. 2002) .................................................................... 13

Ginsberg v. Austin,
968 F.2d 1198 (Fed. Cir. 1992) .................................................................... 13, 14

Isra Fruit Ltd. v. Agrexco Agricultural Export Co.,
804 F.2d 24 (2d Cir. 1986) .................................................................... 5

Landis v. North American Co.,
299 U.S. 248 (1936) .................................................................... 16

Marriott Int'l Resorts v. United States,
63 Fed. Cl. 144 (2004) .................................................................... 8

McDonnell Douglas Corp. v. United States,
27 Fed. Cl. 204 (1992) .................................................................... 10

PSEG Nuclear, LLC v. United States,
No. 01-551 (Fed. Cl.) .................................................................... 4

Pikes Peak Family Housing, LLC v. United States,
40 Fed. Cl. 673 (1998) .................................................................... 8

Rochester Gas & Electric Corp. v. United States,
65 Fed. Cl. 431 (2005) .................................................................... passim

Triax Co. v. United States, 20 Cl. Ct. 507 (1990) .................................................................... 10

Tuftco Corp. v. United States,
222 Ct. Cl. 277 (1980) .................................................................... 13
United States v. Connolly,

716 F.2d 882 (Fed. Cir. 1983), cert. denied, 465 U.S. 1065 (1984) ................................ 5

**STATUTES**

10 C.F.R. § 961.2 ........................................................................................................ 2

10 C.F.R. § 961.11 ................................................................................................ 1, 2

28 U.S.C. § 1292(d)(2) (2005) ................................................................................ 5

28 U.S.C. § 1292(d)(2) (1994) ................................................................................ 6

28 U.S.C. § 1292(d)(2) ............................................................................................ 1

31 U.S.C. § 3727 .................................................................................................... 13

31 U.S.C. § 3727 ................................................................................................ 3, 13

41 U.S.C. § 15 .................................................................................................. 11, 13

41 U.S.C. § 15 ........................................................................................................ 13

42 U.S.C. §§ 10101-10270 ....................................................................................... 1

42 U.S.C. §§ 10131(a)(4), (b)(2), 10222 .................................................................. 1

42 U.S.C. § 10222(b)(3) ......................................................................................... 11

42 U.S.C. § 10222(b)(3) (emphasis added) ........................................................ 2, 11

**MISCELLANEOUS**

16 C. Wright, A. Miller, & E. Cooper, Federal Practice & Procedure § 3930, at 415-16 (2d ed. 1996) ................................................................................................ 7

3 S. Williston, Treatise On The Law Of Contracts § 431, at 175 (3d ed. 1960) ........................ 14

19 J. Moore, Moore's Federal Practice § 203.31[1], at 203-86 (3d ed. 1999) ............................. 7

9 J. Moore, Moore's Federal Practice ¶ 110.22[2] & n.11 (2d ed. 1992) ..................................... 9

Restatement (Second) of Contracts § 326(1) (1981) ........................................................... 11

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

ROCHESTER GAS AND ELECTRIC COMPANY,)
R.E. GINNA NUCLEAR POWER PLANT, LLC, )
Plaintiffs, )
) No. 04-118C
v. ) (Senior Judge Margolis)
)
THE UNITED STATES, )
)
Defendant. )

DEFENDANT'S MOTION TO CERTIFY FOR INTERLOCUTORY APPEAL
AND TO STAY FURTHER PROCEEDINGS IN THIS CASE

Defendant, the United States, respectfully requests that the Court amend its order dated May 12, 2005, to include the finding prescribed by 28 U.S.C. § 1292(d)(2) ("section 1292(d)(2)"), certifying the order for interlocutory appeal. Defendant's Appendix ("DA") 1-12. Further, defendant respectfully requests that the Court stay further proceedings pending the conclusion of any interlocutory appeal.[1]

