# Defendant's Appendix

United States Court of Federal Claims.
ROCHESTER GAS AND ELECTRIC CORPORATION, Plaintiff,
v.
UNITED STATES, Defendant.
No. 04-118-C.

May 12, 2005.

Background: Utility which operated nuclear power plant brought suit against the United States seeking monetary damages for a partial breach of Standard Contract for dispose of spent nuclear fuel (SNF) and high-level radioactive waste (HLW), breach of the implied covenants of good faith and fair dealing, and an uncompensated taking. After suit was filed, plaintiff sold plant, and filed joint motion with buyer to substitute buyer as plaintiff.

Holdings: The Court of Federal Claims, Lettow, J., held that:

(1) Nuclear Waste Policy Act (NWPA) permits assignments of Standard Contracts for the disposal of spent nuclear fuel (SNF), notwithstanding the provisions of the Assignment of Contracts Act generally prohibiting the assignment of government contracts;

(2) asset purchase agreement for sale of nuclear plant effected a partial assignment of rights and duties under Standard Contract (HLW), which was permissible under NWPA and the Standard Contract;

(3) NWPA permits the assignment of pre-existing claims for damages for government's breach of Standard Contract, superseding the Assignment of Claims Act's general prohibition of assignment of claims against the United States;

(4) seller could not assign takings claim arising out of government's pre-sale failure to dispose of spent nuclear fuel (SNF) to buyer; and

(5) permissive joinder of claims of seller and buyer, rather than substitution of buyer as plaintiff, was appropriate.

Motion for joinder granted.

West Headnotes

[1] United States 🔑71
393k71
Nuclear Waste Policy Act (NWPA) permits assignments of Standard Contracts for the disposal of spent nuclear fuel (SNF) and high-level radioactive waste (HLW), notwithstanding the provisions of the Assignment of Contracts Act generally prohibiting the assignment of government contracts. 41 U.S.C.A. § 15(a); Nuclear Waste Policy Act of 1982, § 302(b)(3), as amended, 42 U.S.C.A. § 10222(b)(3).

[2] United States 🔑111(10)
393k111(10)
Section of the Nuclear Waste Policy Act (NWPA) expressly authorizing the assignment of rights and duties under Standard Contracts for the disposal of spent nuclear fuel (SNF) and high-level radioactive waste (HLW) permits partial assignments. Nuclear Waste Policy Act of 1982, § 302(b)(3), as amended, 42 U.S.C.A. § 10222(b)(3).

[3] United States 🔑71
393k71
Assignor and assignee satisfied statutory and contractual requirements for assigning a Standard Contract for the disposal of spent nuclear fuel (SNF) and high-level radioactive waste (HLW), where transfer of rights and duties under the Standard Contract coincided with the transfer of title to SNF and HLW to assignee, and assignor gave notice of the assignment to the Department of Energy (DOE) within ninety days of the sale of nuclear plant which gave rise to assignment. Nuclear Waste Policy Act of 1982, § 302(b)(3), as amended, 42 U.S.C.A. § 10222(b)(3).

[4] United States 🔑71
393k71
Asset purchase agreement for sale of nuclear plant effected a partial assignment of rights and duties under Standard Contract for the disposal of spent nuclear fuel (SNF) and high-level radioactive waste (HLW), permissible under the Nuclear Waste Policy Act (NWPA) and the Standard Contract, where seller retained some rights and duties that were treated as excluded assets and excluded liabilities under the asset purchase agreement, most notably the obligation to pay the one-time disposal fee, while others were transferred as purchased assets and assumed liabilities. Nuclear Waste Policy Act of 1982, § 302(b)(3), as amended, 42 U.S.C.A. § 10222(b)(3).

[5] United States 🔑111(10)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

393k111(10)
Section of the Nuclear Waste Policy Act (NWPA) expressly authorizing the assignment of rights and duties under Standard Contracts for the disposal of spent nuclear fuel (SNF) and high-level radioactive waste (HLW) permits the assignment of pre-existing claims for damages for government's breach of Standard Contract, superseding the Assignment of Claims Act's general prohibition of assignment of claims against the United States. 31 U.S.C.A. § 3727; Nuclear Waste Policy Act of 1982, § 302(b)(3), as amended, 42 U.S.C.A. § 10222(b)(3).

[6] United States ⚿111(4)
393k111(4)
Seller of nuclear power plant could not assign takings claim arising out of government's pre-sale failure to dispose of spent nuclear fuel (SNF) to buyer of plant, as alleged taking took place before seller's ownership of the property right was transferred to buyer.

[7] United States ⚿111(3)
393k111(3)
An assignment of proceeds from a lawsuit against the government is a permissible transaction under the Assignment of Claims Act, so long as the assignee does not thereby obtain a claim against the United States. 31 U.S.C.A. § 3727.

[8] Federal Courts ⚿1110
170Bk1110
Where seller and buyer of nuclear power plant both had claims against the government arising from its failure to dispose of spent nuclear fuel (SNF), permissive joinder of claims, rather than substitution of buyer as plaintiff, was appropriate in seller's breach of contract and takings suit against the government. RCFC, Rules 20(a), 25(c), 28 U.S.C.A.

***432** M. Stanford Blanton, Balch & Bingham LLP, Birmingham, AL, for plaintiff. Of counsel were Edward R. Haden and K.C. Hairston, Balch & Bingham LLP, Birmingham, AL.

Brad Fagg, Morgan, Lewis & Bockius LLP, Washington, D.C., for proffered substituted party. With him at the hearing were Paul Bessette, Morgan, Lewis & Bockius LLP, Washington, D.C., and Kerrie Fleming, Constellation Energy Group.

Elizabeth Thomas, Commercial Litigation Branch, Civil Division, United States Department of Justice, for defendant. With her on the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Harold D. Lester, Jr., Assistant Director. With her at the hearing was Joshua Gardner.

*OPINION AND ORDER*

LETTOW, Judge.

This case presents an apparent issue of first impression concerning the Assignment of Contracts Act, 41 U.S.C. § 15, and the Assignment of Claims Act, 31 U.S.C. § 3727. In its simplest terms, the question posed is whether a specific provision in the Nuclear Waste Policy Act of 1982 ("NWPA"), Pub.L. No. 97-425, 96 Stat. 2202 (Jan. 7, 1983) (codified as amended at 42 U.S.C. §§ 10101-10270 ), supersedes the proscriptions and limitations set out in the otherwise generally applicable Assignment of Contracts Act and Assignment of Claims Act. That question is answered affirmatively, for the reasons set out below.

