No. 04-118C (Senior Judge Margolis)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

ROCHESTER GAS AND ELECTRIC COMPANY,
R.E. GINNA NUCLEAR POWER PLANT, LLC,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

OPPOSITION BY PLAINTIFF R.E. GINNA NUCLEAR POWER PLANT, LLC
TO DEFENDANT'S MOTION TO CERTIFY FOR INTERLOCUTORY APPEAL

Brad Fagg
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 739-5191 Telephone
(202) 739-3001 Facsimile

*Counsel of Record for*
*R.E. Ginna Nuclear Power Plant, LLC*

Of Counsel:

Paul Bessette
MORGAN, LEWIS & BOCKIUS LLP

February 9, 2006

# TABLE OF CONTENTS

**Page**

OPPOSITION BY PLAINTIFF R.E. GINNA NUCLEAR POWER PLANT, LLC TO DEFENDANT'S MOTION TO CERTIFY FOR INTERLOCUTORY APPEAL........... 1

INTRODUCTION ........................................................................................................ 1

STATEMENT OF FACTS .......................................................................................... 3

A. The Sale of the R.E. Ginna Nuclear Power Plant ................................................ 3

B. The Substitution Motion ....................................................................................... 5

C. The May 12, 2005 Order........................................................................................ 6

D. Assertions in Other SNF Damages Cases ............................................................. 7

ARGUMENT.............................................................................................................. 9

A. Standards For Interlocutory Review ..................................................................... 9

B. The May 12, 2005 Order Does Not Present A Controlling Question of Law, Nor Is It An Order The Immediate Appeal Of Which Would Materially Advance The Ultimate Termination of This Litigation ...................... 9

C. There Is No Substantial Ground For Difference Of Opinion ............................. 12

1. Partial assignments.......................................................................................... 12

2. Assignment of pre-existing claims.................................................................. 14

CONCLUSION.......................................................................................................... 16

## TABLE OF AUTHORITIES

**CASES** **PAGE(s)**

Atlantic City Electric Company v. United States,
No. 04-36C (Fed. Cl.) ....................8

Barnhart v. Sigmon Coal Co.,Inc.,
534 U.S. 438 (2002)....................13

Canal Electric Company v. United States,
No. 04-35C (Fed. Cl.) ....................8

Consolidated Edison Company of New York v. United States,
No. 04-0033 (Fed. Cl.)....................8

Coopers & Lybrand v. Livesay,
437 U.S. 463 (1978)....................9

Delmarva Power & Light Co. v. United States,
No 04-34C (Fed. Cl.) ....................8

Entergy Nuclear Indian Point 2, LLC v. United States,
62 Fed. Cl. 798 (2004) ....................8

Ginsberg v. Austin,
968 F.2d 1198 (Fed. Cir. 1992)....................15

In re Flor,
79 F.3d 281 (2d Cir. 1996)....................12

Inhabitants of Montclair v. Ramsdell,
107 U.S. 147 (1883)....................13

Klamath Irrigation Dist.,
69 Fed. Cl. 160 (2005) ....................9, 10

Lowe v. Securities & Exchange Commission,
472 U.S. 181 (1985)....................13

Northrop Corporation v. United States,
27 Fed. Cl. 795 (1993) ....................10

Rigsbee v. United States,
226 F.3d 1376 (Fed. Cir. 2000)....................13

**TABLE OF AUTHORITIES**
**(continue)**

**CASES** **PAGE(s)**

Rochester Gas and Electric Corporation v. United States,
65 Fed. Cl. 431 (2005) ....................2, 6, 7, 12, 13, 15

Splane v. West,
216 F.3d 1058 (Fed Cir. 2000)....................13

Triax Company v. United States,
20 Cl. Ct. 507 (1990) ....................11

Tuftco Corporation v. United States,
614 F.2d 740 (Ct. Cl. 1980) ....................14

