**04-118C**
**(Senior Judge Margolis)**

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

**ROCHESTER GAS AND ELECTRIC COMPANY,**
**R.E. GINNA NUCLEAR POWER PLANT, LLC,**

**Plaintiffs,**

**v.**

**UNITED STATES,**

**Defendant.**

---

# DEFENDANT'S REPLY TO OPPOSITION BY PLAINTIFF R.E. GINNA NUCLEAR POWER PLANT, LLC AND JOINDER BY PLAINTIFF ROCHESTER GAS AND ELECTRIC IN OPPOSITION TO DEFENDANT'S MOTION TO CERTIFY FOR INTERLOCUTORY APPEAL

---

**PETER D. KEISLER**
**Assistant Attorney General**

**DAVID M. COHEN**
**Director**

**s/Harold D. Lester, Jr.**
**HAROLD D. LESTER, JR.**
**Assistant Director**

**s/ Elizabeth Thomas**
**ELIZABETH THOMAS**
**Trial Attorney**
**Commercial Litigation Branch**
**Department of Justice**
**1100 L Street, N.W.**
**Attn: Classification Unit, 8th Floor**
**Washington, D.C. 20530**
**Tele: (202) 353-4175**
**Fax: (202) 307-2503**
**Attorneys for Defendant**

**March 3, 2006**

**TABLE OF CONTENTS**

**PAGE**

DISCUSSION .......... 1

I. THE STANDARDS FOR CERTIFICATION OF AN INTERLOCUTORY APPEAL ARE SATISFIED IN THIS CASE .......... 1

A. "A Controlling Question Of Law" And The "Possible Material Advancement Of The Ultimate Termination Of The Litigation" .......... 1

B. "Substantial Ground For Difference Of Opinion" .......... 8

1. Whether The NWPA Assignment Provision Permits Partial Assignments .......... 8

2. Whether The NWPA Assignment Provision Permits Assignment Of Pre-Existing Damages Claims .......... 10

CONCLUSION .......... 12

# TABLE OF AUTHORITIES

**CASES** **PAGE(s)**

AD Global Fund, LLC,
68 Fed. Cl. 663 (2005) ........ 9

Aleut Tribe v. United States,
702 F.2d 1015 (Fed. Cir. 1983) ........ 2

American Tel. & Tel. Co. v. United States,
33 Fed. Cl. 540 (1995) ........ 8

Canal Electric Co. v. United States,
No. 04-0035C (Fed. Cl. 2004) ........ 7

Castle v. United States,
301 F.3d 1328 (Fed. Cir. 2002) ........ 3

In re Computer Engineering Associates v. John Desmond,
337 F.3d 38 (1st Cir. 2003) ........ 4

Consolidated Edison Co. of N.Y. v. United States,
No. 04-0033C (Fed. Cl. 2004) ........ 7

Delmarva Power & Light Co. v. United States,
Nos. 04-34C (Fed. Cl. 2004) ........ 7

Department of the Army v. Blue Fox, Inc.,
525 U.S. 255 (1999) ........ 10, 12

Detroit Edison Co. v. United States,
56 Fed. Cl. 299 (2003) ........ 3

Entergy Nuclear Indian Point 2, LLC v. United States,
62 Fed. Cl. 798 (2004) ........ 7

Erickson Air Crane Co. v. United States,
731 F.2d 810 (Fed. Cir. 1984) ........ 5

Federal National Mortgage Association v. United States,
379 F.3d 1303 (Fed. Cir. 2004) ........ 10

## TABLE OF AUTHORITIES

**CASES** **PAGE(s)**

Ginsberg v. Austin,
968 F.2d 1198 (Fed. Cir. 1992) ........ 11

Home Sav. Of Am. FSB v. United States,
51 Fed. Cl. 487 (2002) ........ 3

Hughes Communications Galaxy, Inc. v. United States,
271 F.3d 1060 (Fed. Cir. 2001) ........ 3

