# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **ROCHESTER GAS AND ELECTRIC CORPORATION**<br><br>and<br><br>**R.E. GINNA NUCLEAR POWER PLANT, LLC**<br><br>Plaintiffs,<br>v.<br><br>**UNITED STATES OF AMERICA,**<br><br>Defendant. | ) | Case No. 04-0118C<br><br>Senior Judge Margolis |

**PLAINTIFFS' OPPOSITION TO "DEFENDANT'S MOTION TO COORDINATE DISCOVERY AND DEVELOP A LITIGATION PLAN FOR THE SPENT NUCLEAR FUEL CASES"**

BRAD FAGG
MORGAN, LEWIS & BOCKIUS, LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 739-5191
Facsimile: (202) 739-3001
COUNSEL OF RECORD FOR
R.E. GINNA NUCLEAR PLANT, LLC

BALCH & BINGHAM LLP
Post Office Box 306
Birmingham, AL 35201-0306
(205) 251-8100 Telephone
(205) 226-8798 Facsimile
COUNSEL FOR
ROCHESTER GAS AND ELECTRIC
CORPORATION

September 8, 2008

# TABLE OF CONTENTS

**Page**


INTRODUCTION .......... 2

BACKGROUND .......... 3

1. History and status of the spent fuel cases. .......... 3
2. Constellation and this case. .......... 9

ARGUMENT .......... 12

1. The relief that the government seeks is not justified by its claims of duplicative discovery. .......... 12
2. The remaining cases do not present the sort of controlling commonalities that warrant the "coordination" sought by the government. .......... 14
3. The government's one-size-fits-all approach and omnibus requested "litigation plan" do not accommodate the unique aspects of Constellation and this case. .......... 17

CONCLUSION .......... 18

## TABLE OF AUTHORITIES

Page

### FEDERAL CASES

*Entergy Nuclear Indian Point 2, LLC v. United States*, 62 Fed. Cl. 798 (2004).......... 1, 14

*Indiana Michigan Power Company v. Department of Energy*, 88 F.3d 1272 (D.C. Cir. 1996)........................................................................................................ 3

*Indiana Michigan Power Company v. United States*, 422 F.3d 1369 (Fed. Cir. 2005)........................................................................................................ 5, 6

*Lowrey Economic Redevelopment Authority v. United States*, 71 Fed. Cl. 549 (2006) ........................................................................................................ 14

*Maine Yankee Atomic Power Company v. United States*, 225 F.3d 1336 (Fed. Cir. 2000)........................................................................................................ 4

*Northern States Power Company v. Department of Energy*, 128 F.3d 754 (D.C. Cir. 1997)........................................................................................................ 3

*Northern States Power Company v. United States*, 43 Fed. Cl. 374 (1999) ...................... 4

*Northern States Power Company v. United States*, 224 F.3d 1361 (Fed. Cir. 2000)..... 4, 8

*Pacific Gas & Electric Co. v. United States*, No. 2007-5046 (Fed. Cir. Aug. 7, 2008)........................................................................................................ 8

*Rochester Gas and Electric Company v. United States*, 65 Fed. Cl. 431 Fed. Cl. 2005)........................................................................................................ 10

*Rochester Gas and Electric Company v. United States,* No. 04-118, 2005 WL 6114320 (Fed. Cl. Dec. 19, 2005)........................................................................ 12

*Rochester Gas and Electric Company v. United States*, No. 04-118, 2006 WL 5628796 (Fed. Cl. March 29, 2006)..................................................................... 11

*Sacramento Municipal Utility District v. United States*, No. 2007-5052 (Fed. Cir. Aug. 7, 2008) ........................................................................................................ 8

*Southern Nuclear Operating Company v. United States*, 77 Fed. Cl. 396 (2007) ............. 8

*Yankee Atomic Electric Company v. United States*, No. 2007-5025 (Fed. Cir. Aug. 7, 2008) ........................................................................................................ 8, 11

# TABLE OF AUTHORITIES

**Page**

## FEDERAL STATUTES

28 U.S.C. § 1407 ........................................ 16

28 U.S.C. § 2501 ........................................ 5

## MISCELLANEOUS

*Multidistrict Litigation Manual* (2008) ........................................ 16