BACKGROUND

In 1983, Congress enacted the Nuclear Waste Policy Act, 42 U.S.C. §§ 10101-10270 ("NWPA"), establishing the duty of the Federal Government to dispose of spent nuclear fuel ("SNF") and high-level radioactive waste ("HLW") from facilities whose owners entered into contracts with the Department of Energy ("DOE"). See 42 U.S.C. §§ 10131(a)(4), (b)(2), 10222. In furtherance of the NWPA, DOE promulgated a "Standard Contract For Disposal Of Spent

[1] We are aware that, by order dated December 19, 2005, this case was recently reassigned from Judge Lettow, who issued the May 12, 2005 opinion at issue here, to Senior Judge Margolis. The internal review process within the Department of Justice to evaluate the appropriateness of interlocutory appeal here was initiated months ago, well before we knew that this case would be reassigned to another judge, and we are filing this motion soon after receiving authorization from the Solicitor General.

Nuclear Fuel And/Or High Level Radioactive Waste" ("Standard Contract "), published at 10 C.F.R. § 961.11, which establishes the terms under which the Government would "accept title to, transport, and dispose of . . . spent fuel and waste . . . [i]n exchange for . . . fees specified in the contract." 10 C.F.R. § 961.2. The contract, pursuant to the statutory mandate, required DOE to begin SNF acceptance by January 31, 1998. 10 C.F.R. § 961.11, Article II ("Scope").

The NWPA provides that "[t]he rights and duties of a party to a contract entered into under this section may be assignable with transfer of title to the spent nuclear fuel or high-level waste involved." 42 U.S.C. § 10222(b)(3) (emphasis added). Implementing this statutory provision, the Standard Contract states that "[t]he rights and duties of the Purchaser may be assignable with transfer of title to the SNF and/or HLW involved; provided, however, that notice of any such transfer shall be made to DOE within ninety (90) days of transfer." 10 C.F.R. § 961.11, Article XIV ("Assignment").

On June 30, 1983, plaintiff, Rochester Gas and Electric Corporation ("Rochester "), entered into a Standard Contract, Contract No. DE-CR01-83NE44419, with DOE for the acceptance and disposal of its SNF and HLW. DA 13. DOE was unable to begin SNF acceptance by January 31, 1998, and, because of the absence of a Federal repository, still has not begun that acceptance. On January 29, 2004, Rochester filed its complaint in this Court against the Government, seeking damages for DOE's delay. Plaintiff's Complaint.

By letter dated June 24, 2004, Rochester notified DOE, "pursuant to Article XIV of DOE Contract No. DE-CR01-83NE44419 executed between . . . [Rochester] and DOE, that title to all SNF and HLW at or associated with. . . [the nuclear facility] has been transferred to [R.E. Ginna Nuclear Power Plant, LLC ("Ginna")] . . . and that all rights and duties under DOE Contract No. DE-CR01-83NE44419 have been assigned to and assumed by Ginna . . . effective June 10, 2004."

DA 14. The Asset Purchase Agreement between Rochester and Ginna provided that Rochester would remain financially liable for payment of the one-time fee under the Standard Contract when that fee becomes due and owing, and that Ginna would make certain payments to Rochester in the event a monetary recovery from DOE was secured.[2] Rochester Gas & Electric Corp. v. United States, 65 Fed. Cl. 431, 435 (2005).

On July 26, 2004, Rochester filed a "Motion To Substitute Plaintiff and Amend Caption, For Substitution of Counsel, And For Limited Relief From Stay." In the motion, it stated that Ginna assumed not only all of the continuing rights and obligations under the Standard Contract, but also the right to pursue and recover damages from pre-existing claims and that, therefore, Ginna should serve as the single party plaintiff in the lawsuit pursuant to RCFC 25(c). In response, we demonstrated that neither the NWPA nor the Standard Contract overrides the statutory provisions of the Assignment of Claims Act, 31 U.S.C. § 3727, which generally bars assignment of claims against the Government, and that Rochester, therefore, has no basis upon which it can properly assign its pre-existing claims to Ginna. Further, we demonstrated that the NWPA does not permit Rochester to assign only some, not all, rights and duties under its Standard Contract here, with the assignee not assuming the obligation to pay various contract fees. This Court ruled, on May 12, 2005, that the contract claims in the case were properly assigned because the NWPA authorizes the assignment of only a portion of the rights and duties under the Standard Contract, as well as pre-existing damages claims. Rochester, 65 Fed. Cl. at 431.