BACKGROUND

Plaintiff, Rochester Gas & Electric Corporation ("Rochester Gas"), signed a "Standard Contract" that addressed disposal of spent nuclear fuel ("SNF") and high-level radioactive waste ("HLW") derived from the R.E. Ginna Nuclear Power Plant ("Ginna plant"). In exchange for payment of a one-time fee and continuing fees, the Department of Energy ("DOE") would begin to dispose of SNF from the plant no later than January 31, 1998. As allowed under the Standard Contract, Rochester Gas elected to delay payment ***433** of the one-time fee until a later date prior to the commencement of delivery of SNF. Rochester Gas paid in full all continuing fees it owed under the Contract. In this case, as in each of the more than 60 other indirectly-related cases brought in this court by utilities and others who are parties to a Standard Contract, DOE failed to begin disposing of SNF by January 31, 1998. Based upon that failure, on January 24, 2004, Rochester Gas sued the government, seeking monetary damages for a partial breach of contract, breach of the implied covenants of good faith and fair dealing, and an uncompensated taking.

After filing this suit, Rochester Gas sold the Ginna plant to R.E. Ginna Nuclear Power Plant, LLC ("Ginna LLC"), an indirect, wholly-owned

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

subsidiary of Constellation Energy Group, Inc. ("Constellation"). As a result of the sale, Rochester Gas and Ginna LLC wanted Ginna LLC to take control of this suit. To that end, Rochester Gas and Ginna LLC filed a motion to substitute Ginna LLC for Rochester Gas as the plaintiff in the complaint, to amend the caption to reflect such substitution, and to substitute counsel of record for Ginna LLC for counsel of record for Rochester Gas. The government opposes this motion. According to the government, the asset purchase agreement between Rochester Gas and Ginna LLC assigned only a portion of the Standard Contract to Ginna LLC because Rochester Gas is still responsible for the one-time fee. As the government would have it, such a partial assignment is a nullity because the Assignment of Contracts Act, 41 U.S.C. § 15, and an assignment provision in the NWPA permit only a total and complete assignment of the contract at issue here. In addition, the government argues that the Assignment of Claims Act, 31 U.S.C. § 3727, remains applicable notwithstanding the provisions of the NWPA, and Ginna LLC cannot pursue claims accruing prior to its purchase of the Ginna plant without violating that Act. Ginna LLC responds that it is responsible to DOE for the one-time fee and that Rochester Gas's liability to it for that fee should be of no concern to the government. Moreover, Ginna LLC argues that even if its purchase agreement with Rochester Gas includes a partial assignment of the contract, not a full assignment, such partial assignments are permissible under the NWPA. It also contends that the assignment provision in the NWPA supersedes the Assignment of Claims Act, and, in the alternative, that the government's receipt and acceptance without objection of post-assignment continuing-fee payments from Ginna LLC constitutes a waiver of the Assignment of Claims Act. [FN1]

FN1. This case was reassigned randomly to the undersigned judge on December 9, 2004, and the court held a hearing to address the motion to substitute on February 8, 2005. The court subsequently requested that the parties file a joint compendium of documentary materials related to the case, which compendium was submitted by the parties on March 10, 2005 ("Joint Appendix" or "J.A.").

*A. The NWPA*

On January 7, 1983, the NWPA was enacted, authorizing the Secretary of DOE to "enter into contracts with any person who generates or holds title to high-level radioactive waste, or spent nuclear fuel, of domestic origin for the acceptance of title, subsequent transportation, and disposal of such waste or spent fuel." 42 U.S.C. § 10222(a)(1). Contracting utilities were required to pay a one-time fee based on electricity generated and sold prior to April 7, 1983, and continuing fees based on the electricity generated after that date. *Id.* § 10222(a)(2)-(3). Section 302(b)(3) of the NWPA also expressly permits assignments, providing that "[t]he rights and duties of a party to a contract entered into under this section may be assignable with transfer of title to the spent nuclear fuel or high-level radioactive waste involved." *Id.* § 10222(b)(3).

*B. The Standard Contract*

After notice and a comment period, DOE promulgated a Standard Contract for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste, codified at 10 C.F.R. § 961.11. *See* 48 Fed.Reg. 5,458 (Feb. 4, 1983). The Standard Contract permitted utilities to choose from three options for payment of the one-time fee, and utilities were required to make an election from among these options within two years of signing the Standard Contract. Standard ***434** Contract, art. VIII.B.2. Utilities could opt (1) to prorate the fee evenly over forty quarters with interest accruing on the unpaid portion, (2) to defer the fee with interest, or (3) to pay the fee in full by June 30, 1985 without interest. The deferral option provided that:

> (b) Option 2--The [utility's] financial obligation shall be paid in the form of a single payment anytime prior to the first delivery, as reflected in the DOE approved delivery commitment schedule, and shall consist of the fee plus interest on the outstanding fee balance. Interest is to be calculated from April 7, 1983, to the date of the payment based upon the 13-week Treasury bill rate, as reported on the first such issuance following April 7, 1983, and compounded quarterly thereafter by the 13-week Treasury bill rates as reported on the first such issuance of each succeeding assigned three-month period until payment.

*Id.* In addition, the Standard Contract, in accord with Section 302(b)(3) of the NWPA, provided for assignment: "The rights and duties of the [utility] may be assignable with transfer of title to the SNF and/or HLW involved; provided, however, that notice of any such transfer shall be made to DOE within ninety (90) days of transfer." *Id.*, art. XIV.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

[FN2]

FN2. The assignment provision of the Standard Contract for the Ginna plant is identical to Article XIV of the form Standard Contract, except that the former emphasizes the words "provided, however." *Compare* Standard Contract, art. XIV, *with* Def.'s App. 2. This opinion refers to these versions of the Standard Contract interchangeably.

*C. R.E. Ginna Nuclear Power Plant*

Rochester Gas executed its Standard Contract with DOE for the Ginna plant on June 30, 1983. Def.'s App. 1 (Standard Contract for the Ginna plant). It elected to defer payment of the one-time fee. Reply in Support of Motion to Substitute Plaintiff and Amend Caption ("Pl.'s Reply") at 2. The principal of the one-time fee amounted to $33,134,126.60, and, as of June 30, 2004, the total amount owed (principal and interest) was $104,579,988.40. Def.'s App. 6 (Consolidated Accounting and Investment System Report). To the court's knowledge, the continuing fees owed to date have been paid in full. [FN3]

FN3. In addition to the continuing fees paid by Rochester Gas prior to the sale, Ginna LLC allegedly paid $2,271,666 in continuing fees between the date of the sale and December 31, 2004. *See* Joint Submission transmitting Joint Appendix ¶ 8.