United Int'l Investigative Service v. United States,
26 Cl. Ct. 892 (1992) ....................14

United States v. Connolly,
716 F.2d 882 (Fed. Cir. 1982)....................9

**STATUTES AND REGULATIONS**

10 C.F.R. § 961.11, Article XIV....................5

28 U.S.C. § 1292(b) ....................9

28 U.S.C. § 1292(d) ....................9

31 U.S.C. § 3727....................6, 14

41 U.S.C. § 15....................5, 12, 14

42 U.S.C. § 10222(b) ....................5, 12, 14

**MISCELLANEOUS**

16 Wright, Miller, Cooper, Federal Practice and Procedure § 3930, (2d ed. 1996) ..........11

Restatement (Second) of Contracts § 326(1) (1981) ....................13

# In the United States Court of Federal Claims

**ELECTRONIC CASE FILING**
**(Filed February 9, 2006)**

| | | |
|---|---|---|
| **ROCHESTER GAS AND ELECTRIC CORPORATION,** | ) | |
| **and** | ) | |
| **R.E. GINNA NUCLEAR POWER PLANT, LLC** | ) | |
| **Plaintiffs,** | ) | **No. 04-118C** |
| **v.** | ) | **Senior Judge Margolis** |
| **THE UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | |

**OPPOSITION BY PLAINTIFF R.E. GINNA NUCLEAR POWER PLANT, LLC TO DEFENDANT'S MOTION TO CERTIFY FOR INTERLOCUTORY APPEAL**

Plaintiff R.E. Ginna Nuclear Power Plant, LLC (Ginna LLC) respectfully submits the following opposition to Defendant's Motion for Interlocutory Appeal, filed on January 23, 2006.

## INTRODUCTION

Rochester Gas and Electric Corporation (RG&E) filed this spent nuclear fuel damages lawsuit on January 29, 2004. Ginna LLC, which is an indirect wholly-owned subsidiary of Constellation Energy Group, Inc., purchased the nuclear power plant involved in the case from RG&E in a sale that closed in June 2004, and soon thereafter moved to substitute itself as the single party plaintiff in the action. On May 12, 2005, this Court (per Lettow, J.) treated the

motion to substitute as a motion for joinder, and granted that motion. *Rochester Gas and Electric Corporation v. United States*, 65 Fed. Cl. 431 (2005). There is absolutely no potential for duplicative recovery by multiple plaintiffs in *this case,* as a result of the Court's order. There is absolutely no chance that appellate consideration of the Court's order will materially advance the resolution of *this case*. There is absolutely no controlling question of law presented by the Court's order in *this case*.

Yet—in this case—the government has filed a very peculiar motion for interlocutory appeal. Apparently, the government's position regarding argued restrictions on permissible assignments under the Nuclear Waste Policy Act (NWPA), which the Court quite correctly rejected in this case, raises the specter of alleged problems for the government in *other* spent nuclear fuel damage cases. In particular, when the government took the position that the right to pursue pre-existing damage claims was not a "right . . . of a party to a contract" that was expressly assignable under the NWPA, a handful of plaintiffs in other cases, who had formerly owned interests in nuclear plants, reacted by filing protective amended complaints that asserted breach of contract claims. Those plaintiffs had previously (and correctly) thought that they had legally assigned their rights to pursue all contract damage claims to the purchasers of the interests in the nuclear plants, and originally did not seek to claim breach of contract damages. When, however, the government took the position that the right to pursue pre-existing contract damage claims could not legally be assigned, those plaintiffs presumably determined to take steps to preserve their own right to pursue such damages. And, so, in that handful of other cases, there are apparently now two parties potentially claiming (or, more accurately, one claiming and the other protectively claiming) the same breach of contract damages. Significantly, however, no such actual "duplicative" damage awards have yet occurred, nor are such circumstances even

theoretically possible in *this case*.