J.J. Henry Co. v. United States,
188 Ct. Cl. 39, 411 F.2d 1246 (1969) ........ 3

Klinghoffer v. S.N.C. Achille Lauro,
921 F.2d 21 (2d Cir. 1990) ........ 6, 7

La Van v. United States,
56 Fed. Cl. 580 (2003) ........ 3

Library of Congress v. Shaw,
478 U.S. 310 (1986) ........ 10

Marriott Int'l Resorts v. United States,
63 Fed. Cl. 144 (2004) ........ 2

McDonnell Douglas Corp. v. United States,
27 Fed. Cl. 204 (1992) ........ 8, 10

Merritt v. United States,
267 U.S. 338 (1925) ........ 5

Miller v. Wells Fargo Bank Int'l Corp.,
540 F.2d 548 (2nd Cir. 1976) ........ 4

Oakland Steel Corporation v. United States,
33 Fed. Cl. 611 (1995) ........ 5

Pikes Peak Family Housing, LLC v. United States,
40 Fed. Cl. 673 (1998) ........ 2

## TABLE OF AUTHORITIES

**CASES** **PAGE(s)**


Putnam Mills Corp. v. United States,
479 F.2d 1334 (Ct. Cl. 1973) ........................................ 5

Rochester Gas & Electric Corp. v. United States,
65 Fed. Cl. 431 (2005) ........................................ passim

Smith v. United States,
58 Fed. Cl. 374 ........................................ 3

Tuftco Corp. v. United States,
222 Ct. Cl. 277, 614 F.2d 740 (1980) ........................................ 11

Tyler House Apartments, Ltd. v. United States,
38 Fed. Cl. 1 (1997) ........................................ 3

United States v. Johnson Controls, Inc.,
713 F.2d 1541 (Fed. Cir. 1983) ........................................ 5


**STATUTES**


10 C.F.R. § 961.11 ........................................ 3

28 U.S.C. § 1292(d)(2) ........................................ 2

28 U.S.C. §1491 ........................................ 5

31 U.S.C. § 3727 ........................................ 11

41 U.S.C. § 15 ........................................ 11

42 U.S.C. § 10222 ........................................ 8, 9, 11


**MISCELLANEOUS**


16 C. Wright, A. Miller, & E. Cooper, Federal Practice & Procedure § 3930, at 423-24
(2d ed. 1996) ........................................ 6, 7

19 J. Moore, Moore's Federal Practice § 203.31[2], at 203-87 (3d ed. 1999) ........................................ 6

Black's Law Dictionary 1362 (4th ed. 1968) ........................................ 5

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

ROCHESTER GAS AND ELECTRIC COMPANY, )
R.E. GINNA NUCLEAR POWER PLANT, LLC, )
Plaintiffs, )
) No. 04-118C
v. ) (Senior Judge Margolis)
)
THE UNITED STATES, )
)
Defendant. )

DEFENDANT'S REPLY TO OPPOSITION BY PLAINTIFF R.E. GINNA NUCLEAR POWER PLANT, LLC AND JOINDER BY PLAINTIFF ROCHESTER GAS AND ELECTRIC IN OPPOSITION TO DEFENDANT'S MOTION TO CERTIFY FOR INTERLOCUTORY APPEAL

Defendant, the United States, respectfully submits this reply to the "Opposition By Plaintiff R.E. Ginna Nuclear Power Plant, LLC To Defendant's Motion To Certify For Interlocutory Appeal," and "Joinder By Plaintiff Rochester Gas And Electric Corporation In Opposition By Plaintiff R.E. Ginna Nuclear Power Plant, LLC To Defendant's Motion To Certify For Interlocutory Appeal," filed February 9, 2006.

DISCUSSION

I. THE STANDARDS FOR CERTIFICATION OF AN INTERLOCUTORY APPEAL ARE SATISFIED IN THIS CASE

A. "A Controlling Question Of Law" And The "Possible Material Advancement Of The Ultimate Termination Of The Litigation"

Contrary to the assertions of Rochester Gas and Electric Corporation ("Rochester") and R.E. Ginna Nuclear Power Plant, LLC ("Ginna "), made in Rochester's opposition ("Pl. Opp.") 2, there are controlling questions of law in *this* case, the appellate court's review of this case would materially advance the ultimate resolution of *this* litigation, and the potential for duplicative recovery exists here. Certification of an otherwise interlocutory decision is appropriate when the Court finds that a controlling question of law is involved and immediate appeal from that order