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **ROCHESTER GAS AND ELECTRIC CORPORATION**<br><br>and<br><br>**R.E. GINNA NUCLEAR POWER PLANT, LLC**<br><br>Plaintiffs,<br>v.<br><br>**UNITED STATES OF AMERICA,**<br><br>Defendant. | Case No. 04-0118C<br><br>Senior Judge Margolis |

**PLAINTIFFS' OPPOSITION TO "DEFENDANT'S MOTION TO COORDINATE DISCOVERY AND DEVELOP A LITIGATION PLAN FOR THE SPENT NUCLEAR FUEL CASES"**

Plaintiffs Rochester Gas and Electric Corporation ("RG&E") and R.E. Ginna Nuclear Power Plant, LLC ("Ginna LLC") respectfully submit the following opposition to Defendant's Motion to Coordinate Discovery and Develop a Litigation Plan for the Spent Nuclear Fuel Cases, filed on August 21, 2008.[1]

[1] The government's motion is procedurally flawed, and quite confusing. The spent fuel cases clearly do not involve the same "contract" or, because there are different plaintiffs, the same "parties," and RCFC 40.2(a) is therefore by its plain terms inapplicable. *Entergy Nuclear Indian Point 2, LLC v. United States*, 62 Fed. Cl. 798, 801 (2004) (under RCFC 40.2(a), "[p]recisely the same contract must be involved, not just a contract that has similar or identical terms.") Yet, in letters to individual judges dated August 28, 2008, the government appeared, after the fact, to attempt to invoke that Rule. Moreover, the government's filing is styled a "motion," rather than the "notice" prescribed by both RCFC 40.2(a) and 40.2(b). We are treating the submission as a motion in this case, and filing this response on behalf of RG&E and Constellation in this case only. We are filing a similar response on behalf of the Constellation plaintiffs in *Constellation Generation Group, LLC et al. v. United States*, No. 04-0068C. (Margolis, J.).

Ginna LLC is an indirect wholly owned subsidiary of Constellation Energy Group, Inc., and the party to whom all claims have been assigned. Accordingly, for purposes of this motion, unless the context indicates otherwise, we will refer to both plaintiffs collectively as "Constellation." Indirect subsidiaries of Constellation Energy Group, Inc. are also the holders of the DOE Standard Contracts for the Nine Mile Point Units 1 and 2 and Calvert Cliffs Units 1 and 2 nuclear power plants. Claims for damages in connection with those plants are asserted in *Constellation Generation Group, LLC et al. v. United States*, No. 04-0068C (Margolis, J.).

## INTRODUCTION

The government's most recent omnibus motion to coordinate discovery in pending spent nuclear fuel damages cases has it all completely backwards.

In our judicial system, when multiple pending cases present argued substantial commonalities (say, for example, legal "pick-up rate" obligations under similar standard contracts), the fundamental theory underlying any sort of coordination-type relief or approach is to facilitate resolution of such commonalities if appropriate and, *then*, to allow for resolution of remaining and inherently individual issues or return of the cases to the individual judges. Not, as the government would have it, the other way around. That is among the most elemental precepts of the Court's current Rules, the recent Advisory Council recommendations regarding suggested changes to those Rules, analogous practice before the federal Judicial Panel on Multidistrict Litigation, and basic common sense—all of which are turned upside down by the government's most recent motion.

That motion should be denied. The allegedly duplicative discovery about which the government complains was all related to issues that are now resolved. No remaining common issues predominate or play a central role, certainly not so as to warrant the extraordinary relief

requested by the government. Indeed, the government does not even purport to identify any such issue, but instead relies exclusively upon complaints about past inequities that it has allegedly suffered. The argued duplicative discovery, however, was not caused—and none will be caused—by Constellation in this case. Moreover, the one-size-fits-all approach advocated by the government (while easy enough to file in 46 cases once the brief is on their system), will do nothing to expedite resolution of pending cases or conserve resources for anyone, and does violence to core principles of individual and independent judicial review of a party's claims. There is nothing in the government's motion that is specific to this case or to Constellation. The government's motion should be rejected in this case and, indeed, in all cases in which it was filed.