---

[2] The total principal and interest owed by Rochester for the one-time fee is over $105 million.

The Government is currently in the position of having to defend duplicative claims from assignors and assignees in different suits. In Delmarva Power & Light Co. v. United States, Nos. 04-34C & 04-36C (Fed. Cl.), the plaintiffs, Delmarva Power and Light Company ("Delmarva") and Atlantic City Electric Company ("Atlantic"), filed amended complaints claiming breach of the Standard Contract and a taking of property arising from the delay by DOE in beginning SNF acceptance. Delmarva and Atlantic allege that they are former minority interest owners of nuclear reactors, the majority interests in which were owned by PSEG Nuclear, LLC ("PSEG") and PECO Energy Company ("PECO" or "Exelon"). Yet, in 1999, both Delmarva and Atlantic purported to assign all of their claims arising from the Standard Contract, arising from DOE's failure to accept SNF, and arising out of the plaintiffs' rights, title, and interests in the nuclear reactors identified in their Standard Contracts to PSEG and PECO. Both PSEG and Exelon have filed their own lawsuits in this court, seeking damages for DOE's delay in beginning SNF acceptance, and the Exelon Generation Company, LLC v. United States, Nos. 98-621C, 04-102C, 04-103C, and 04-104C, cases have been resolved amicably. Because the trial court has declined consolidation of the Delmarva case with PSEG Nuclear, LLC v. United States, No. 01-551 (Fed. Cl.), and because the Exelon cases have been resolved, we now run the risk that the Court will award duplicative pre-assignment damages both to assignees (if the trial court follows the rationale of Rochester in other assignee cases) and to assignors (assuming that no party will challenge the non-assignability of claims in the assignor cases).

## DISCUSSION

### I. THE GOVERNMENT'S PROPOSED CONTROLLING QUESTION

Section 1292(d)(2) provides for the appeal of "order[s]," not issues. United States v. Connolly, 716 F.2d 882, 885 (Fed. Cir. 1983), cert. denied, 465 U.S. 1065 (1984). Nevertheless, identification of the controlling issue by the trial court upon which interlocutory appeal will be sought can be of assistance to the appellate court. See, e.g., Isra Fruit Ltd. v. Agrexco Agricultural Export Co., 804 F.2d 24, 25 (2d Cir. 1986) ("it is helpful if the district judge frames the controlling question(s) that the judge believes is presented by the order being certified"); American Tel. & Tel. Co. v. United States, 33 Fed. Cl. 540, 540 (1995) (identifying controlling questions for interlocutory appeal). Once the Court of Federal Claims issues an order, or amended order, containing the statement set forth in 28 U.S.C. § 1292(d)(2), the Federal Circuit acts upon the petition for permission to appeal "in its discretion." 28 U.S.C. § 1292(d)(2) (2005); see In re Convertible Rowing Exerciser Patent Lit., 903 F.2d 822, 822 (Fed. Cir.) (quoting S. Rep. No. 85-2434, at 3-4, reprinted in 1958 U.S.C.C.A.N. 5255), cert. denied, 498 U.S. 897 (1990). Although "the discretion to grant leave to appeal at the circuit level is not limited by any specific criteria," Katz v. Carte Blanche Corp., 496 F.2d 747, 754 (3d Cir.) (en banc), cert. denied, 410 U.S. 855 (1974), the criteria for certification by the Court of Federal Claims established by section 1292(d)(2) provides valuable guidance to the appellate court in deciding whether to grant permission to appeal. Accordingly, we propose the following controlling questions for interlocutory appeal:

1. Whether the Court of Federal Claims correctly held that the assignment provision in the NWPA is sufficiently broad to

permit a nuclear utility to make a partial assignment of its contract; and

2. Whether the Court of Federal Claims correctly held that the contract assignment provision of the NWPA is sufficiently broad to permit a nuclear utility to assign its pre-assignment damages claims.