On November 24, 2003, Rochester Gas and Ginna LLC reached an agreement for the sale of the Ginna plant. Prior to effectuating the sale, they sought and received the necessary regulatory approvals. Hr'g Tr. at 7. On May 28, 2004, the Nuclear Regulatory Commission approved the sale of the Ginna plant in accordance with 10 C.F.R. §§ 50.80 and 50.90. J.A., Ex. 3, at 1. The New York Public Service Commission approved the sale on May 20, 2004, J.A., Ex. 4, at 1, and the Federal Energy Regulatory Commission authorized the transaction on May 24, 2004. J.A., Ex. 5, at 1. As the closing date approached, Rochester Gas sent a preliminary notice of the purchase to DOE. This notice stated that title to all SNF and HLW at the Ginna plant would be transferred to Ginna LLC, and "all rights and duties under [the Ginna plant's Standard Contract] will be assigned to and assumed by [Ginna LLC]." J.A., Ex. 6.

On June 10, 2004, Rochester Gas sold the Ginna plant to Ginna LLC. The agreement divided the pertinent assets and liabilities into "purchased assets," "excluded assets," "assumed liabilities and obligations," and "excluded liabilities." The "purchased assets" that Ginna LLC received as a result of the deal included the right to pursue "damages incurred prior to, on or after [June 10, 2004]" relating to this litigation, subject to Ginna LLC's satisfaction of an indemnification agreement and an agreement to share the proceeds of the litigation with Rochester Gas. J.A., Ex. 1, at 22 (Asset Purchase Agreement § 2.1(p)). Ginna LLC also assumed all liabilities "arising on or after the Closing Date under ... the Standard Spent Fuel Disposal Contract." *Id.* at 24 (Asset Purchase Agreement § 2.3(a)). One of the "excluded assets" ***435** which Rochester Gas reserved the right to pursue was "[a]ny cause of action or claim for damages or other rights that relate to the One-Time DOE Pre-1983 Fee." *Id.* at 24 (Asset Purchase Agreement § 2.2(k)). Rochester Gas also remained liable for "[a]ll Spent Nuclear Fuel Fees and any other fees associated with electricity generated at Ginna and sold on or prior to the Closing Date, including, but not limited to, the obligation to the Department of Energy under [the Standard Contract] to make the deferred payment of the One-Time DOE pre-1983 Fee." *Id.* at 29 (Asset Purchase Agreement § 2.4(*l*)).

The purchase agreement directly addressed the present litigation. Section 6.13(a) specifies that Rochester Gas "will remain liable for ... the One-Time DOE Pre-1983 Fee, and [Ginna LLC] shall have no Liability or responsibility therefore." J.A., Ex. 1, at 75. Otherwise, Rochester Gas assigned to Ginna LLC "its undivided right, title and interest in and to the [Standard Contract], including, without limitation, any and all damage claims arising under such contract subject to Sections 2.1(p), 2.2(k), 6.13(b), and 6.13(d) hereof concerning the rights of [Ginna LLC] with respect to the One-Time DOE Pre-1983 Fee." *Id.* at 76. Section 6.13(b) calls for Ginna LLC to take control of this litigation, but further states that Ginna LLC shall pay Rochester Gas a portion of any damages that are awarded:

> [I]n the event that [Ginna LLC] shall recover any form of monetary relief (including but not limited to monetary damages or relief which is reasonably calculable from economic obligations, as a direct or indirect result of [this litigation) Ginna LLC] shall pay to [Rochester Gas] an amount equal to the amount of the economic value received by [Ginna LLC] as a result of such litigation up to a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

maximum payment to [Rochester Gas] of Ten Million Dollars ($10,000,000).
*Id.* at 76. [FN4]

FN4. In other respects, the agreement called for Rochester Gas to pay for and control litigation related to excluded liabilities and for Ginna LLC to pay for and control litigation related to assumed liabilities and obligations. J.A., Ex. 1, at 29 (Asset Purchase Agreement § 2.5).

In addition, Rochester Gas "agree[d] to cause the One-Time DOE Pre-1983 Fee to be duly paid when due, subject to any rights to which [Rochester Gas] may be entitled by reason of the Department of Energy's defaults (or alleged defaults) under the Standard [Contract]." J.A., Ex. 1, at 76 (Asset Purchase Agreement § 6.13(d)). The Asset Purchase Agreement gave Rochester Gas the option of providing a guaranty from its parent company, a standby letter of credit from a banking or other financial institution, or some comparable assurance of payment of the one-time fee. *Id.* at 4-5 (Asset Purchase Agreement § 1.1(40)). Rochester Gas opted to secure a letter of credit, which expires on May 29, 2007 and guarantees payment of $109 million. Pl.'s App. 13 (Letter from Joseph Chesakis, Vice President, Citibank, N.A., to Ginna plant (June 10, 2004)). Counsel for Ginna LLC assured the court that either this letter of credit will be renewed or the one-time fee will be paid to DOE on that date. Hr'g Tr. at 23.

On June 24, 2004, Rochester Gas sent its formal notice of the assignment to DOE in accord with article XIV of the Standard Contract, quoted *supra,* at 3. This letter repeated the language of the preliminary notice and affirmed that Ginna LLC assumed "all rights and duties" under the Standard Contract effective June 10, 2004. Def.'s App. 3 (Letter from Joseph J. Syta, Controller and Treasurer, Rochester Gas, and Michael J. Wallace, President, Constellation, to David Zabransky, Contracting Officer, DOE (June 24, 2004)).

*D. The Instant Motion*

On July 26, 2004, approximately six months after the suit was filed and a month and one-half after the sale of the plant to Ginna LLC, Rochester Gas filed its motion to substitute Ginna LLC as plaintiff pursuant to Rule 25(c) of the Rules of the Court of Federal Claims ("RCFC"), to amend the caption to reflect such substitution, and to substitute counsel for Ginna LLC as counsel of record in this case. As previously noted, the government opposes the motion to substitute plaintiff based upon its interpretation of the Assignment of Contracts Act, the Assignment ***436** of Claims Act, and the assignment provision in the NWPA.

ANALYSIS [FN5]

FN5. This court has subject matter jurisdiction over this action based upon the Tucker Act, 28 U.S.C. § 1491(a), and the Standard Contract. *See Boston Edison Co. v. United States,* 64 Fed.Cl. 167, 174- 79 (2005). *Contra Florida Power & Light Co. v. United States,* 64 Fed.Cl. 37 (2005).