The government has only itself to blame for the alleged quandary in which it finds itself in those other cases. Indeed, if those other judges were to rule as Judge Lettow did in this case, the purported problems in those other cases would be eliminated because such rulings would confirm that those plaintiffs were free to assign their rights to pursue contract damages under the express terms of the NWPA and Standard Contracts entered into under the NWPA (which is what everyone in the industry believed in the first place). The government's position, by contrast, would result in two plaintiffs seeking contract damages when the parties desired and intended only one, which of course turns the anti-assignment statutes on their head. More fundamentally, if and when other judges in those other cases ever award the "duplicative" recovery of which the government now complains, there is no reason that the government could not exercise its appeal rights *in those other cases*, on a full record and where the issue would be real rather than speculative.

Here, there is no possibility for duplicative recovery as a result of the ruling that the government seeks to have reversed. An advisory ruling from the court of appeals in this case will not materially advance this litigation, does not present a controlling question of law, and does not present substantial grounds for difference of opinion. Interlocutory appeal is therefore not justified, and the government's motion should be denied.

## STATEMENT OF FACTS

### A. The Sale of the R.E. Ginna Nuclear Power Plant.

The facts regarding the underlying transaction are described at length in the Court's order dated May 12, 2005, there is already a voluminous record in this case of the documents related to this transaction, and those matters will therefore not be repeated at length here. Briefly,

however: RG&E, the former owner of the Ginna nuclear power plant, entered into a Standard Contract with DOE for the disposal of spent nuclear fuel and high level waste in 1983. RG&E elected to defer payment of the so-called "one-time fee," due for electricity generated prior to 1983 under the Standard Contract, until "first delivery" of such spent fuel to DOE. *See*, 65 Fed. Cl. at 434.[1]

On November 24, 2003, RG&E entered into an agreement to sell the Ginna plant to Ginna LLC, subject to various conditions and regulatory approvals. *Id.* That agreement provided that RG&E would convey to Ginna LLC the right to pursue "damages incurred prior to, on, or after [closing]." J.A., Ex. 1, at 22;[2] 65 Fed Cl. at 434. RG&E was required to commence a damages lawsuit prior to January 31, 2004, and Ginna LLC was to assume control of that lawsuit after consummation of the sale. J.A., Ex. 1, at 76; 65 Fed. Cl. at 434. The agreement further provided that RG&E conveyed to Ginna LLC its "undivided right, title and interest to the [Standard Contract], including, without limitation, any and all damage claims arising under such contract subject to" certain reimbursement and liability obligations. J.A., Ex. 1, at 76; 65 Fed. Cl. at 434. Under the agreement, Ginna LLC agreed to pay over to RG&E certain portions of any ultimate recovery from the lawsuit. *Id.* Finally, the agreement provided that RG&E would remain financially liable for the amount of the one-time fee. *Id.* In particular, the parties contemplated that if and when DOE ever accepted "first delivery" of SNF or HLW from the Ginna plant, Ginna would notify RG&E that the one-time fee was due and owing, and receive

---

[1] The Standard Contract provides for two types of fees to DOE. There is the above-noted one-time fee, and there is an ongoing mil-per-kilowatt hour fee, payable quarterly by the holder of the Standard Contract. RG&E paid the latter fee up until the time of closing; Ginna LLC pays that ongoing fee now.

[2] "J.A." refers to the joint appendix filed the parties in this case on March 10, 2005, docket item 32.

reimbursement from RG&E for the full amount of that fee. J.A., Ex. 1, at 76. RG&E actually executed a letter of credit in favor of Ginna LLC, to secure that liability. 65 Fed. Cl. at 435.

In advance of the closing, RG&E transmitted a letter to DOE, informing DOE that the title to all SNF and HLW at the Ginna plant would be transferred to Ginna LLC, and "all rights and duties [under the Ginna plant's Standard Contract] will be assigned to and assumed by [Ginna LLC]." J.A., Ex. 6. After the closing of the sale, and consistent with the notice provisions of the Standard Contract at Article XIV, RG&E and Ginna LLC provided written notice to DOE that title to all SNF and HLW associated with the Ginna plant had been transferred to Ginna LLC, and "that all rights and duties under [the Ginna Standard Contract] have been assigned to and assumed by Ginna LLC, effective June 10, 2004." 65 Fed. Cl. at 435.