may materially advance the ultimate termination of the litigation.[1] 28 U.S.C. § 1292(d)(2) (1994); see Aleut Tribe v. United States, 702 F.2d 1015, 1019 (Fed. Cir. 1983). Questions of law are "'controlling' when they 'materially affect issues remaining to be decided in the trial court.'" Marriott Int'l Resorts v. United States, 63 Fed. Cl. 144, 145 (2004) (citing Pikes Peak Family Housing, LLC v. United States, 40 Fed. Cl. 673, 686 (1998)). This case involves two controlling questions that should be certified for interlocutory appeal:

1. Whether the Court of Federal Claims correctly held that the assignment provision in the NWPA is sufficiently broad to permit a nuclear utility to make a partial assignment of its contract; and

2. Whether the Court of Federal Claims correctly held that the contract assignment provision of the NWPA is sufficiently broad to permit a nuclear utility to assign its pre-assignment damages claims.

Guidance from the United States Court of Appeals for the Federal Circuit on these questions would materially advance the termination of this litigation because those questions affect whether duplicative damages could be awarded in this case.

As Rochester and Ginna note, the Court has allowed Rochester to pursue a takings claim related to the time before the effective date of the assignment and, further, has allowed Ginna to pursue breach of contract claims that include the time period before the effective date of the assignment. Pl. Opp. 7; Rochester Gas & Electric Corp. v. United States, 65 Fed. Cl. 431, 442 (2005). Ginna's contract claims are based upon the alleged failure by the Department of Energy ("DOE") to commence and continue disposal of spent nuclear fuel ("SNF") in accordance with its

[1] "Some courts and commentators have taken the position that 'the 'controlling question' requirement [should be read as identical to] the requirement that its determination may materially advance the ultimate termination of the litigation.'" Brown v. United States, 3 Cl. Ct. 409, 412 n.3 (1983) (citations omitted).

obligations under the "Standard Contract For Disposal Of Spent Nuclear Fuel And/Or High Level Radioactive Waste" ("Standard Contract"), published at 10 C.F.R. § 961.11. Complaint ("Compl.") ¶¶ 27 and 32. Rochester's takings claim is also based upon DOE's alleged failure to meet its contract obligations. Compl. ¶¶ 45 and 46. It is well-established that where a party's rights are created by contract, a party cannot state a takings claim founded upon a breach of that contract. Tyler House Apartments, Ltd. v. United States, 38 Fed. Cl. 1, 10 (1997) (citing J.J. Henry Co. v. United States, 188 Ct. Cl. 39, 46, 411 F.2d 1246, 1249 (1969)); Castle v. United States, 301 F.3d 1328, 1342 (Fed. Cir. 2002); Smith v. United States, 58 Fed. Cl. 374, 389 (2003); La Van v. United States, 56 Fed. Cl. 580 (2003). Although it is the Government's position that Rochester cannot assert a takings claim predicated upon a taking of Ginna's alleged contractual rights which resulted from DOE's breach of the Standard Contract, there exists the possibility that the Court could award damages to Ginna under a contract theory for precisely the same type of injury that Rochester seeks to recover under its takings claim. Rochester could impermissibly use its taking theory as a mechanism to obtain remedies unavailable to Ginna under the Standard Contract. See Hughes Communications Galaxy, Inc. v. United States, 271 F.3d 1060, 1070 (Fed. Cir. 2001) (the Federal Circuit "has cautioned against commingling takings compensation and contract damages"); Detroit Edison Co. v. United States, 56 Fed. Cl. 299, 303 (2003) (noting that it is inappropriate for a plaintiff "to pursue a takings remedy in order to circumvent the limitations inherent in its contractual relationship with the Government"); Home Sav. Of Am. FSB v. United States, 51 Fed. Cl. 487, 494-96 (2002) (same). Moreover, because the Asset Purchase Agreement between Rochester and Ginna provided that Ginna would make certain payments to Rochester in the event that a monetary recovery from DOE was secured, Rochester Gas & Electric Corp., 65 Fed. Cl. at 435, Rochester could recover a portion of any contract damages from Ginna and also

recover under its takings theory. Therefore, contrary to the assertions of Rochester and Ginna, a real possibility exists in *this* litigation that the plaintiffs could be awarded duplicative damages.