## BACKGROUND

### *1. History and status of the spent fuel cases.*

A. The Nuclear Waste Policy Act, and contracts between the Department of Energy (DOE) and holders of spent nuclear fuel entered pursuant to that Act in 1983, required DOE to commence acceptance of spent nuclear fuel in 1998. By the later part of the 1980s, however, it became apparent that DOE was not going to perform in accordance with the expectations of the parties. As the 1998 performance date approached, many utilities sought, in the D.C. Circuit, to compel DOE to comply with its statutory obligations to commence accepting spent nuclear fuel, which obligations were confirmed to be "unconditional." *Indiana Michigan Power Company v. Department of Energy*, 88 F.3d 1272, 1277 (D.C. Cir. 1996). In response to a subsequent request for mandamus relief, however, the D.C. Circuit ultimately declined to order DOE to perform, noting that breach of contract remedies might provide "potentially adequate" alternative relief. *Northern States Power Company v. Department of* Energy, 128 F.3d 754, 759 (D.C. Cir. 1997).

The D.C. Circuit did, however, issue a limited mandamus order, precluding DOE from seeking, as it had on multiple occasions including in violation of the prior *Indiana Michigan* mandate, to evade its obligations by arguing that its obligations were conditional or by invoking excuses to the effect that its failures were "unavoidable."

B. And, so, in 1998 the first "wave" of approximately a dozen spent nuclear fuel damages lawsuits was filed in this Court. The government responded with a flurry of procedural defenses,[2] and ultimately settled on the position that contract holders could not sue directly in this Court, but must first exhaust a contractual dispute resolution scheme. Two years later that position was rejected by the Federal Circuit, which confirmed that DOE had committed a breach that "involved all the utilities that had signed the standard contract—the entire nuclear electric industry," by failing to commence acceptance of spent nuclear fuel in 1998. *Maine Yankee Atomic Power Company v. United* States, 225 F.3d 1336, 1342 (Fed. Cir. 2000); *Northern States Power Company v. United States*, 224 F.3d 1361 (Fed. Cir. 2000).

C. Soon thereafter, the government filed the first of its motions to consolidate of all of the then-pending cases, and reassign all of the cases to a single judge. As described at page 10 of the government's current motion, that request ultimately led to extensive, agreed-upon coordinated discovery regarding "schedule issues," including the "order, pace, and rate of acceptance of spent nuclear fuel and high-level radioactive waste pursuant to the Standard Contract, any priority for shutdown reactors, exchanges of acceptance slots, and the Government's obligation to accept and time of acceptance of Greater-Than-Class-C wastes."

---

[2] *See Maine Yankee Atomic Power Company v. United States*, No. 98-474C, Order (November 3, 1998) (Docket item 24) (rejecting government argument that claims were not yet ripe); *Northern States Power Company v. United States*, 43 Fed. Cl. 374, 381-82 (1999) (rejecting government argument of res judicata), *rev'd on other grounds*, 224 F.3d 1361 (Fed. Cir. 2000).

The so-called schedule issues or "pick up rate," which is the rate by which DOE was obligated to accept spent nuclear fuel upon commencement of performance in 1998, has constituted the government's chief defense. Such a "pick-up rate" rate can have a significant impact on some utilities' damages, because, if the rate is too low, the government is able to argue that all of the mitigation measures for which damages are claimed would have been required "anyway," even if DOE had performed. Over approximately the next two years, such discovery regarding schedule issues ensued, with the government periodically and unsuccessfully renewing, on at least two occasions, its motion to consolidate and re-assign the cases.

D. As the six-year period from January 31, 1998 approached in 2004, and utilities therefore faced an arguable implication of the limitations period at 28 U.S.C. § 2501, a second "wave" of approximately 45 lawsuits was filed. Indeed, every party that had signed a DOE Standard Contract ultimately filed a lawsuit. Initially, as confirmed in a status conference on April 30, 2004, most of those cases were stayed, pending developments in the earlier-filed cases.