## II. THE STANDARD FOR CERTIFICATION OF INTERLOCUTORY APPEAL

Certification of an otherwise interlocutory decision is appropriate when the Court finds "that a controlling question of law is involved with respect to which there is a substantial ground for difference of opinion and that an immediate appeal from that order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(d)(2) (1994); see Aleut Tribe v. United States, 702 F.2d 1015, 1019 (Fed. Cir. 1983). This Court has recognized three criteria for certification of an interlocutory appeal:

> To qualify as appropriate for certification, the order must involve:
>
> (1) a controlling question of law; as to which there is
>
> (2) substantial ground for difference of opinion; and that
>
> (3) possible material advancement of the ultimate termination of the litigation will occur if the certification order is issued.

Favell v. United States, 22 Cl. Ct. 132, 143 (1990).

However, "[t]he three-prong test set forth in 28 U.S.C. § 1292(d)(2) is designed to weigh the relative benefits of an immediate appeal; thus the 'three factors should be viewed together as the statutory language equivalent of a direction to consider the probable gains and losses of immediate appeal.'" American Tel. & Tel. Co. v. United States, 33 Fed. Cl. 540, 541 (1995); see 19 J. Moore, Moore's Federal Practice § 203.31[1], at 203-86 (3d ed. 1999) ("in practice the courts treat the statutory criteria as a unitary requirement"); 16 C. Wright, A. Miller, & E. Cooper,

Federal Practice & Procedure § 3930, at 415-16 (2d ed. 1996). "The difficulty and general importance of the question presented, the probability of reversal, the significance of the gains from reversal, and the hardship on the parties in their particular circumstances, could all be considered." 16 C. Wright, A. Miller, & E. Cooper, supra, § 3930, at 442. "[A] narrow approach to the 'controlling question' and 'materially advance' elements can defeat this desirable level of flexibility." Id. In this case, it is clear that, whether the three factors identified above are viewed as separate and independent prongs or are viewed together as a unitary requirement, interlocutory appeal of the Court's May 12, 2005 order finding that Article XIV of the Standard Contract, which implements section 302(b)(3) of the NWPA, 42 U.S.C. § 10222(b)(3), allows partial assignments of spent nuclear fuel ("SNF") disposal contracts and that the NWPA permits assignments of pre-existing damages claims arising out of the Standard Contract is warranted.

## III. THE STANDARDS FOR CERTIFICATION OF AN INTERLOCUTORY APPEAL ARE SATISFIED IN THIS CASE

### A. "A Controlling Question Of Law" And The "Possible Material Advancement Of The Ultimate Termination Of The Litigation"

The Court's findings in its May 12, 2005 order that Article XIV of the Standard Contract, which implements section 302(b)93) of the NWPA, 42 U.S.C. § 10222(b)(3), allows partial assignments of spent nuclear fuel ("SNF") disposal contracts and that the NWPA permits assignments of pre-existing damages claims arising out of the Standard Contract plainly involve "controlling question[s] of law," and certification would result in the "material advancement of the ultimate termination of the litigation."[3] Questions of law are "'controlling' when they

---

[3] "Some courts and commentators have taken the position that 'the 'controlling question' requirement [should be read as identical to] the requirement that its determination may materially advance the ultimate termination of the litigation.'" Brown v. United States, 3 Cl. Ct. 409, 412 n.3 (1983)(citations omitted).