RCFC 25(c) concerns substitution of parties upon a transfer of interest and states that "[i]n case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party. Service of the motion shall be made as provided in subdivision (a) of this rule." [FN6] The Rule is taken verbatim from the corresponding Federal Rule of Civil Procedure. The language is cast in permissive, not mandatory terms, using the word "may" rather than "shall." Typically, trial courts have broad discretion in considering whether substitution of a successor in interest is appropriate. *See Organic Cow, LLC v. Center for New England Dairy Compact Research,* 335 F.3d 66, 71 (2d Cir.2003); *Prop-Jets, Inc. v. Chandler,* 575 F.2d 1322, 1324 (10th Cir.1978). To determine when an entity is a successor in interest that would trigger this discretion, a court must apply law to facts. *Organic Cow,* 335 F.3d at 71; *Luxliner P.L. Export, Co. v. RDI/Luxliner, Inc.,* 13 F.3d 69, 72 (3d Cir.1993). "[J]oinder or substitution under Rule 25(c) does not ordinarily alter the substantive rights of parties but is merely a procedural device designed to facilitate conduct of a case." *Luxliner P.L. Export,* 13 F.3d at 71-72.

FN6. Service of the motion in accord with RCFC 25(c) (last sentence) is not at issue.

In cases brought against the government, the court's discretion in approving substitution of one private plaintiff for another is generally limited by the Assignment of Claims Act and the Assignment of Contracts Act (collectively, the "Anti-Assignment Acts"). *Compare Curtis v. United States,* 63

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Fed.Cl. 172, 176-79 (2004) (sole shareholder of dissolved Oregon corporation did not qualify for substitution as successor in interest to corporation's contract claims against the United States because title to corporate assets did not pass by operation of law to sole shareholder and thus transfer did not fall within exception to Assignment of Claims Act for transfers by operation of law), *with National Australia Bank v. United States,* 54 Fed.Cl. 238, 239-40 (2002) (dividends from subsidiaries to parent corporation of rights and interests in breach of contract claims against United States did not run afoul of the Assignment of Claims Act). *Cf. Tuftco Corp. v. United States,* 222 Ct.Cl. 277, 614 F.2d 740 (1980) (contracting officer waived the requirements of the Assignment of Claims Act); *Maffia v. United States,* 135 Ct.Cl. 604, 142 F.Supp. 891 (1956) (assignment of contract to purchase surplus tugs ineffective under the Assignment of Contracts Act, causing annulment of the contract).

Whether substitution is appropriate in this instance turns on the permissibility of the assignment of Rochester Gas's rights and duties under the Standard Contract in light of the Anti-Assignment Acts and Section 302(b)(3) of the NWPA. Subsumed questions are whether the assignment at issue is a partial assignment of the Standard Contract, and, if so, whether such a partial assignment is permissible.

*THE ASSIGNMENT OF CONTRACTS ACT*

[1] The Assignment of Contracts Act generally prohibits the assignment of government contracts. It states that "[n]o contract or order, or any interest therein, shall be transferred by the party to whom such contract or order is given to any other party, and any such transfer shall cause the annulment of the contract or order transferred, so far as the United States is concerned." 41 U.S.C. § 15(a). The purpose of this statute is to protect the United States from defending against claims by entities other than those with which it chooses to contract, a policy which allows the government to preserve ***437** claims and defenses it may have against the original contracting party. *See Maffia,* 142 F.Supp. at 893. Several exceptions to the proscriptions in the Act have emerged where assigned contracts are not deemed void and the assignments instead are given effect. Assigned contracts are not annulled when the contracting entity is seeking financing and follows procedures outlined in the Act. 41 U.S.C. § 15(b)-(c). [FN7] In addition, assigned contracts are valid when the assignment takes place by operation of law or when the government consents to and recognizes the assignment. *See Tuftco,* 614 F.2d at 744-45. The latter exception has been satisfied when the contract itself permits assignments, provided the conditions of assignment outlined in the contract are satisfied. *See Monchamp Corp. v. United States,* 19 Cl.Ct. 797, 801 (1990).

FN7. As amended by the Federal Acquisition Streamlining Act of 1994, Pub.L. No. 103-355, Title II, § 2451, 108 Stat. 3243 (Oct. 13, 1994), Subsections (b) and (c) of 41 U.S.C. § 15 provide as follows: (b) Assignment

The provisions of subsection (a) of this section shall not apply in any case in which the moneys due or to become due from the United States or from any agency or department thereof, under a contract providing for payments aggregating $1,000 or more, are assigned to a bank, trust company, or other financing institution, including any Federal lending agency, provided:

(1) That, in the case of any contract entered into after October 9, 1940, no claim shall be assigned if it arises under a contract which forbids such assignment.

(2) That, unless otherwise expressly permitted by such contract, any such assignment shall cover all amounts payable under such contract and not already paid, shall not be made to more than one party, and shall not be subject to further assignment, except that any such assignment may be made to one party as agent or trustee for two or more parties participating in such financing.

(3) That, in the event of any such assignment, the assignee thereof shall file written notice of the assignment together with a true copy of the instrument of the assignment with--

(A) the contracting officer or the head of his department or agency;

(B) the surety or sureties upon the bond or bonds, if any, in connection with such contract; and

(C) the disbursing officer, if any, designated in such contract to make payment.

(c) Validity of assignment

Notwithstanding any law to the contrary governing the validity of assignments, any assignment pursuant to this section shall constitute a valid assignment for all purposes.

41 U.S.C. § 15(b)-(c).

*1. Assignment of rights and duties under the Standard Contract pursuant to provisions of the NWPA.*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Section 302(b)(3) of the NWPA on its face expressly authorizes the assignment of rights and duties under Standard Contracts: "[t]he rights and duties of a party to a contract entered into under this section may be assignable with transfer of title to the spent nuclear fuel or high-level radioactive waste involved." 42 U.S.C. § 10222(b)(3). Given this explicit authorization for an assignment, the court must determine whether Section 302(b)(3) of the NWPA supersedes the Assignment of Contracts Act as applied to Standard Contracts for Disposal of SNF and HLW. In doing so, the court applies the well-established canon of statutory construction that " '[w]here there is no *clear* intention otherwise, a specific statute will not be controlled or nullified by a general one.' " *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987) (quoting *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 153, 96 S.Ct. 1989, 48 L.Ed.2d 540 (1976), and *Morton v. Mancari*, 417 U.S. 535, 550-51, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974)). *See also Morales v. Trans World Airlines*, 504 U.S. 374, 384-85, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992) (absent an explicit contraindication, specific statutes govern over general statutes).