**B. The Substitution Motion.**

Shortly thereafter, RG&E and Ginna LLC filed a motion to substitute Ginna LLC as the single party plaintiff to this lawsuit. The government did not initially indicate whether or not it would oppose, but eventually filed a lengthy opposition to the motion. The government advanced two basic propositions. First, the government alleged that RG&E had retained some rights and liabilities under the Standard Contract, and on that basis contended that the assignment of the Standard Contract itself was impermissibly "partial" and invalid. The government acknowledged, as it had to, that the assignment provisions of the Standard Contract, 10 C.F.R. § 961.11, Article XIV, and Nuclear Waste Policy Act (NWPA), 42 U.S.C. § 10222(b)(3), "trumped" general prohibitions on assignments of contracts with the government contained in the Assignment of Contracts Act, 41 U.S.C. § 15. The government nevertheless contended that when the NWPA and Standard Contract referred to "rights and duties of a party to a contract" being assignable, that meant that only "contracts" themselves could be assigned, or that only "all" rights and duties to a contract could be assigned. Because of its contention that RG&E had

not made a "complete" assignment, the government asserted that the entire assignment of the Standard Contract was invalid. The government did not address the numerous and serious implications of such a position, except to assert that it precluded Ginna LLC from assuming control of this lawsuit.

Second, the government contended that a right to pursue claims for so-called "pre-existing" contract damages that had been incurred as of the closing date was not a "right . . . of a party to a contract" that the NWPA allowed to be assigned, citing the Assignment of Claims Act, 31 U.S.C. § 3727. The government therefore contended that, rather than have Ginna LLC pursue all existing breach of contract damages, RG&E would have to pursue pre-closing damages, and Ginna LLC would have to pursue post-closing damages.

In reply, Ginna LLC argued that the assignment of the rights and duties of the Ginna Standard Contract was not, in fact, a "partial" assignment as the government contended. In the alternative, however, Ginna LLC showed that the plain terms of the NWPA allowed such purported partial assignments, and also allowed assignment of the rights to pursue so-called "pre-existing" contract damages. The Court ultimately held a hearing on February 8, 2004, and directed the parties to submit a supplemental joint appendix, which they did on March 10, 2005.

**C. The May 12, 2005 Order.**

On May 12, 2005, the Court issued a thorough and comprehensive decision on the motion to substitute. *Rochester Gas and Electric Corporation v. United States*, 65 Fed. Cl. 431 (2005). The Court reviewed the relevant provisions of the NWPA, the Standard Contract, and the transaction regarding the sale of the Ginna plant. With regard to assignment of the Standard Contract itself, the Court rejected the argument that the sales transaction was effectively a complete assignment of all rights and duties under the Standard Contract as far as the

government was concerned,[3] but found, as plaintiffs had argued in the alternative, that the "plain meaning" of the NWPA nevertheless permitted partial assignments. 65 Fed. Cl. at 437. The Court also found that this plain meaning was consistent with the statutory context and policy of Congress, and generally consistent with common law principles. *Id.* With regard to so-called pre-existing claims, the Court similarly found that the express terms of the NWPA allowed assignment of the rights to pursue such claims, that this was also consistent with common law principles, and with Federal Circuit precedent. 65 Fed. Cl. at 440. Because of the Court's holdings regarding the alleged partial assignment, the Court treated the motion to substitute as a motion for joinder, and allowed Ginna LLC to appear as a party plaintiff.