Further, the questions of law are controlling here because they materially affect not only the possible duplicative award of damages, but also affect the issue of whether Ginna is a proper party plaintiff to this litigation. The Asset Purchase Agreement between Rochester and Ginna provided that Rochester would remain financially liable for payment of the one-time fee under the Standard Contract when that fee becomes due and owing. Rochester Gas & Electric Corp. v. United States, 65 Fed. Cl. 431, 435 (2005). "The assignments of rights and duties under the Standard Contract . . . reflects that Rochester Gas and Ginna LLC intended a partial assignment notwithstanding their current arguments to the contrary." Rochester Gas, 65 Fed. Cl. at 439; Pl. Opp. 6. Because the text of the NWPA "does use the specific article 'the,' which might be deemed to refer to all rights and duties such that if any are assigned, all have to be assigned," Rochester, 65 Fed. Cl. at 438, Rochester's assignment of only a part of its contract and its retention of some of the duties of the Standard Contract does not constitute a valid contract assignment under the NWPA. An effective assignment requires the assignor to divest itself of all right, interest, and control in the property assigned. See In re Computer Engineering Associates v. John Desmond, 337 F.3d 38, 46 (1st Cir. 2003) (ruling based upon New York and Massachusetts law); see also Miller v. Wells Fargo Bank Int'l Corp., 540 F.2d 548, 557-58 (2nd Cir. 1976) (ruling based upon New York law). The responsibility for paying the one-time fee remains with Rochester. Rochester Gas & Electric Corp., 65 Fed. Cl. at 439. If Rochester does not pay the fee, DOE is not obligated to remove the nuclear waste. In essence, Rochester is maintaining complete control over whether the Standard Contract is ever performed. Obviously,

Rochester has purported to retain its right, interest, and control in the litigation of its claims. Therefore, the assignment at issue here is invalid.

Privity of contract with the Government would arguably attach to Ginna if there had been a valid assignment of the Standard Contract. See Oakland Steel Corporation v. United States, 33 Fed. Cl. 611, 614 (1995). However, Rochester's assignment to Ginna is invalid because the language of the NWPA only permits complete assignments and Rochester retains interest and control in the pre-existing claims assigned to Ginna. Therefore, Ginna is not excused from the privity requirement. It is a well established principle that, under the Tucker Act, 28 U.S.C. § 1491, the United States consents to be sued upon contract claims only by those with whom it has privity of contract. Erickson Air Crane Co. v. United States, 731 F.2d 810, 813 (Fed. Cir. 1984); United States v. Johnson Controls, Inc., 713 F.2d 1541, 1557 (Fed. Cir. 1983); Petrin v. United States, 90 Ct. Cl. 670, 672-73 (1940); Etchey v. United States, 15 Cl. Ct. 152, 153-54 (1988); Triton Group, Ltd. v. United States, 10 Cl. Ct. 128, 132 (1986), aff'd mem., 818 F.2d 876 (Fed. Cir. 1987). The only parties, therefore, who may maintain an action in this Court founded upon a contract are those who have entered into a contract with the United States. Merritt v. United States, 267 U.S. 338, 340 (1925); Erickson Air Crane Co., 731 F.2d at 813; Putnam Mills Corp. v. United States, 479 F.2d 1334, 1337 (Ct. Cl. 1973); Etchey, 15 Cl. Ct. at 154-55; see Black's Law Dictionary 1362 (4th ed. 1968). In Rochester's complaint, the utility states that it executed the Standard Contract with DOE. Compl. ¶ 2. However, Rochester does not allege that a contract exists between Ginna and the Government. If this Court's finding that the specific reference to "rights and duties" in the statutory language contemplated the permissibility of partial assignments, Rochester, 65 Fed. Cl. at 438, is incorrect, this Court lacks jurisdiction to entertain the claims brought by the plaintiff Ginna. Absent jurisdiction, this case will have to