E. In a decision that became final in late 2005, the Federal Circuit in *Indiana Michigan Power Company v. United States*, 422 F.3d 1369 (Fed. Cir. 2005) made clear an important rule in spent nuclear fuel damages cases: that in partial breach cases (as these cases necessarily are), damages may only be sought up until a date certain prior to trial, with recovery of future damages reserved for subsequent proceedings. The Federal Circuit also, importantly, confirmed that plaintiffs would not be subject to merger or res judicata-type defenses in such subsequent proceedings, or statute of limitations defenses if such subsequent proceedings were commenced within six years. By confirming that a spent nuclear fuel plaintiff need not prove future events such as the actual date of DOE performance or the nature of mitigation activities

not yet taken, the *Indiana Michigan* decision significantly clarified the landscape for spent nuclear fuel plaintiffs, and pointed the way toward resolution and recovery.

F. Since the *Indiana Michigan* decision by the Federal Circuit, several (though not all) plaintiffs successfully sought to have the stays of their cases lifted, and several cases have proceeded through discovery and trial. It is here that some important clarifications to the government's recited history of these cases at pages 7-17 of its motion are necessary, because the dire picture painted by the government does not tell the whole story.

First, a substantial number (if not the outright majority) of the plaintiffs that have pursued active prosecution of their cases during the last three years have *not* engaged in *any* of the allegedly duplicative discovery about which the government complains. Counsel for Constellation, for example, is also counsel of record in a number of other cases, including six cases that have completed, or are well into, discovery,[3] and three that have completed trials.[4] In none of those prosecuted cases has a *single* deposition of current or former DOE personnel been sought or taken, nor have any "generic" interrogatories, document requests, or other discovery

---

[3] *Arizona Public Service Company v. United States*, No. 03-2832; *Southern California Edison Company v. United States*, No. 04-109, *Carolina Power & Light Company v. United States*, No. 04-37; *Dominion Resources, Inc. v. United States*, No. 04-83; *Dominion Resources, Inc. v. United States*, No. 04-84; *Entergy Nuclear Vermont Yankee, LLC v. United States*, No. 03-2663.

[4] *Carolina Power & Light Company v. United States*, No. 04-37; *Dominion Resources, Inc. v. United States*, No. 04-83; *Dominion Resources, Inc. v. United States*, No. 04-84.

requests regarding schedule or other issues been served upon the government.[5] No government privilege claims have been challenged, no discovery-based motions practice has occurred, and the government has not been required—by those plaintiffs or the Court, anyway—to expend any even arguably unnecessary resources. The government's selective recitations of discovery anecdotes from other cases at pages 13-16 of its motion, and its overblown rhetoric regarding a "discovery onslaught" that is "highly coordinated" by plaintiffs' counsel, are therefore quite misleading.

Second, the government itself continues to call the same current and former DOE witnesses to the stand in its own cases, and has continued to present its "pick up rate" defense and other allegedly common issues in successive multiple cases, in the face of mounting losses, in search of favorable rulings that it has then selectively cited in support in subsequent cases. Moreover, on the stand, those DOE witnesses have on several occasions disavowed prior deposition testimony as dated or rendered obsolete by developments since their depositions occurred. The government has also consistently objected to, and even moved to strike, designations of prior testimony of current and former DOE personnel.[6] Given all of that, the government's complaints about key witnesses being re-deposed or having to testify on multiple occasions ring quite hollow.

Third, over the years and in various cases the government has continued to try out new defenses, not addressed by prior discovery, apparently as it thinks of them. Some examples

---

[5] The only discovery requested by the plaintiffs in those cases involved basic plaintiff-specific inquiries, such as those relating to government testifying experts in the specific case itself.

[6] *See, e.g.,* Defendant's Motion to Strike, *Carolina Power & Light Company v. United States*, No. 04-37, Docket Item 53 (November 2, 2007).

include claimed offsets and related defenses based upon the so-called "one time fee"—asserted for the first time more than five years into the litigations,[7] real party in interest defenses,[8] res judicata,[9] and statute of limitations defenses.[10] Again, given the ever-shifting grounds by which the government has sought to avoid its contractual and statutory responsibilities, the government cannot credibly complain about being subjected to updated discovery as individual cases actually approach trial.