'materially affect issues remaining to be decided in the trial court.'" Marriott Int'l Resorts v. United States, 63 Fed. Cl. 144, 145 (2004) (citing Pikes Peak Family Housing, LLC v. United States, 40 Fed. Cl. 673, 686 (1998)).

Here, this requirement is easily satisfied. Issues regarding the validity of partial contract assignments pursuant to the NWPA are present not only in this case, but in several other spent nuclear fuel cases pending before this Court. As previously discussed, the Government is facing damages claims both from former contract holders that have assigned portions of or all of their contracts and/or pre-assignment damages claims. In some cases, such as the Delmarva case previously discussed and Canal Electric Co. v. United States, No. 04-0035C (Fed. Cl.), entities that have purported to assign all of their contract and damages claims to another entity are, despite the assignment, suing the Government to recover incurred damages, assuming the invalidity of the assignment. At the same time, the assignees of those contracts and damages claims are also suing the Government, assuming the validity of the assignments and seeking recovery of the same and potentially additional costs under inconsistent damages theories. Yet, in at least one instance, this Court has declined to consolidate cases involving the assignor and assignee of the same contracts and damages claims. See Entergy Nuclear Indian Point 2, LLC v. United States, 62 Fed. Cl. 798, 803 (2004) (denying motion to consolidate assignee's case (Entergy) with assignor's case (ConEd)); Order, Consolidated Edison Co. of N.Y. v. United States, No. 04-0033C (Fed. Cl. Nov. 2, 2005) (denying renewed motion to consolidate ConEd and Entergy Indian Point 2). Without a uniform resolution of the validity of these assignments, the Government faces the substantial risk that it will face duplicative and inconsistent damages awards to different SNF plaintiffs and may pay duplicative judgments to multiple plaintiffs. This result would simply be inequitable.

Moreover, "[t]he opportunity to achieve appellate resolution of an issue important to other cases may provide an additional reason for certification. . . ." 16 C. Wright, A. Miller, & E. Cooper, supra, § 3930, at 425. One of the significant issues in several of these cases, which will substantially affect the amount of compensation to which these plaintiffs may be entitled, will be an interpretation of the assignment language of the NWPA. "Issues of statutory interpretation often involve issues of law that are appropriate for certification." AD Global Fund, LLC v. United States, 68 Fed. Cl. 663, 2005 WL 2995361, at *2 (Fed. Cl. Nov. 8, 2005) (citing 9 J. Moore, Moore's Federal Practice ¶ 110.22[2] & n.11 (2d ed. 1992)). This Court's decision here potentially creates a situation in which multiple partial contract holders all claim various rights under a single contract for which there is a single utility signatory. Therefore, the Court's decision materially affects the issue of which plaintiff is entitled to which rights under the Standard Contract. The order also materially affects the issue of DOE's performance obligation under the Standard Contract because DOE's obligations are arguably altered by the division of these contract rights. At the very least, multiple partial contract holders make it difficult for DOE to determine the proper division of rights in meeting its own performance obligations. At the trial level, we may have to try, and re-try, this issue of interpretation of the assignment language of the NWPA in many of the cases filed, with potentially different results in each case. Much can be gained through the appellate court's resolution of the controlling questions in the case on an interlocutory basis, rather than at the conclusion of what could otherwise prove a protracted series of lawsuits. American Tel. & Tel. Co., 33 Fed. Cl. at 541 ("This court has considered the burdens and benefits attendant to the allowance of an immediate appeal and is of the view that much can be gained by having the court of appeals address the controlling questions in the case on an interlocutory basis rather than at the conclusion of what could otherwise prove to be a much

protracted lawsuit."). As a result, interlocutory appeal to obtain definitive guidance from the appellate court that would constitute binding precedent in all of the SNF cases would be extremely helpful. Triax Co. v. United States, 20 Cl. Ct. 507, 514 (1990) (granting section 1292 motion based upon finding that large number of cases before the Court and agency boards would be affected by the Court's order).