The express authorization in Section 302(b)(3) of the NWPA for assignment of Standard Contracts reveals no intention that the Assignment of Contracts Act will continue to control. Rather, the provision in the NWPA is directly to the contrary. The only express condition on the applicability of Section 302(b)(3) of the NWPA to an assignment of a Standard Contract is that the assignment accompany "transfer of title to the spent nuclear fuel or high-level radioactive waste involved." 42 U.S.C. § 10222(b)(3). To interpret the NWPA not to permit assignments of contracts would render the terms of ***438** Section 302(b)(3) meaningless. Such an interpretation would contravene the principle that statutes must be construed to give effect and meaning to all of their terms. *See, e.g., Duncan v. Walker*, 533 U.S. 167, 174, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001). Accordingly, the NWPA permits assignments of Standard Contracts notwithstanding the provisions of the Assignment of Contracts Act.

*2. Permissibility of partial assignments.*

[2] The question then arises whether conditions are imposed on the assignment of contracts under the NWPA other than the one condition explicitly set out in Section 302(b)(3) of the NWPA. The government argues that Rochester Gas's assignment is a partial assignment of rights and duties under its Standard Contract, and that Section 302(b)(3) of the NWPA should be read narrowly to permit only total and complete assignments of contracts. As legal grounds for this contention, the government relies on the language of Section 302(b)(3) and the policy argument that the Section should be interpreted to supersede the Assignment of Contracts Act only to the extent necessary. Def.'s Response in Opposition to Plaintiff's Motion to Substitute Plaintiff and Amend Caption, for Substitution of Counsel, and for Limited Relief from Stay ("Def.'s Opp'n") at 8-12. Ginna LLC and Rochester Gas respond by denying that its assignment is partial and arguing that the use of the phrase "the rights and duties" in Section 302(b)(3) permits partial assignments. Pl.'s Reply at 7-8.

In interpreting statutes, courts first examine the plain meaning of the statute, and, if it is unambiguous, enforce that meaning. *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) (internal citations omitted) ("courts must presume that a legislature says in a statute what it means and means in a statute what it says."). In this instance, Section 302(b)(3) provides that "the *rights and duties*" of a Standard Contract "*may* be assignable." 42 U.S.C. § 10222(b)(3) (emphasis added). The language is thus permissive. It does not say that the rights and duties *must* be assigned upon transfer of title to the SNF involved, or that *all* rights and duties may be assigned. In this latter respect, the statutory text does use the specific article "the," which might be deemed to refer to all rights and duties such that if any are assigned, all have to be assigned. However, Section 302(b)(3) does not say that "the Standard Contract" may be assigned. In short, by referring to "rights and duties" under a Standard Contract, the statutory text contemplates particularity in an assignment. The plain meaning thus lends itself to partial assignments, which interpretation gives effect to the language of "the rights and duties" (as contrasted to "the contract") and "may be assignable" (as contrasted to "must be assigned"). *See Duncan*, 533 U.S. at 174, 121 S.Ct. 2120. Moreover, the court will not distort the plain meaning of Section 302(b)(3) of the NWPA merely because that provision manifestly overrides the Assignment of Contracts Act. *See Crawford*, 482 U.S. at 445, 107 S.Ct. 2494.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

This plain meaning of Section 302(b)(3) is also consistent both with the statutory context and policy regarding assignments as expressed by Congress and with generally applicable common law principles. Contrary to the government's policy argument, interpreting Section 302(b)(3) to allow partial assignments would not engender excessive administrative complexity. The one condition imposed by Section 302(b)(3) mandates that such assignments are permissible only with transfer of title to the SNF or HLW involved, so only a few, relatively predictable assignments are likely to be made under the Section. Furthermore, under the common law, partial assignments are generally permissible. *Restatement (Second) Contracts* § 326 (1981) addresses partial assignments and provides that they are fully effective:

> (1) Except as stated in Subsection (2), an assignment of a part of a right, whether the part is specified as a fraction, as an amount, or otherwise, is operative as to that part to the same extent and in the same manner as if the part had been a separate right.

*Id.* § 326(1). The exception to this general rule, stated in *Restatement (Second) Contracts* § 326(2), is aimed at protecting the ***439** obligor against multiple actions in a case of partial assignment:

> (2) If the obligor has not contracted to perform separately the assigned part of a right, no legal proceeding can be maintained by the assignor or assignee against the obligor over his objection, unless all the persons entitled to the promised performance are joined in the proceeding, or unless joinder is not feasible and it is equitable to proceed without joinder.

That concern can be addressed in this case by applying the joinder aspect of the substitution rule in RCFC 25(c) ("unless the court upon motion directs the person to whom the interest is transferred to be ... joined with the original party").

In short, the statute, as worded, permits a broad range of assignments of contractual rights and duties.

*3. Assignment of rights and duties under the Ginna plant's Standard Contract.*

[3] The assignment at issue satisfied the limiting factor set forth by the NWPA: the transfer of rights and duties under the Standard Contract coincided with the transfer of title to SNF and HLW. J.A., Ex. 1. The assignment also conformed to the requirement of the Standard Contract. The Standard Contract permits assignments, provided that notice of any such transfer be provided to DOE within ninety days of transfer. Standard Contract, art. XIV. It is undisputed that Rochester Gas assigned the Standard Contract for the Ginna plant to Ginna LLC on June 10, 2004, and it caused notice to be given to DOE on June 24, 2004, within ninety days of the sale. J.A., Ex. 1; Def.'s App. 3. Accordingly, Rochester Gas and Ginna LLC have satisfied the statutory and contractual requirements for assigning a Standard Contract. [FN8]

FN8. Under the Assignment of Contracts Act, inclusion of an assignment clause in the contract itself has been treated as governmental recognition and consent to an assignment. *Monchamp,* 19 Cl.Ct. at 801. Thus, Article XIV of the Standard Contract would constitute governmental recognition and consent under the Assignment of Contracts Act wholly apart from the statutory grant of authority for assignments in Section 302(b)(3) of the NWPA.