The current posture of the case is therefore that RG&E remains a co-plaintiff, for the limited purpose of the takings claim originally pled in the complaint up until the closing of the sale of the plant, and for purposes of purported defenses regarding liability for the one-time fee. 65 Fed. Cl. at 442. Ginna LLC is authorized to pursue all breach of contract damages, and any takings claims arising after closing. As a practical matter, Ginna LLC has assumed primary responsibility for prosecution and control of the lawsuit, as contemplated in the agreement for the sale of the Ginna plant. Obviously, there is no potential whatsoever for overlapping or duplicative recovery as between RG&E and Ginna LLC.

**D. Assertions in Other SNF Damages Cases.**

Ginna LLC does not believe that circumstances in other cases are determinative, or even relevant, here. But, because the government's arguments for interlocutory appeal are based almost entirely on alleged circumstances in such other cases, it is important that that the record be clear regarding the other cases cited by the government. As noted above, in three of the other

---

[3] Ginna LLC respectfully disagrees with that aspect of the Order.

pending cases cited, the plaintiffs are parties that sold their interests in nuclear power plants and originally intended to transfer their rights to pursue any existing breach of contract damages. Accordingly, as filed, those complaints asserted only non-transferable takings claims. It was only after the government took the position that the assignment provisions of the NWPA did not permit assignment of the right to pursue existing contract damages that the plaintiffs filed amended complaints, to protectively assert claims for contract damages that the government now says could not be legally assigned. *See, Delmarva Power & Light Co. v. United States*, No 04-34C, docket item 30; *Atlantic City Electric Company v. United States*, No. 04-36C, docket item 33; *Canal Electric Company v. United States*, No. 04-35C, Docket item 32. Indeed, the government's position regarding assignment of existing contract claims is the <u>only</u> reason that those seller-plaintiffs assert breach of contract claims at all. *See Delmarva Power & Light Co.*, Order (Fed. Cl., July 1, 2005), docket item 69 (noting that if government were to concede that assignments of existing contract damage claims to buyers were valid, seller-plaintiffs "would be willing to dismiss the breach claims.").

The only other cases cited by the government in its motion involve the buyer and seller of the Indian Point 2 nuclear power plant, where the court merely rejected the government's motion to consolidate, and therefore at least implicitly rejected the government's arguments about risks of duplicative recovery. *See Entergy Nuclear Indian Point 2, LLC v. United States*, 62 Fed. Cl. 798, 802 (2004); *Consolidated Edison Company of New York v. United States*, No. 04-0033, Order (November 2, 2005). The seller-plaintiff in the *ConEd* case apparently asserts pre-closing breach of contract claims on its own behalf, and therefore presumably did not transfer those pre-existing damage claims to the buyer. That is, of course, precisely the result that the government in this case argues is legally required. Accordingly, even if the government were allowed to

pursue the interlocutory appeal that it seeks in this case and were to prevail, there would be no basis for the government to cite such a ruling in the Indian Point 2 cases.

## ARGUMENT

### A. Standards For Interlocutory Review

Interlocutory appeals under 28 U.S.C. § 1292(d) "are reserved for 'exceptional' or 'rare' cases and should be authorized only with great care." *Klamath Irrigation Dist. v. United States*, 69 Fed. Cl. 160, 161 (2005). A party moving for interlocutory review must show that (1) a controlling question of law is involved, (2) there is substantial ground for difference of opinion on that question of law, and (3) an immediate appeal may materially advance the ultimate determination of litigation. 28 U.S.C. § 1292(d)(2). Establishing the three criteria, however, is not sufficient to guarantee an interlocutory appeal; the court of appeals may still refuse to hear the case in its full discretion "for any reason." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978).[4]

### B. The May 12, 2005 Order Does Not Present A Controlling Question of Law, Nor Is It An Order The Immediate Appeal Of Which Would Materially Advance The Ultimate Termination of This Litigation