terminate with respect to Ginna's breach of contract and takings claims. "[I]t is clear that a question of law is 'controlling' if reversal of the district court's order would terminate the action." Klinghoffer v. S.N.C. Achille Lauro, 921 F.2d 21, 24 (2d Cir. 1990); see 19 J. Moore, Moore's Federal Practice § 203.31[2], at 203-87 (3d ed. 1999) ("[o]f course, if resolution of the question being challenged on appeal will terminate the action in the district court, it is clearly controlling"); 16 C. Wright, A. Miller, & E. Cooper, Federal Practice & Procedure § 3930, at 423-24 (2d ed. 1996) ("a question is 'controlling' if its incorrect disposition would require reversal of a final judgment . . . for a dismissal that might have been ordered without the ensuing district court proceedings"). Plainly, the jurisdictional issue in this case is a controlling question of law that would materially affect the termination of this litigation.

Although Rochester and Ginna would have this Court believe that "[t]he substantive issues in this case involve, quite simply, dollars spent at the Ginna plant to store spent nuclear fuel," Pl. Opp. 10, an important and complex aspect of this litigation involves a determination of DOE's performance obligations under the Standard Contract before concluding, as the plaintiffs would have it, that DOE failed to meet those obligations. The Court's order materially affects the issue of DOE's performance obligations because DOE's obligations are arguably altered by the alleged partial assignment of contractual rights. At the very least, partial contract holders make it difficult for DOE to determine the proper division of spent nuclear fuel acceptance rights in meeting its own performance obligations.[2]

Finally, contrary to the assertion of Rochester and Ginna, Pl. Opp. 11 n. 5, issues regarding the possible award of duplicative damages, the validity of partial contract assignments

[2] The hardship on the parties in their particular circumstances, could also provide an additional reason for certification. 16 C. Wright, A. Miller, & E. Cooper, supra, § 3930, at 442.

pursuant to the NWPA, and DOE's performance obligations in light of the division of contract rights are present and controlling not only in this case, but in several other spent nuclear fuel cases pending before this Court.[3] The Government is facing damages claims from both (1) assignors that have assigned portions of or all of their contracts and/or pre-assignment damages claims and (2) assignees. Delmarva Power & Light Co. v. United States, Nos. 04-34C & 04-36C (Fed. Cl. 2004); Canal Electric Co. v. United States, No. 04-0035C (Fed. Cl. 2004); Entergy Nuclear Indian Point 2, LLC v. United States, 62 Fed. Cl. 798 (2004); Consolidated Edison Co. of N.Y. v. United States, No. 04-0033C (Fed. Cl. 2004).[4] Without a uniform resolution of the validity of these assignments, the Government faces the substantial risk that it may pay duplicative judgments to multiple plaintiffs, that it may expend a significant amount of resources and time litigating cases in which the Court lacks jurisdiction, and that it may face conflicting judgments regarding its contractual obligations under the same contract. This result would be inequitable and contrary to judicial economy. Much can be gained through the appellate court's resolution of the controlling questions in the case on an interlocutory basis, rather than at the

[3] "It was once suggested that to be controlling, a question must be important to a large number of other suits, as well as to the parties in the particular case." 16 C. Wright, A. Miller, & E. Cooper, supra, § 3930, at 425. "This suggestion is not supported by any statutory purpose." Id.; see Klinghoffer, 921 F.2d at 24. But see Triax Co. v. United States, 20 Cl. Ct. 507, 513 (1990). However, "[t]he opportunity to achieve appellate resolution of an issue important to other cases may provide an additional reason for certification. . . ." 16 C. Wright, A. Miller, & E. Cooper, supra, § 3930, at 425.