G. As the Court may be aware, the Federal Circuit in a trio of recent cases resolved the "pick-up rate" issue that has been the major substantive government defense to date, and the one government defense with the most arguable common applicability to multiple cases. *See Yankee Atomic Electric Co. v. United States*, Nos. 2007-5025, *et al.* (Fed. Cir. August 7, 2008), *Pacific Gas & Elec. Co. v. United States*, No. 2007-5046 (Fed. Cir. August 7, 2008), and *Sacramento Mun. Util. Dist. v. United States*, Nos. 2007-5052, *et al.* (Fed. Cir. August 7, 2008). In those cases, the Federal Circuit rejected the decision of the one trial judge that had adopted the government's position, holding that such a position "cannot be correct," and finding that judge to have "improperly relied on a unilateral DOE estimate made far after contract formation and tainted by a statutory framework in place at that time, which, if left unchanged, would have rendered timely performance impossible." *Pacific Gas and Electric Company*, No. 2007-5046,

---

7 *See* Amended Answer, *Consumers Energy Company v. United States*, No. 02-1894C, Docket Item 52 (July 9, 2004); Defendant's Motion for Summary Judgment, *Consumers Energy Company v. United States*, No. 02-1894C, Docket Item 53 (July 9, 2004).

8 *Southern Nuclear Operating Company v. United States*, 77 Fed. Cl. 396, 452 (2007), *appeal pending*, No. 2008-5020 (Fed. Cir.)

9 *See Northern States Power Company v. United States*, 224 F.3d at 1365.

10 *See* Defendant's Response to Plaintiff's Motion for Leave to Amend Its Complaint, *Yankee Atomic Electric Company v. United States*, No. 98-126C, Docket Item 938 (April 4, 2006), at pp.14-18

slip op. at 3, 12. The Federal Circuit held, in all three cases, that pick-up rates reflected in certain 1987 DOE documentation constituted the legal obligations of the government.

For present purposes, it is particularly significant to note that *all* of the allegedly duplicative discovery about which the government complains at pages 7-17 of its motion involved the "pick up rate" and associated issues, which are now resolved. Whatever complaints the government may have had about the prior coordinated proceedings and their subsequent enforcement (and, as noted, we believe those complaints to be overblown), those matters are in any event now over and done with.[11] This most recent renewed motion for coordination—which is at least the *seventh* such request by our count and by the government's own admission, *see* 8/21/08 Govt. Br. at 10, 12, 17—is the least meritorious. Nothing has happened to *improve* the government's case for coordination. To the contrary, the Federal Circuit has *resolved* the only arguably common issue discussed in the government's latest motion, thereby *eliminating* whatever residual need for coordination might have been argued to exist.

***2. <u>Constellation and this case.</u>***

Constellation is one of the spent nuclear fuel damages plaintiffs (perhaps one of a silent majority) who do not share the government's bitter complaints regarding what it calls the "haphazard manner" in which the cases have been managed and resolved by the Court to this point. 8/21/08 Govt. Br. at 23. To the contrary, by allowing those plaintiffs who desire to push forward to do so, and by accommodating those plaintiffs (such as Constellation) who have not

[11] Although nothing ever seems to get truly settled in these cases, as evidenced by the government's arguments in *Nebraska Public Power District v. United* States, No. 2007-5083 (Fed. Cir.) that DOE should be able to resurrect, a decade down the road, the legal excuse that its performance was conditional and its failures "unavoidable."

yet, the matters have unfolded in a way that has effectively balanced important, and sometimes competing, interests.

The government's one-size-fits-all approach fails to accommodate the important individual circumstances driving this, and each unique, case. This lawsuit, like most of the "second wave" of suits filed in or around early 2004, was filed in substantial part to ensure that no rights could be argued to be barred when circumstances eventually justified active prosecution—and one can be certain that the government would have pounced upon any such limitations defense were the situation otherwise. In the meanwhile, neither the government nor the Court has had to spend any appreciable resources (at least until the government's most recent motion) on this case, and no party has been harmed.