B. "Substantial Ground For Difference Of Opinion"

1. Whether The NWPA Assignment Provision Permits Assignment Of Pre-Existing Damages Claims

This case also satisfies the "substantial ground for difference of opinion" prong of section 1292(d)(2). Substantial ground exists if there is "an absence of controlling judicial authority on an issue." McDonnell Douglas Corp. v. United States, 27 Fed. Cl. 204, 205 (1992). This Court noted in its May 12, 2005 order that "[t]his case presents an apparent issue of first impression" as to whether Article XIV of the Standard Contract, which implements section 302(b)(3) of the NWPA, 42 U.S.C. § 10222(b)(3), allows partial assignments of spent nuclear fuel ("SNF") disposal contracts and as to whether the NWPA permits assignments of pre-existing damages claims arising out of the Standard Contract. Rochester, 65 Fed. Cl. at 431.

Generally, the Assignment of Contracts Act ("Contracts Act"), 41 U.S.C. § 15, bars the assignment of contracts with the Government absent the Government's consent. 41 U.S.C. § 15. However, section 302(b)(3) of the NWPA creates an exception to that statutory prohibition, providing that "[t]he rights and duties of a party to a contract entered into under this section may be assignable with transfer of title to the spent nuclear fuel and/or high-level radioactive waste." 42 U.S.C. § 10222(b)(3). In this case, Rochester purported to assign its contract to Ginna, but retained the obligation to pay a $105 million contractual fee to the Government. This Court

rejected our demonstration that the assignment provision of the NWPA allows only complete and total assignments of SNF disposal contracts, not partial assignments. The Court reasoned that "the plain meaning . . . [of the NWPA] lends itself to partial assignments, which interpretation gives effect to the language of 'the rights and duties' (as contrasted to 'the contract') and 'may be assignable' (as contrasted to 'must be assigned')." Rochester, 65 Fed. Cl. at 438.

Although the Restatement (Second) of Contracts indicates that, outside the context of the NWPA and the Contracts Act, "an assignment of a part of a right . . . is operative as to that part to the same extent and in the same manner as if the part had been a separate right," Restatement (Second) of Contracts § 326(1) (1981), that rule does not encompass the limitations imposed by the Contracts Act. Under that Act, assignments of contracts are specifically prohibited, absent permission of the Government. Although the NWPA creates a limited exception to that rule, providing that the "rights and duties of a party to a contract . . . may be assignable . . .," 42 U.S.C. § 10222(b)(3) (emphasis added), the statutory language does not permit only "part of the rights and duties" to be assigned to a third party. Further, the NWPA only permits the Government to contract with the owner or generator of SNF, 42 U.S.C. § 10222, yet this Court's decision eliminates the need for every contracting party to be a current owner or generator of SNF. In addition, this Court's decision creates a situation in which a single contract could be partially assigned on several occasions creating multiple partial contract holders, all claiming various rights under a single contract for which there is a single utility signatory.

This Court concluded that the specific reference to "rights and duties" in the statutory language contemplated the permissibility of partial assignments. Rochester, 65 Fed. Cl. at 438. However, a waiver of sovereign immunity must "be strictly construed" in its scope in favor of the sovereign and "unequivocally expressed" in statutory text. Department of the Army v. Blue Fox,

Inc., 525 U.S. 255, 261 (1999). Because the text of the NWPA "does use the specific article 'the,' which might be deemed to refer to all rights and duties such that if any are assigned, all have to be assigned," Rochester, 65 Fed. Cl. at 438, we believe that Rochester's assignment of only a part of its contract and its retention of some of the duties of the Standard Contract does not constitute a valid contract assignment under the NWPA. Under this Court's theory, a single contract holder can ultimately divide a single contract (through multiple partial assignments) into multiple vaguely subdivided contracts with multiple contract holders, rendering the division of rights and obligations to and among these partial contract holders ill-defined and creating difficulties for the Department of Energy in determining the division of these rights in meeting its own performance obligations.