[4] The assignment of rights and duties under the Standard Contract applicable to the Ginna plant reflects that Rochester Gas and Ginna LLC intended a partial assignment notwithstanding their current arguments to the contrary. The terms of the asset purchase agreement specified that Rochester Gas "will remain liable for ... the One-Time DOE Pre-1983 Fee, and [Ginna LLC] shall have no Liability or responsibility therefore." J.A., Ex. 1, at 75. This language is unequivocal. Counsel for Ginna LLC nonetheless argues strenuously that Ginna LLC is the only entity with remaining responsibilities to the government, and that it has adopted all rights and duties under the Standard Contract regardless of the terms of its assignment from Rochester Gas. Hr'g Tr. at 18. That contention simply does not square with the asset purchase agreement. *See, e.g.,* J.A., Ex. 1, at 24 (Asset Purchase Agreement § 2.2(k)) (reserving for Rochester Gas "[a]ny cause of action or claim for damages or other rights that relate to the One-Time DOE Pre-1983 Fee"). Consequently, the court concludes that rights and duties under the Standard Contract for the Ginna plant were partially assigned, with Rochester Gas retaining some rights and duties that were treated as excluded assets and excluded liabilities under the asset purchase agreement, most notably the obligation to pay the one-time fee, while others were transferred as purchased assets and assumed liabilities. [FN9]

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Nonetheless, such a partial assignment *440 is permissible under the NWPA and the Standard Contract.

FN9. Counsel for Ginna LLC also points to the preliminary and actual notice to DOE, both of which stated that the assignment transferred "all rights and duties under [the Ginna plant's Standard Contract]" to Ginna LLC. J.A., Ex. 6; Def.'s App. 3. Such language in the notice is insufficient to offset the explicit terms of the asset purchase agreement, which does not shift to Ginna LLC any liability for the one-time fee. Statements in the notice to an agency do not necessarily change the substance of the assignment in the purchase agreement. *Cf. Merchants' Funding Group v. United States,* 33 Fed.Cl. 445, 451 (1995) (holding that misidentification of the contract in its notice to DOE, by itself, did not render an assignment invalid).

In addition, Ginna LLC and Rochester Gas cannot in the future make an agreement binding the government that Ginna LLC will satisfy the liability for the one-time fee. Such a later agreement would not be effective for purposes of this case, or for any purpose affecting the government, because it would not comport with the condition in Section 302(b)(3) that an assignment of rights and duties under a Standard Contract must be coincident with transfer of title to SNF. At this time, the court cannot and will not release Rochester Gas from all liability to DOE, nor will it treat Ginna LLC as being entitled to any excluded assets under the asset purchase agreement.

*ASSIGNMENT OF PRE-EXISTING CLAIMS*

[5] A further question for the court is whether the assignment of Rochester Gas's pre-existing claims is appropriate. The motion to substitute seeks to allow Ginna LLC to assert claims for "damages incurred prior to, on or after" it acquired the Ginna plant. J.A., Ex. 1, at 22 (Asset Purchase Agreement § 2.1(p)). The government claims that such an assignment violates the Assignment of Claims Act, which, as the government would have it, is left unaffected by Section 302(b)(3) of the NWPA, unlike the Assignment of Contracts Act. Def.'s Opp'n at 12-17. Rochester Gas and Ginna LLC argue that Section 302(b)(3) of the NWPA supersedes the Assignment of Claims Act as well as the Assignment of Contracts Act. Pl.'s Reply at 8-9.

The Assignment of Claims Act generally bars the assignment of claims against the United States:

(a) In this section, "assignment" means--

(1) a transfer or assignment of any part of a claim against the United States Government or of an interest in the claim; or

(2) the authorization to receive payment for any part of the claim.

(b) An assignment may be made only after a claim is allowed, the amount of the claim is decided, and a warrant for payment of the claim has been issued. The assignment shall specify the warrant, must be made freely, and must be attested to by 2 witnesses. The person making the assignment shall acknowledge it before an official who may acknowledge a deed, and the official shall certify the assignment. The certificate shall state that the official completely explained the assignment when it was acknowledged. An assignment under this subsection is valid for any purpose.

31 U.S.C. § 3727. The purposes of this Act include preventing purchased claims from being urged improperly against government officials, avoiding possible multiple payment of claims, and preserving government defenses and counterclaims that may not be available against the assignee. *See United States v. Shannon,* 342 U.S. 288, 291-92, 72 S.Ct. 281, 96 L.Ed. 321 (1952) (quoting *United States v. Aetna Surety Co.,* 338 U.S. 366, 373, 70 S.Ct. 207, 94 L.Ed. 171 (1949)); *Kingsbury v. United States,* 215 Ct.Cl. 136, 563 F.2d 1019, 1024 (1977). As with the Assignment of Contracts Act, exceptions to the Assignment of Claims Act exist for certain financing institutions, 31 U.S.C. § 3727(c), as well as for assignments that occur by operation of law. *Tuftco,* 614 F.2d at 745. In addition, the government may waive the requirements of the Act, and, in determining whether such a waiver has occurred, courts consider knowledge, assent, and other actions of the government consistent with the terms of assignment. *See Tuftco,* 614 F.2d at 745-46; *Riviera Fin. of Texas, Inc. v. United States,* 58 Fed.Cl. 528, 532 (2003); *American Nat'l Bank & Trust Co. of Chicago v. United States,* 23 Cl.Ct. 542, 546 (1991).

*1. Assignments of pre-existing claims under Standard Contracts.*

Again, the court must examine the language of Section 302(b)(3) of the NWPA to determine its meaning with relation to the Assignment of Claims Act. *See Connecticut Nat'l Bank,* 503 U.S. at 253-54, 112 S.Ct. 1146. Section 302(b)(3) refers generally to the rights and duties of a party to the Standard Contract in authorizing those rights and duties to be assignable with transfer of title to SNF

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

and/or HLW. 42 U.S.C. § 10222(b)(3). Generally, one of the "rights" that a party has in a contract with the government is to bring a suit for breach of contract. *See* 28 U.S.C. § 1491(a) (Tucker Act); *Gulf States Creosoting Co. v. Loving,* 120 F.2d 195, 199 (4th Cir.1941) ("A cause of ***441** action for breach of contract had therefore already arisen, and it is not disputed that such a cause of action is assignable."); 29 Richard A. Lord, *Williston on Contracts* § 74:10 (4th ed.2003) (noting that "a right to damages for breach of contract is assignable"). Section 302(b)(3) contains no exceptions to its grant of permission for assignments, and thus it does not bar pre-existing claims from being assigned. Rather, it is worded broadly, and on its face would permit various assignments of rights and duties.

Notwithstanding the expansive language of Section 302(b)(3), the government argues that the NWPA does not permit assignments of pre-existing claims. In making this argument, it relies upon *Ginsberg v. Austin,* 968 F.2d 1198, 1200 (Fed.Cir.1992), which cited various authorities in property and contract law for the proposition that assignments of rights under a continuing contract do not imply assignment of pre-existing claims. Def.'s Opp'n at 15- 16. The government would have the court use this principle of contract interpretation to construe the NWPA's assignment provision narrowly, to exclude the right to bring suit on pre-existing claims from the rights a party to a Standard Contract can assign.