In its argument in support of the requested exceptional appeal in this case, the most that the government can do is to vaguely allude to "issues" regarding the validity of partial assignments being "present." *E.g.*, 1/23/06 Mot. at 8. That issues may allegedly be lurking around in a case, however, does not even begin to satisfy the applicable standards. The government does not—and cannot—specifically identify how the resolution of this case would

---

[4] Because §§ 1292(b) and 1292(d)(2) have the same operative language and functions, interpretations of § 1292(b) are equally pertinent to § 1292(d)(2). *United States v. Connolly*, 716 F.2d 882, 883 n.1 (Fed. Cir. 1982).

be advanced by the Federal Circuit's reversal of the order challenged by the government. Indeed, the opposite result is more likely, given the complexities and potential introduction of multiple claimants of contract damages that would result from the government's position. The substantive issues in this case involve, quite simply, dollars spent at the Ginna plant to store spent nuclear fuel that would not have been spent "but-for" DOE's performance failures. All parties necessary for any claims and defenses regarding those matters are before the Court. Resolution of those issues would not be altered, much less expedited, by the procedural obstacles that the government has attempted to interpose, which have nothing to do with the merits of the claims. Where, as here, "litigation on the remaining contract claims would still need to proceed," there is no controlling question of law, and interlocutory review is not warranted. *Klamath Irrigation Dist.*, 69 Fed. Cl. at 162. "Appellate courts are not in the business of resolving issues that do not need to be resolved." *Northrop Corporation v. United States*, 27 Fed. Cl. 795, 799 (1993).

The government's similarly vague invocations of a risk of "duplicative and inconsistent damages awards to different SNF plaintiffs," 1/23/06 Mot. at 8, and "potentially" multiple claimants under a single contract, have absolutely no application <u>to this case</u>. *See, e.g., Northrop Corporation*, 27 Fed. Cl. at 799 (interlocutory appeal not appropriate where question "no longer

affects *any* issue in *this* proceeding") (emphasis in original).[5] Given the Court's May 12, 2005 ruling, there is no possibility that the government could be subject to duplicative liability in this lawsuit. Moreover, even in other cases, such purported harm is at best highly speculative and unlikely. If and when two plaintiffs each recover for the same dollar of damage in other spent nuclear fuel damage cases, the government is quite capable of arguing the impropriety of such circumstances to other judges of this Court, and if the government is correct it will prevail. The prospect of actual duplicative recovery in the real world in those other cases appears extremely remote. Nevertheless, in the unlikely event that such recovery were to occur in some other case, the government's proper remedy would be an appeal *in that other case*—not an interlocutory advisory opinion from the Federal Circuit *in this case*, where the complained-of circumstances are not present or even possible.

Finally, these principles are not altered by the government's assertion that "[a]t the very least, multiple partial contract holders make it difficult for DOE to determine the proper division of rights in meeting its own performance obligations." 1/23/06 Mot. at 9. Vague and hypothetical assertions about possible future performance difficulties are irrelevant to the material advancement of this damages lawsuit. Such assertions do not constitute or create controlling questions of law.

---

5 The government cites an out-of-context snippet from a treatise to argue that the possibility of an issue arising in other cases justifies certification for interlocutory review. 1/23/06 Mot. at 9. But, the statement relied upon by the government is actually part of a discussion that contradicts the government's position. As the full quote from treatise explains: "[c]ertification provides a means of achieving case-specific accommodation of the antagonistic pressures that surround final-judgment doctrine *that should not depend on general importance*. The opportunity to achieve appellate resolution of an issue important to other cases may provide an additional reason for certification, but cannot be a requirement." 16 Wright, Miller & Cooper, Federal Practice and Procedure § 3930, at 425 (2d ed. 1996) (emphasis added). In *Triax Company v. United States*, 20 Cl. Ct. 507 (1990), the Court cited the presence of an issue in other cases when approving interlocutory appeal, but, unlike here, the issue being pursued was actually present and controlling in the *Triax* case itself.