[4] Rochester and Ginna argue that the Court "at least implicitly rejected the government's arguments about risks of duplicative recovery," Pl. Opp. 8, in the Entergy Nuclear Indian Point 2, LLC and Consolidated Edison Co. of N.Y. cases when, in fact, the Court stated that "the different approaches to damages by ENIP [Entergy Nuclear Indian Point 2, LLC] and ConEd [Consolidated Edison Company of New York, Inc.] reduce the likelihood of overlapping or inconsistent damage awards, *but a discernable risk of such inconsistency nonetheless remains*." Entergy Nuclear Indian Point 2, LLC v. United States, 62 Fed. Cl. 798, 803 (2004) (emphasis added).

conclusion of what could otherwise prove a protracted series of lawsuits. American Tel. & Tel. Co. v. United States, 33 Fed. Cl. 540, 541 (1995) ("This court has considered the burdens and benefits attendant to the allowance of an immediate appeal and is of the view that much can be gained by having the court of appeals address the controlling questions in the case on an interlocutory basis rather than at the conclusion of what could otherwise prove to be a much protracted lawsuit.").

B. "Substantial Ground For Difference Of Opinion"

1. Whether The NWPA Assignment Provision Permits Partial Assignments

The Government has also satisfied the "substantial ground for difference of opinion" prong of section 1292(d)(2). Substantial ground exists if there is "an absence of controlling judicial authority on an issue." McDonnell Douglas Corp. v. United States, 27 Fed. Cl. 204, 205 (1992). This Court stated in its May 12, 2005 order that "[t]his case presents an apparent issue of first impression" as to whether Article XIV of the Standard Contract, which implements section 302(b)(3) of the NWPA, 42 U.S.C. § 10222(b)(3), allows partial assignments of spent nuclear fuel ("SNF") disposal contracts. Rochester, 65 Fed. Cl. at 431. Further, different, but plausible, interpretations of statutory language should be considered a substantial ground for a difference of opinion. AD Global Fund, LLC v. United States, 68 Fed. Cl. 663, 2005 WL 2995361, at *2 (Fed. Cl. Nov. 8, 2005). Although the Court concluded that the specific reference to "rights and duties" in the statutory language contemplated the permissibility of partial assignments, the Court also admitted that "the statutory text does use the specific article 'the,' which might be deemed to refer to all rights and duties such that if any are assigned, all have to be assigned." Rochester, 65 Fed. Cl. at 438. These different interpretations of the statutory language are both plausible and should be considered a substantial ground for a difference of opinion.

Rochester and Ginna argue that our position does not give effect and meaning to all the terms of the NWPA. Pl. Opp. 13. The Court reasoned that "the plain meaning . . . [of the NWPA] lends itself to partial assignments, which interpretation gives effect to the language of 'the rights and duties' (as contrasted to 'the contract') and 'may be assignable' (as contrasted to 'must be assigned')." Rochester, 65 Fed. Cl. at 438. However, the NWPA creates a limited exception to the Contracts Act, which specifically prohibits assignments of contracts, providing that "the rights and duties of a party to a contract . . . may be assignable . . .," 42 U.S.C. § 10222(b)(3) (emphasis added), not "part of the rights and duties" or "some of the rights and duties" may be assignable to a third party.

In actuality, it is the Court's ruling that leaves some of the terms of the NWPA meaningless and superfluous. The NWPA only permits the Government to contract with the owner or generator of SNF, 42 U.S.C. § 10222, yet this Court's decision eliminates the need for every contracting party to be a current owner or generator of SNF. Under this Court's theory, a single contract holder can ultimately divide a single contract (through multiple partial assignments) into multiple vaguely subdivided contracts with multiple contract holders, rendering the division of rights and obligations to and among these partial contract holders ill-defined. The Government's position, by contrast, would result in permitting only the owner or generator of SNF at the time of the alleged injury (i.e. breach of contract and/or takings claims) to bring suit.

A significant construction principle applicable to this dispute is the requirement that a sovereign immunity waiver be strictly construed in favor of the sovereign and "unequivocally expressed" in statutory text. Department of the Army v. Blue Fox, Inc., 525 U.S. 255, 261 (1999). The Court's conclusion, that the specific reference in the NWPA to "rights and duties" permits partial assignments, enlarges the statutory waiver of immunity beyond what the language

requires. See Library of Congress v. Shaw, 478 U.S. 310, 315 (1986) (noting the courts' obligation to avoid enlarging a statutory waiver of immunity beyond the requirement of the language). Contrary to the assertion of Rochester and Ginna that the "strict construction of waivers [of] sovereign immunity . . . [have] no applicability here," Pl. Opp. 15, the NWPA is a waiver of sovereign immunity and one expressly made conditional to include only complete or total assignments. See Federal National Mortgage Association v. United States, 379 F.3d 1303, 1310 (Fed. Cir. 2004) (invocation of the sovereign immunity doctrine is appropriate when the rule or contract clause at issue "authorizes claims against the government.").