This lawsuit involves the R.E. Ginna Nuclear Power Plant in Ontario, New York. RG&E originally filed the complaint in this Court on January 29, 2004, seeking, *inter alia*, all damages incurred, and continuing and expected to be incurred, in connection with the failure of the DOE to commence accepting spent nuclear fuel and/or high level waste from the Ginna site. At the time that this lawsuit was filed, RG&E had agreed, subject to the satisfaction of certain conditions, to sell the R.E. Ginna Nuclear Power Plant to Ginna LLC. The predicate conditions were subsequently satisfied, and the sale of the plant to Ginna LLC closed on June 10, 2004. Soon thereafter, plaintiffs moved to substitute Ginna LLC as the single party plaintiff in the lawsuit on the grounds that the rights to prosecute all pre- and post-closing claims had been assigned, and the government opposed. Plaintiffs' motion was treated by the Court as one for joinder, and substantially granted on May 12, 2005. *Rochester Gas and Electric Company v. United States*, 65 Fed. Cl. 431, 442 (Fed. Cl. 2005). RG&E remained a nominal party for purposes of certain potential takings claims, and one-time fee defenses on the part of the

government that have now been determined to be unavailing. *Yankee Atomic Electric Co. v. United States*, No. 2007-5025, *et al.*, slip op. at 17-22 (Fed. Cir., August 7, 2008). The government's request for interlocutory review of the Court's rulings on the assignment and joinder issues was denied. *Rochester Gas and Electric Company v. United States,* No. 04-118, 2006 WL 5628796 (Fed. Cl. March 29, 2006).

The major mitigation efforts for which damages in these cases are sought include two types of activities relevant to the R.E. Ginna Nuclear Power Plant. First, "dry storage" for spent nuclear fuel involves construction of a special facility, loading of the spent fuel into "casks," and storage of those casks on the facility. Second, spent fuel pools exist at every site, and "racking" activities can improve the configuration of the "racks" in those pools in which spent fuel is stored, thereby increasing capacity.

Dry storage will ultimately be necessary at Ginna, but the planning and construction phases are just now getting underway. A racking project was previously undertaken at Ginna, and will likely be a component of claimed damages if and when contested litigation ever commences, but progress on the dry storage project is expected by Constellation to be a major driver of the decisions regarding commencement of active prosecution of its claims—it does not make sense to select a damages cut-off date in advance or right in the middle of a major project, and future damages cannot be claimed until they are incurred. And, in the interim, Constellation has been content to await developments in other cases, such as rulings regarding future damages, one-time fee defenses, and the pick-up rate.

Finally, affiliates of Constellation also operate four other plants at two sites, the Nine Mile Point Units 1 and 2 and Calvert Cliffs Units 1 and 2 nuclear power plants. Like the R.E. Ginna Nuclear Power Plant, there have been racking projects at the Nine Mile Point units, but

dry storage will ultimately be necessary, and that significant capital project is just getting underway. Claims for damages in connection with those plants are asserted in *Constellation Generation Group, LLC et al. v. United States*, No. 04-0068C (Margolis, J.).[12] Upon the assumption of responsibility for prosecution of this case by Constellation, Constellation moved to transfer the two pending cases to the same judge, and suggested that there may be efficiencies by trying the cases together, if such trials ever become necessary.[13] That request was granted in part, and this case transferred by order dated December 19, 2005. *Rochester Gas and Electric Company v. United States,* No. 04-118, 2005 WL 6114320 (Fed. Cl. Dec. 19, 2005).

In sum, determinations regarding efficient prosecution of the claims presented in this case involve a complex balancing of a myriad of factors and circumstances at five different nuclear power plants. Ultimately, all parties (including the government) and the Court will benefit from a tailored case management strategy that effectively accommodates those complex factors and circumstances.

## ARGUMENT

### *1. The relief that the government seeks is not justified by its claims of duplicative discovery.*

As noted above, the allegedly "duplicative discovery" that is the essential basis of the government's motion all involved, by the government's own admission, "the following four core

12 The Nine Mile Point plants were also acquired by Constellation, and former owners of those plants have asserted "takings" claims in Case Nos. 04-124 and 04-125, currently pending before the Court.

13 Such approaches have been used on multiple occasions in other spent fuel cases, *i.e.,* where a common corporate parent owns multiple plants. *E.g., Dominion Resources, Inc. v. United States*, Nos. 04-83, 04-84; *Pacific Gas & Electric Company v. United States,* Nos. 04-74, 04-75, *rev'd, Pacific Gas & Elec. Co. v. United States*, No. 2007-5046 (Fed. Cir. August 7, 2008).

subjects: general date of performance by DOE, GTCC disposal, development and interpretation of the Standard Contract, and the general rate of SNF acceptance by DOE." 8/21/08 Govt. Br. at 14. *All* of those issues, of course, have now been resolved by the Federal Circuit. Assuming that the government will now honor those appellate rulings,[14] there should be no further discovery regarding such matters at all. Certainly, none will be sought by Constellation. The government's motion is an extended after-the-fact gripe about the results of prior discovery proceedings in a minority of cases, but, given the current status of the pending spent fuel cases, the motion is not at all productive or useful with respect to future proceedings.