2. Whether The NWPA Assignment Provision Permits Assignment Of Pre-Existing Damages Claims

This Court also rejected our demonstration that section 302(b)(3) of the NWPA does not permit assignments of pre-existing damages claims arising out of the Standard Contract. The Court reasoned that "[s]ection 302(b)(3) refers generally to the rights and duties of a party to the Standard Contract in authorizing those rights and duties to be assignable with transfer of title to SNF and/or HLW," and "one of the 'rights' that a party has in a contract with the [G]overnment is to bring a suit for breach of contract." Rochester, 65 Fed. Cl. at 440 (citations omitted).

Historically, however, Congress has differentiated between the assignment of contracts and the assignment of claims. Assignments of claims found to violate the Assignment of Claims Act, 31 U.S.C. § 3727, are invalid, returning the parties to the status quo ante. Colonial Navigation Company v. United States, 149 Ct. Cl. 242, 245, 181 F. Supp. 237, 240 (1960); see Fireman's Fund Ins. Co. v. England, 313 F.3d 1344, 1349 (Fed. Cir. 2002). Under the

Assignment of Contracts Act, 41 U.S.C. § 15, wrongful assignments of contracts are not only invalid, but may result in annulment of the contract by the Government. Tuftco Corp. v. United States, 222 Ct. Cl. 277, 284 n.5, 614 F.2d 740, 744 n.5 (1980). Another important conceptual difference between these two statutes is that 31 U.S.C. § 3727, which expressly concerns claims, "pertains to claims for work already done," whereas 41 U.S.C. § 15, which pertains to "executory contracts, is more concerned with continuing obligations." Tuftco Corp., 222 Ct. Cl. at 284 n.4, 614 F.2d at 744 n.4 (emphasis added). The fact that Congress passed one statute regarding the assignment of contracts and another statute regarding the assignment of claims is deliberate and reveals that such assignments are to be viewed and treated differently.

The United States Court of Appeals for the Federal Circuit appears to draw the same distinction. In Ginsberg v. Austin, 968 F.2d 1198 (Fed. Cir. 1992), the Federal Circuit determined that pre-existing claims are not automatically transferred with the assignment of an executory continuing contract. The case involved the issue of whether rights to back rent (a pre-existing claim) was presumed transferred, if not expressly reserved, when a lease contract was assigned. Ginsberg v. Austin, 968 F.2d 1198, 1200 (Fed. Cir. 1992). Because the Federal Circuit could not find any Federal law dispositive of the issue, the appellate court analyzed "general property and contract law principles as they . . . [were] embodied in state law pronouncements." Id. (citations omitted). As a matter of property law, the state courts uniformly have held that rents when due and owing become personal property and that the "transfer of . . . real estate subject to the lease does not carry with it any right to accrued rents then unpaid. These belong to the person who was the landlord at the time of their accrual and not to the grantee, unless assigned to him." Id. at 1201 (citations omitted). The Federal Circuit determined that, on the subject of assignments, the law of contracts was consistent with property law. Id. It recognized that various

authorities agree that "the assignment of rights under a continuing contract does not imply an assignment of rights of action for previous breaches of the contract . . .." Id. (emphasis added) (quoting 3 S. Williston, Treatise On The Law Of Contracts § 431, at 175 (3d ed. 1960)). Consequently, the appellate court held that, in light of the uniform and longstanding legal authority, as a matter of Federal law, a back rent claim (that is, a pre-existing claim) was not transferred with the assignment of the continuing contract and that pre-existing claims were separate from the assignment of the contract itself.