The government's argument ignores that the common law contract principle cited in *Ginsberg* applies " '[i]n the absence of an agreement to the contrary.' " *Ginsberg,* 968 F.2d at 1201. *See also* 3 E. Allan Farnsworth, *Farnsworth on Contracts* § 11.3 (2d ed.2001) ("Whether the owner of a right has manifested an intention to transfer it is a question of interpretation to be answered from all circumstances, including words and other conduct."). Thus, the background common law (putting aside the Assignment of Claims Act) for what constitutes a "right" that could be the subject of an assignment includes the right of a contract-holder *expressly* to assign its pre-existing claims. Nothing in Section 302(b)(3) of the NWPA indicates that its authorization for assignments fails to follow this common law principle. Accordingly, Section 302(b)(3) is interpreted to permit explicit assignments of pre-existing claims under the Standard Contract. [FN10]

FN10. Contracting parties to a Standard Contract may choose how best to assign their contracts and claims. Nonetheless, assignments of pre-existing claims under a Standard Contract must take place only with the transfer of title to SNF or HLW. *See supra,* at 434, 438. This requirement is consistent with the purpose of the Assignment of Claims Act in preventing the purchase of claims to be used improperly against the United States. *See Shannon,* 342 U.S. at 291, 72 S.Ct. 281.

*2. Assignment of Rochester Gas's claims.*

The contract claims in this case were properly assigned. All that Section 302(b)(3) of the NWPA and the Standard Contract require is that the rights and duties be assigned with transfer of title to SNF or HLW and that notice be provided to DOE within 90 days. Standard Contract, art. XIV. As noted previously, Rochester Gas has satisfied these requirements. *See supra,* at 438-39. In addition, the assignment of pre-existing claims was explicit. *See* J.A., Ex. 1, at 22 (Asset Purchase Agreement § 2.1(p)) (listing among the "purchased assets" the right to pursue "damages incurred prior to, on or after [June 10, 2004]" relating to this litigation, subject to certain conditions). Accordingly, Rochester Gas appropriately transferred its claims of partial breach of contract and breach of the implied covenants of good faith and fair dealing. [FN11]

FN11. Rochester Gas argues in the alternative that the government's acceptance of Ginna LLC's continuing fee payments waived any objections it might have had under the Anti-Assignment Acts. Hr'g Tr. at 71. Because the court finds that Section 302(b)(3) of the NWPA supersedes the Anti-Assignment Acts with respect to Standard Contracts, it is not necessary to address this claim or the claim that approval of regulators concerned with rate-making and safety constituted recognition and consent by the government. J.A., Exs. 3, 5.

[6] However, Rochester Gas may not assign its takings claims to Ginna LLC. *See United States v. Dow,* 357 U.S. 17, 20-21, 78 S.Ct. 1039, 2 L.Ed.2d 1109 (1958) (Assignment of Claims Act bars the assignment of a takings claim against the United States). For a party to allege that its property right has been taken, it must have owned the property at the time that the alleged taking occurred. *See Dow,* 357 U.S. at 20-21, 78 ***442** S.Ct. 1039; *Cavin v. United States,* 956 F.2d 1131, 1135 (Fed.Cir.1992); *System Fuels, Inc. v.*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*United States,* 65 Fed.Cl. 163, 170, 2005 WL 950497, at *6 (Apr. 20, 2005); *Smith v. United States,* 28 Fed.Cl. 430, 436 (1993). In this case, the complaint, which was filed before Ginna LLC owned the property, alleges that DOE's actions constituted an uncompensated taking. Compl. ¶¶ 44-47. Thus, the alleged taking took place before Rochester Gas's ownership of the property right was transferred to Ginna LLC. Nonetheless, it may be that both the assignor and assignee have separate takings claims. *See Palazzolo v. Rhode Island,* 533 U.S. 606, 626-28, 121 S.Ct. 2448, 150 L.Ed.2d 592 (2001) (holding that the fact that regulations allegedly causing a taking were in place prior to the purchase of an affected property is not dispositive of whether a taking occurred). Accordingly, Rochester Gas can properly assert its takings claims and may not transfer those claims to Ginna LLC, but Ginna LLC might have takings claims of its own that it could assert separate and apart from those being put forward by Rochester Gas.

[7] The government also challenges the portion of the assignment that reserves certain proceeds from the suit for Rochester Gas. Def.'s Opp'n at 20. The asset purchase agreement requires Ginna LLC to pay Rochester Gas an amount equal to the economic value Ginna LLC receives from any monetary relief in this litigation, up to $10 million. J.A., Ex. 1, at 76 (Asset Purchase Agreement § 6.13). The government argues that this aspect of the assignment also violates the Assignment of Claims Act. Def.'s Opp'n at 20. However, an assignment of proceeds from a lawsuit against the government has long been a permissible transaction, so long as the assignee does not thereby obtain a claim against the United States. *See Produce Factors Corp. v. United States,* 199 Ct.Cl. 572, 467 F.2d 1343, 1348 (1972) (quoting *Wyoming Nat'l Bank of Wilkes Barre, Pa. v. United States,* 154 Ct.Cl. 590, 292 F.2d 511, 514 (1961)) ("The rights of the assignee are 'limited to its right to receive money under the contract.' "). An assignment of proceeds conveys limited rights that are "entirely dependent upon, and inseparable from, performance by the contractor[-assignor] of his contractual obligations." *Produce Factors,* 467 F.2d at 1348 (citing *National City Bank of Evansville v. United States,* 143 Ct.Cl. 154, 163 F.Supp. 846, 852 (1958)). Thus, if the contractor-assignor fails to perform, the assignee of proceeds may have a claim only against the assignor, not the contracting counterparty, in this case, the government. *See Hardin County Sav. Bank v. United States,* 106 Ct.Cl. 577, 65 F.Supp. 1017, 1022 (1946). Accordingly, the government's challenge to Ginna LLC's assignment of proceeds is unavailing.