**C. There Is No Substantial Ground For Difference Of Opinion**

In arguing that the requisite substantial grounds for different of opinion exist, the government: (a) relies upon the contention that these are purported issues of "first impression," 1/23/06 Mot. at 10, and (b) repeats the same arguments that the Court thoroughly considered and rejected in its prior order. *Id.* at 10-15. The alleged lack of precedent arises from the fact that the government's assertions here are so far outside of the mainstream of traditional principles of statutory construction and so at odds with the plain meaning of the NWPA. Interlocutory appeal is not warranted just because a losing argument has never been made before. "[T]he mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion." *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996), *quoted in Klamath Irrigation Dist.*, 69 Fed. Cl. at 163.

With regard to the merits of the May 12, 2005 Order:

1. *Partial assignments.* The government's position is based upon an erroneous interpretation of the explicit assignment provision provided by Congress in the NWPA. The government correctly concedes that Congress, in the NWPA, created an exception to the Assignment of Contracts Act, 41 U.S.C. § 15. That exception states that "[t]he rights and duties of a party to a contract entered into under this section may be assignable with transfer of title to the spent nuclear fuel and/or high level radioactive waste." 42 U.S.C. § 10222(b)(3). Despite this broadly worded provision, the government nevertheless contends that the only thing that is permissible is for "contract holders to assign *their contracts* to third parties," and that the NWPA only permits a "*contract* assignment." 9/22/04 Govt. Opp. at 5, 10 (emphasis supplied).

That, however, is not what the statute says. As the Court correctly noted, the statute "does not say that the rights and duties *must* be assigned upon transfer of title to the SNF involved, or that *all* rights and duties may be assigned." 65 Fed. Cl. at 438 (emphasis in

original). A contract can of course consist of any number of discrete rights and duties, which (as the government acknowledges) are generally severable and individually assignable. *E.g., Restatement (Second) of Contracts* § 326(1) (1981); 9/22/04 Govt. Opp. at 10. "Rights and duties" does not mean the same thing as "contracts," and the phrase "rights and duties of a party to" in the statute would be rendered meaningless and superfluous under the government's interpretation.

The government's position regarding the assignments permitted under the NWPA runs afoul of several fundamental interpretive principles. For example, a statute should not be construed so as to leave some of its terms as meaningless or superfluous, *e.g.*, *Splane v. West*, 216 F.3d 1058, 1067 (Fed. Cir. 2000), and the Court "must construe a statute, if at all possible, to give effect and meaning to all of its terms." *Id.*, *citing Lowe v. Securities & Exchange Commission*, 472 U.S. 181, 207-08 n.53 (1985); *Inhabitants of Montclair v. Ramsdell*, 107 U.S. 147 (1883). As noted above, the government's position fails this elemental test. In all statutory construction cases, the first step is to determine whether the language at issue has a plain and unambiguous meaning, *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 450 (2002), and the inquiry ceases if the statutory language is unambiguous and the statutory scheme is coherent. *Rigsbee v. United States*, 226 F. 3d 1376, 1379 (Fed. Cir. 2000). As the Court correctly held, that is the circumstance here—there are no qualifiers or limitations on what "rights and duties" of a party to a Standard Contract are assignable.

The Court correctly considered and applied these principles, as well as the statutory context, applicable policies, and "generally applicable common law principles." 65 Fed. Cl. at 438. The government has not shown there to be a substantial ground for a difference of opinion regarding the Court's conclusions.

2. _Assignment of pre-existing claims_. The government's arguments about non-assignability of so-called pre-existing claims are grounded upon a similar misinterpretation of the assignment provision of NWPA. As described above, the broad waiver of anti-assignment prohibitions contained in the NWPA is not limited to just "contracts," but instead encompasses all "rights and duties of a party" to a Standard Contract. 42 U.S.C. § 10222(b)(3). As the Court correctly held, the ability to seek and recover existing damages for breach is nothing if not a "right" of a party to a contract. 65 Fed. Cl. at 440 (citations omitted). Accordingly, under the plain terms of the NWPA, such a right to seek damages is freely assignable. The Assignment of Claims Act, 31 U.S.C. § 3727, may of course be waived in the same manner as the Assignment of Contracts Act, 41 U.S.C. § 15, and the unambiguous terms of both the NWPA and the Standard Contract itself implement such a waiver.