2. Whether The NWPA Assignment Provision Permits Assignment Of Pre-Existing Damages Claims

The Government has also satisfied the "substantial ground for difference of opinion" prong of section 1292(d)(2) with respect to the issue of assignment of pre-existing damages claims. Substantial ground exists if there is "an absence of controlling judicial authority on an issue." McDonnell Douglas Corp., 27 Fed. Cl. at 205. This Court stated in its May 12, 2005 order that "[t]his case presents an apparent issue of first impression" as to whether Article XIV of the Standard Contract, which implements section 302(b)(3) of the NWPA, 42 U.S.C. § 10222(b)(3), permits assignments of pre-existing damages claims arising out of the Standard Contract. Rochester, 65 Fed. Cl. at 431.

The Court concluded that the NWPA "refers generally to the rights and duties of a party to the Standard Contract in authorizing those rights and duties to be assignable with transfer of title to SNF and/or HLW," and "one of the 'rights' that a party has in a contract with the [G]overnment is to bring a suit for breach of contract." Rochester, 65 Fed. Cl. at 440 (citations omitted). Historically, however, Congress has differentiated between the assignment of contracts and the assignment of claims. A significant conceptual difference between these two statutes is that 31

U.S.C. § 3727, which expressly concerns claims, "pertains to claims for work already done," whereas 41 U.S.C. § 15, which pertains to "executory contracts, is more concerned with continuing obligations." Tuftco Corp. v. United States, 222 Ct. Cl. 277, 284 n.4, 614 F.2d 740, 744 n.4 (1980) (emphasis added). The fact that Congress passed one statute regarding the assignment of contracts and another statute regarding the assignment of claims is deliberate and reveals that such assignments are to be viewed and treated differently.

The United States Court of Appeals for the Federal Circuit appears to draw the same distinction. In Ginsberg v. Austin, 968 F.2d 1198 (Fed. Cir. 1992), the Federal Circuit determined that pre-existing claims are not automatically transferred with the assignment of an executory continuing contract. Although this Court found our analysis does not take into consideration that the common law contract principle cited in Ginsberg only applies in the absence of an agreement to the contrary, Rochester, 65 Fed. Cl. at 441, this case is analogous to Ginsberg v. Austin because assignments of claims were not expressly included within the assignment provision of the Standard Contract, as evidenced by the assignment language in the NWPA. Our position that the Government has waived sovereign immunity for claims by assignees that arise **after** assignment of the Standard Contract, but not for claims that pre-existed the contract assignment, is a reasonable interpretation of the NWPA and the Standard Contract because a waiver of sovereign immunity must "be strictly construed" in its scope in favor of the sovereign and "unequivocally expressed" in statutory text. See Department of the Army, 525 U.S. at 261. This Court's broad interpretation of the assignment language impermissibly extends the Government's exposure to liability. At the very least, a substantial ground for difference of opinion exists on this issue.

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court amend its order dated May 12, 2005, to include the following language:

> The Court finds that controlling questions of law are involved with respect to which there are substantial grounds for difference of opinion and an immediate appeal from the order may materially advance the ultimate termination of the litigation.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/ Elizabeth Thomas
ELIZABETH THOMAS
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tele: (202) 353-4175
Fax: (202) 307-2503

March 3, 2006

Attorneys for Defendant

**CERTIFICATE OF FILING**

I hereby certify that on this 3rd day of March 2006, a copy of foregoing "DEFENDANT'S REPLY TO OPPOSITION BY PLAINTIFF R.E. GINNA NUCLEAR POWER PLANT, LLC AND JOINDER BY PLAINTIFF ROCHESTER GAS AND ELECTRIC IN OPPOSITION TO DEFENDANT'S MOTION TO CERTIFY FOR INTERLOCUTORY APPEAL" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Elizabeth Thomas