Moreover, to the extent that the government is suggesting that past is prologue and it is seeking to avoid a repeat of what it pejoratively calls the "absurd nature of discovery in the SNF cases," 8/21/08 Govt. Br. at 13, that, too, is a misplaced assertion. Most significantly, as described immediately below, there are no remaining allegedly common issues that predominate or play a central role. The most elemental linchpin of any sort of coordination-type relief is, therefore, wholly absent.

In addition, the government's allegedly unfavorable experiences from a handful of cases cannot be translated into an indictment of every single spent nuclear fuel plaintiff. Again as noted above, counsel for Constellation, speaking on behalf of Constellation but also on behalf of approximately a dozen other plaintiffs (including several that have now proceeded through discovery and completed trials), represented early on that duplicative discovery would not be sought, and that use would be made of "all of the prior work that has been done." *See* 8/21/08 Govt. Br., App. A3-4. That representation has been honored to a T. The fact that the government has apparently been bested in a handful of discovery disputes in a minority of other

[14] *But see* footnote 11, above.

cases (on issues now resolved) does not justify the sweeping prospective relief sought in this and every other pending case.

### 2. ***The remaining cases do not present the sort of controlling commonalities that warrant the "coordination" sought by the government.***

It is easy, especially in this Court where one of the parties is always the same, to assert that there are "common issues of fact and law" among multiple cases. That, however, is merely the starting point, and is not sufficient to justify the sort of extraordinary relief sought by the government. There must be significant, predominant, or controlling commonalities before coordination-type relief will be considered. That is true under the current Rules, the recent Advisory Committee recommendations regarding amendment of those Rules, and analogous practice in other federal courts.

A. Under the Court's current Rules, "directly related" cases can result in assignment to the same judge, but that category is narrowly defined and by its plain terms not applicable to the pending spent fuel cases. RCFC 40.2(a)(1)(A) and (B).[15] Even with directly related cases, transfer and consolidation are not always automatic, RCFC 40.2(a)(3), but in some cases must be accompanied by motion. In such cases, the controlling principles are the required predominance of common issues and associated economies, as reflected in consolidation principles of RCFC 42 and 42.1. *See Lowrey Economic Redevelopment Authority v. United States*, 71 Fed. Cl. 549 (2006); *Entergy Nuclear Indian Point 2, LLC v. United States*, 62 Fed. Cl. at 802-04. "Indirectly related" cases similarly allow for coordination-type relief, but the primary prerequisite, beyond the threshold "common issues of fact," is "that transfer, consolidation, or the adoption of a

[15] *Entergy Nuclear Indian Point 2, LLC v. United States*, 62 Fed. Cl. at 801 (under RCFC 40.2(a), "[p]recisely the same contract must be involved, not just a contract that has similar or identical terms.")

coordinated discovery schedule *would significantly promote the efficient administration of justice*." RCFC 40.2(b)(1) (emphasis supplied). The bar for departing from the traditional scheme whereby an individual plaintiff is able to prosecute its own claims as it sees fit is set intentionally high (especially where, as here, the plaintiff objects), in order to protect important interests that lie at the heart of our adversary system.

The recent Advisory Council recommendations, while seeking to improve procedures for the handling of related cases, are consistent with these elemental concepts. The Report accompanying the recommendations recites the importance of "the historical independence of individual Judges on the Court," and the "right of parties to litigate their own cases in the manner they deem optimal, without undue interference from other cases or from case management procedures imposed by others." 8/21/08 Govt. Br., App. A40. The Advisory Council recommendations retain the critical principle (as expressed in the current RCFC 40.2(b)(1)) that "transfer, consolidation, coordinated discovery or other common or coordinated proceedings would significantly promote the efficient administration of justice," in order for cases to be deemed related and consideration of coordination-type relief to be warranted. 8/21/08 Govt. Br., App. A43. The importance of that key prerequisite is emphasized in the section-by-section commentary. 8/21/08 Govt. Br., App. A45. Once any necessary coordination-type relief is ordered by the panel,[16] and the need for such relief no longer exists, the recommended rule