Although this Court found that our demonstration does not take into consideration that the common law contract principle cited in Ginsberg only applies in the absence of an agreement to the contrary, Rochester, 65 Fed. Cl. at 441, this case is analogous to Ginsberg v. Austin because assignments of claims were not expressly included within the assignment provision of the Standard Contract, as evidenced by the assignment language in the NWPA. This Court reasoned that the text of section 302(b)(3) "contains no exceptions to its grant of permission for assignments, and thus it does not bar pre-existing claims from being assigned." Rochester, 65 Fed. Cl. at 441. However, our position that the Government has waived sovereign immunity for claims by assignees that arise **after** assignment of the Standard Contract, but not for claims that pre-existed the contract assignment, is a reasonable interpretation of section 302(b)(3) of the NWPA and Article XIV of the Standard Contract because a waiver of sovereign immunity must "be strictly construed" in its scope in favor of the sovereign and "unequivocally expressed" in statutory text. See Department of the Army v. Blue Fox, Inc., 525 U.S. 255, 261 (1999). This Court's broad interpretation of the Standard Contract's assignment language does not properly consider the assignment provision of the NWPA, congressional enactment of separate assignment acts, and the Federal Circuit's ruling that claims that pre-date a contract assignment are distinct

from the rights that accompany an assignment of the contract. At a very least, a substantial ground for difference of opinion exists on this issue. Different, but plausible, interpretations of statutory language should be considered a substantial ground for a difference of opinion. AD Global Fund, LLC, 68 Fed. Cl. 663, 2005 WL 2995361, at *2. For these reasons, we respectfully request that the Court amend its May 12, 2005 order to include the certification language contained in section 1292(d)(2).

## IV. THIS COURT SHOULD STAY FURTHER PROCEEDINGS IN THIS CASE PENDING THE CONCLUSION OF ANY INTERLOCUTORY APPEAL

We further request that, during the pendency of any interlocutory appeal, the Court stay further proceedings in this case. "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. North American Co., 299 U.S. 248, 254 (1936); see Clinton v. Jones, 117 S. Ct. 1636, 1650 (1997) ("District Court has broad discretion to stay proceedings"). This power includes the power to stay proceedings to await the disposition of matters relevant to the case at hand that are being litigated and evaluated in another proceeding or forum. Landis, 299 U.S. at 254; Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988); Caparco v. United States, 28 Fed. Cl. 736, 737-38 (1993).

Section 1292 does not require a stay of trial court proceedings pending the resolution of an interlocutory appeal. Coast Federal Bank v. United States, 49 Fed. Cl. 11, 15 (2001). “In deciding whether to stay proceedings in this situation, the court considers whether ‘the . . . order appealed from, if vacated, would vitiate the [ ] proceedings’ below.” Id. (citation omitted). As explained above, the statutory interpretation issue directly affects the possible award of damages. “Trying the case under one set of assumptions, then retrying it under a different set of

assumptions due to reversal on appeal, would be inconsistent with judicial economy." Id. In light of the potential difficulties that will have to be addressed regarding the possible award of duplicative damages, an interpretation of the division of rights between assignors and assignees pursuant to the assignment language of the NWPA, and DOE's resultant performance obligations under the Standard Contract, a stay of further proceedings pending resolution of the statutory interpretation issue in this case is warranted.

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court amend its order dated May 12, 2005, to include the following language:

> The Court finds that controlling questions of law are involved with respect to which there are substantial grounds for difference of opinion and an immediate appeal from the order may materially advance the ultimate termination of the litigation.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/ Elizabeth Thomas
ELIZABETH THOMAS
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tele: (202) 353-4175
Fax: (202) 307-2503

January 23, 2006

Attorneys for Defendant

**INDEX TO APPENDIX**

Court Order, dated May 12, 2005 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Excerpt from Standard Contract Between Rochester and DOE . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Letter from Rochester, dated June 24, 2004 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**CERTIFICATE OF FILING**

I hereby certify that on this 23rd day of January 2006, a copy of foregoing "**DEFENDANTS MOTION TO CERTIFY FOR INTERLOCUTORY APPEAL AND TO STAY FURTHER PROCEEDINGS IN THIS CASE**" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Elizabeth Thomas