### *JOINDER OF CLAIMS*

[8] The final question concerns the application of RCFC 25(c), given the conclusions reached in this decision. Rochester Gas and Ginna LLC both have claims against the government. Rochester Gas retains its takings claim and remains liable for payment of the one-time fee. Ginna LLC properly seeks to take control of the claims of partial breach of contract and breach of the implied covenants of good faith and fair dealing, and may have its own takings claim. Accordingly, joinder under RCFC 20(a) and 25(c), rather than substitution under RCFC 25(c), is appropriate. Both Rochester Gas and Ginna LLC have indicated their potential willingness to proceed as co-plaintiffs if the court denies the motion to substitute. Pl.'s Mot. to Substitute at 4 n. 2; Pl.'s Reply at 11. Thus, the court treats the motion to substitute as a motion for joinder, and grants it. Permissive joinder is appropriate when the claims arise out of the same transaction or occurrence and common issues of law or fact will arise in the case. RCFC 20(a); *Franconia Assocs. v. United States,* 61 Fed.Cl. 335, 336-37 (2004). [FN12] The remaining claims arise out of the same transaction or occurrence and share common issues of fact. As a result, joining Rochester Gas's and Ginna LLC's claims is appropriate. Consolidation would likely be appropriate if separate cases were filed. *See *443 Entergy Nuclear Indian Point 2, LLC v. United States,* 62 Fed.Cl. 798, 802-03 (2004).

FN12. The court treats joinder of Rochester Gas and Ginna LLC as permissive under RCFC 20(a) and appropriate under RCFC 25(c) and *Restatement (Second) Contracts* § 326(2), quoted *supra,* at 438.

Joining the claims also preserves the policies of the Anti-Assignment Acts by avoiding potential double recovery and preserving the government's defenses against Rochester Gas. *See Restatement (Second) Contracts* § 326(2). Because the one-time fee has not yet been paid, preservation of this defense is potentially important in this case. *Compare System Fuels,* 65 Fed.Cl. at 174 n. 12, 2005 WL 950497, at *11 n. 12 (one-time fee not now due, and the government's claim for recoupment or setoff may

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

be premature because the one-time fee may be paid "anytime prior to the first delivery [of SNF]"), *with Consumers Energy Co. v. United States,* 65 Fed.Cl. 364, 373, 2005 WL 1023513, at *10 (April 29, 2005) (government entitled to recoup and setoff the one-time fee against any damages judgment in plaintiff's favor). Joinder of Ginna LLC's claims with those of Rochester Gas is appropriate.

CONCLUSION

For the reasons set forth, Rochester Gas's motion to substitute shall be treated as a motion for joinder, and such motion is GRANTED. Pursuant to RCFC 25(c), Ginna LLC shall be "joined with the original party," Rochester Gas, as a plaintiff. The caption of the case shall be amended to reflect the addition of Ginna LLC as a co-plaintiff, and the separate appearance of counsel of record for Ginna LLC shall be recognized.

On or before June 24, 2005, the government shall file its answer to the complaint. On or before August 12, 2005, the parties shall file a joint preliminary status report that addresses the matters set forth in RCFC Appendix A, ¶¶ 4-5.

It is so ORDERED.

65 Fed.Cl. 431, Fed. Carr. Cas. P 20,658

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

U. S. DEPARTMENT OF ENERGY CONTRACT NO. DE-CR01-83NE44419

CONTRACT FOR DISPOSAL OF SPENT NUCLEAR FUEL AND/OR HIGH-LEVEL

RADIOACTIVE WASTE.

THIS CONTRACT, entered into this 30th day of June 1983, by and between the UNITED STATES OF AMERICA (hereinafter referred to as the "Government"), represented by the UNITED STATES DEPARTMENT OF ENERGY (hereafter referred to as "DOE") and Rochester Gas and Electric Corporation (hereinafter referred to as the "Purchaser"), a corporation organized and existing under the laws of the State of New York

WITNESSETH THAT:

WHEREAS, the DOE has the responsibility for the disposal of spent nuclear fuel and high-level radioactive waste of domestic origin from civilian nuclear power reactors in order to protect the public health and safety, and the environment; and

WHEREAS, the DOE has the responsibility, following commencement of operation of a repository, to take title to the spent nuclear fuel or high-level radioactive waste involved as expeditiously as practicable upon the request of the generator or owner of such waste or spent nuclear fuel; and

WHEREAS, all costs associated with the preparation, transportation, and the disposal of spent nuclear fuel and high-level radioactive waste from civilian nuclear power reactors shall be borne by the owners and generators of such fuel and waste; and

RG&E
a subsidiary of RGS Energy Group, Inc.

Constellation Energy
R.E. Ginna Nuclear Power Plant

June 24, 2004

RECEIVED
JUL 8 2004

United States Department of Energy
Attn: David Zabransky
Office of Civilian Radioactive Waste Management
RW-20E
1000 Independence Avenue, S.W.
Washington, D.C. 20585

Re: Notice of Transfer of Title to Spent Nuclear Fuel and High-Level Radioactive Waste and Assignment of U.S. Department of Energy Contract No. DE-CR01-83NE44419 For Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste

Dear Mr. Zabransky:

By letter dated May 25, 2004, Rochester Gas and Electric Corporation ("RG&E") and R.E. Ginna Nuclear Power Plant, LLC ("Ginna LLC"), an indirect wholly owned subsidiary of Constellation Energy Group, Inc., provided preliminary notice to the Department of Energy of the proposed sale of the R.E. Ginna Nuclear Power Plant ("Ginna") from RG&E to Ginna LLC, together with transfer of title to all Spent Nuclear Fuel ("SNF") and High-Level Radioactive Waste ("HLW") at or associated with Ginna and the assignment of all rights and duties under DOE Contract No. DE-CR01-83NE44419 to Ginna LLC. This is to advise DOE that the closing of that transaction was completed on June 10, 2004.

Accordingly, notice is hereby given on behalf of RG&E and Ginna LLC, pursuant to Article XIV of DOE Contract No. DE-CR01-83NE44419 executed between RG&E and DOE, that title to all SNF and HLW at or associated with Ginna has been transferred to Ginna LLC and that all rights and duties under DOE Contract No. DE-CR01-83NE44419 have been assigned to and assumed by Ginna LLC, effective June 10, 2004.

Mr. David Zabransky
U.S. Department of Energy
June 24, 2004
Page 2 of 2

The Notice Address for Ginna LLC is:

Robert H. Beall
Constellation Energy
1650 Calvert Cliffs Parkway
Nuclear Fuel Management
Lusby, Maryland 20657
Tel: 410-495-4018
Fax: 410-495-4498

With copy to:

Steven L. Miller
Secretary and Managing Attorney
Constellation Generation Group, LLC
750 E. Pratt Street, 17th Floor
Baltimore, Maryland 21202

Should you have any questions or concerns regarding this Notice, please contact the undersigned.

Very truly yours,

Joseph J. Syta
Controller and Treasurer
Rochester Gas and Electric Corporation

Michael J. Wallace
President
Constellation Generation Group, LLC