Given the plain terms of the NWPA, the government's effort to ascribe different purposes and applications of the Assignment of Contracts Act on the one hand and the Assignment of Claims Act on the other is pointless—Congress waived both statutes with the broad assignment language it used in the NWPA. 42 U.S.C. § 10222(b)(3). Nevertheless, the postulated distinction between the two acts conjured by the government at pages 12-13 of its motion is not supported by the case law. In virtually every case that has discussed the application of the two statutes, courts have interpreted the two acts together, cited cases involving the two acts interchangeably, and confirmed that "the legal concepts involved in their applicability are the same." *Tuftco Corporation v. United States*, 614 F.2d 740, 744 n.4 (Ct. Cl. 1980); *see also, e.g.*, *United Int'l Investigative Service v. United States*, 26 Cl. Ct. 892, 898 n. 2 (1992). The different specified remedies in the two acts noted by the government are irrelevant for these purposes—there is nothing to support the argument that the Assignment of Claims Act has an applicability

to these circumstances separate and apart from the Assignment of Contracts Act. Neither Act may be cited as a bar in light of the unambiguous provisions of the NWPA and of the Standard Contract allowing the assignments challenged by the government, and Ginna LLC is plainly entitled to pursue the so-called "pre-existing" claims assigned to it by RG&E.

*Ginsberg v. Austin*, 968 F.2d 1198 (Fed. Cir. 1992), relied upon by the government at pages 13-14 of its motion, is not to the contrary, and was correctly held by the Court to be inapplicable. *Ginsberg* did not involve an analysis of issues regarding the scope or applicability of Assignment of Claims Act or Assignment of Contracts Act, and—other than noting that the Board below held both acts to have been waived—the court did not mention those statutes. *Ginsberg* instead addressed the standing of an assignor and turned upon common law presumptions of the running of discrete, severable claims for back rent, where there was *not* an "express intention" between the parties to transfer such claims for accrued rent to the assignee. *Ginsberg*, 968 F.2d at 1200. Here, as the terms of the plant sale agreement confirm and as the Court correctly noted, there *was* an "express intention" to transfer all rights and claims under the Standard Contract to Ginna LLC, "including, without limitation, any and all damage claims arising under such contract . . . ." J.A., Ex. 1, at 76; 65 Fed. Cl. at 434. In its motion for interlocutory appeal, the government simply ignores this dispositive distinction so aptly noted by the Court. Instead, the government attempts to invoke the talisman of strict construction of waivers sovereign immunity (which has no applicability here), and repeats its strained characterization of the NWPA and Standard Contract. 1/23/06 Mot. at 14.

When properly interpreted, and as the Court correctly found, *Ginsberg* fails to provide any support for the government's position in these circumstances. There is no substantial ground for difference of opinion regarding a party's ability to assign the right to pursue existing breach

of contract damages under the NWPA and Standard Contract.

## CONCLUSION

For the reasons stated above, Ginna LLC respectfully requests that the government motion for interlocutory appeal be denied. The parties have previously requested a stay of active litigation in the case for other reasons, and Ginna LLC does not oppose the government's request for such a stay.

Respectfully submitted,

s/ Brad Fagg

Brad Fagg
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 739-5191 Telephone
(202) 739-3001 Facsimile
COUNSEL OF RECORD FOR
R.E. GINNA NUCLEAR POWER PLANT, LLC

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 9th day of February, 2006, the foregoing was filed with the Court electronically, and service is thereby deemed to have been made upon all counsel of record.

s/ Paul Bessette