---

[16] The government's motion proceeds as if the recommended rule changes had already been adopted by the Court, and, indeed, proceeds to request relief from the non-existent three judge panel. *E.g.,* 8/21/08 Govt. Br. at 4. The current Rules do not, of course, provide for such a three judge panel, which is why such procedures were contained in a recommended rule *change*. We do not here address this and the other significant procedural deficiencies of the government's motion (*see, e.g.,* footnote 1 above), however, because the motion is so substantively without merit.

change provides that "the panel's duties under this Rule shall be discharged, and the panel shall have no continuing authority with regard to the related cases." 8/21/08 Govt. Br., App. A44.

And, these elemental principles guide analogous practice in other federal courts. In matters before the Judicial Panel on Multidistrict Litigation, for example, the mere presence of common issues of law "is neither a necessary nor sufficient condition for transfer." D. Herr, *Multidistrict Litigation Manual,* § 5.4 at 111 (2008) (citations omitted). Even where common issues of fact and law "abound," the MDL Panel "considers the role and importance of common issues to the litigation as a whole. If common issues *do not at least play a central role*, however, transfer will not be ordered." *Id.* at 111-112 (emphasis supplied) (citations omitted). Where appropriate pretrial proceedings are concluded—for example, after common issues are resolved and discovery regarding such issues completed—individual cases are returned to the transferor courts for resolution. 28 U.S.C. § 1407; *Multidistrict Litigation Manual* § 20.133 at 567. Preferences of the parties, while not controlling, are acknowledged to be given due consideration. *Multidistrict Litigation Manual* § 5.34 at 151. Again, the focus is on the predominance of the allegedly common issues, which must be balanced against the important interests of individual plaintiffs.

B. Under these elemental principles, the government's current motion fails completely. The government devotes its entire brief to discussion of the pick-up rate and associated issues *that have now been resolved by the Federal Circuit.* The government does not even purport to identify any remaining, prospective "common issues," akin to the pick-up rate, that could arguably play a "central role" in this or the remaining pending cases. This key deficiency requires rejection of the government's most recent renewed request.

### 3. ***<u>The government's one-size-fits-all approach and omnibus requested "litigation plan" do not accommodate the unique aspects of Constellation and this case.</u>***

Finally, there is simply nothing to commend the universal deadlines and "litigation plan" requested by the government, with regard to this case. As noted above, the major capital projects that Constellation believes will constitute the bulk of its claimed damages have not yet commenced. It makes no sense to arbitrarily dictate a damages cut-off date in advance, or right in the middle of, those projects, but that is exactly the effect of the government's vague and universal "litigation plan." 8/21/08 Govt. Br. at 22. No possible benefit or savings of resources by the government, Constellation, or the Court could arise from such an arbitrary procedure. Having all plaintiffs submit "detailed claims" on the same day, regardless of the real world circumstances on the ground at the various and sundry nuclear plants across the country, is not logical or reasonable. The government's assurances that it will respond in this and every other case (on the same day) with discovery (no doubt using the generic form requests it has used in other cases to date), and then submit a "suggested scheduling plan" of its own choosing, is not sensible, and, respectfully, does not constitute a rational approach at all. The government's requested omnibus "litigation plan" should be rejected.

**CONCLUSION**

For the reasons stated above, the government's motion should be denied.

Respectfully submitted,

s/ Brad Fagg
BRAD FAGG
MORGAN, LEWIS & BOCKIUS, LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 739-5191
Facsimile: (202) 739-3001
COUNSEL OF RECORD FOR
R.E. GINNA NUCLEAR PLANT, LLC

s/ M. Stanford Blanton
BALCH & BINGHAM LLP
Post Office Box 306
Birmingham, AL 35201-0306
(205) 251-8100 Telephone
(205) 226-8798 Facsimile
COUNSEL FOR
ROCHESTER GAS AND ELECTRIC
CORPORATION

September 8, 2008

CERTIFICATE OF FILING

I hereby certify that on this 8th day of September 2008, a copy of the foregoing was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Brad Fagg